IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SPARROW FUND MANAGEMENT, LP,** | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DEFAMATION PER SE AND CIVIL CONSPIRACY** |
| **MIMEDX GROUP, INC., PARKER H. "PETE" PETIT, and JOHN DOES 1-10,** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, Sparrow Fund Management LP ("Sparrow"), brings this action against Defendants MiMedx Group, Inc. ("MiMedx"), Parker H. "Pete" Petit, and John Does 1-10, arising out of Defendants' numerous defamatory public statements and false accusations against Sparrow – including labeling Sparrow a criminal organization – all in an effort to intimidate critics and distract the public from MiMedx's own unsavory business practices. At all relevant times, the Defendants acted in concert as part of a civil conspiracy to deflect attention from MiMedx's self-inflicted misfortunes and onto Sparrow by disparaging, undermining, and defaming it and its legitimate business practices.

**JURISDICTION**

1.  Plaintiff Sparrow is a Delaware limited partnership with its principal places of business in California and New York. At all times relevant to the allegations herein, Sparrow was conducting its business primarily out of New York. Sparrow is in the investment management business, investing and growing capital on behalf of its investors.

2.  Defendant MiMedx is a Florida corporation with its principal place of business in Georgia. MiMedx is publicly traded on the NASDAQ exchange under the ticker symbol "MDXG." MiMedx describes itself as "a leading biopharmaceutical company developing and

marketing regenerative and therapeutic biologics utilizing human placental tissue allografts with patent-protected processes for multiple sectors of healthcare."

3.  Defendant Parker H. "Pete" Petit is a resident of Georgia and Chairman and CEO of MiMedx.

4.  Defendants John Does 1-10 are affiliated with numerous Twitter handles, including @nascardrivers69, @CE_breakingnews, @webchicklet, @captkevinrogers, and @atlantadoctors. On information and belief, and as is outlined in greater detail below, John Does 1-10 have, at all relevant times, been acting at the behest, control, guidance, and direction of MiMedx.

5.  This Court has both general and specific personal jurisdiction over Defendant MiMedx. New York's long-arm statute confers personal jurisdiction on non-residents where those non-residents "transact[] any business within the state or contract[] anywhere to supply goods or services in the state." MiMedx conducts extensive business throughout New York, and a significant component of its sales network is located in the state. It also has employees physically located throughout the state. Its shares are traded on the NASDAQ, physically located in New York. And it regularly conducts management and investor meetings in New York. As to the allegations herein, MiMedx brought suit against Sparrow in the federal district court for the Southern District of New York and has thus availed itself of New York's courts. In its court action, as detailed further below, MiMedx first accused Sparrow of "criminal" and "illegal" behavior. It has since repeated such claims in numerous forums both within and without New York. Further, as detailed below, MiMedx has turned its civil action against Sparrow, physically taking place in New York, into a media parade of false and defamatory statements against Sparrow.

6.  This Court also has both general and specific personal jurisdiction over Defendant Pete Petit. Again, New York's long-arm statute confers personal jurisdiction on non-residents

where those non-residents "transact[] any business within the state or contract[] anywhere to supply goods or services in the state." Pete Petit conducts regular business in New York and has a consistent presence therein. He is CEO of a New York company and travels there frequently to conduct business and avail himself of the privilege of conducting business in New York. He is also CEO of MiMedx and regularly and purposefully avails himself of the privilege of conducting business in New York, as he, for instance, regularly meets and conducts shareholder business in New York. As detailed below, he was the source of many of the defamatory statements against Sparrow. He made at least some of those statements (again, as detailed below) while physically in New York.

7. The Court also has subject matter jurisdiction over this case because there is diversity of citizenship among the parties, and the amount in controversy, exclusive of costs and interests, exceeds $75,000.00. Accordingly, pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this case.

8. Venue is also proper in this case because, pursuant to 28 U.S.C. § 1391, this venue is where "a substantial part of the events or omissions giving rise to the claim occurred" and because this Court has personal jurisdiction over the Defendants.

**VARIOUS ANONYMOUS BLOGGERS START REPORTING FRAUDULENT BEHAVIOR WITHIN MIMEDX**

9. MiMedx is a billion-dollar company with, according to some reports, the largest share of the wound-healing market in the US. Its stock, however, has long been heavily "shorted" by investors. To short a stock means to "borrow" the stock from a lender with an agreement to return the stock at a later date. The borrower then sells the stock at a high price, banking on the stock dropping in value. Once the stock drops in value, the borrower then purchases the stock at the lower price and returns it to lender, thereby making a profit on the transaction.

10. In September 2017, two anonymous bloggers, including one named Aurelius Value, began tweeting and publicly posting content claiming MiMedx's stock was inflated because it was "channel stuffing," a fraudulent practice described as a company shifting inventory between sales channels to make it appear that the inventory has been sold when it actually has not, thereby overstating reported revenues.

11. Additionally, a former employee of MiMedx, Jess Kruchoski, made public allegations that MiMedx was channel stuffing through distributors to hospitals belonging to the Department of Veterans Affairs. Aurelius Value claimed the channel stuffing went beyond VA hospitals and that this information was not widely known, thus MiMedx's share price was overvalued.

## IN RESPONSE, MIMEDX BEGINS A LOUD AND PUBLIC CAMPAIGN AGAINST "CRIMINAL" SHORT SELLERS AND BEGINS MAKING FALSE PUBLIC ACCUSATIONS THAT SPARROW WAS BEHIND THE ANONYMOUS ATTACKS AND IS ENGAGING IN CRIMINAL ACTIVITIES

12. Neither Sparrow nor any of its partners, agents, or employees is Aurelius Value. Nevertheless, on October 4, 2017, MiMedx filed a complaint in federal court for the Southern District of New York, Case No. 1:17-cv-07568-PGG-KHP, naming as a defendant in that lawsuit, "Sparrow Fund Management LP, 'a/k/a Aurelius Value'." MiMedx alleged that "Aurelius Value is actually one or more of Sparrow's partners or employees, posting under a pseudonym for the benefit of themselves and/or Sparrow." In fact, throughout the complaint, MiMedx uses the names "Sparrow" and "Aurelius" interchangeably. Further, MiMedx boldly alleges that "[i]n an all-out effort to ensure that they would profit from their negative investments, Defendants [including Sparrow] have maliciously disseminated materially false, misleading and defamatory statements about MiMedx and its employees to shareholders and the investing public, intending to fraudulently manipulate the market for MiMedx's stock and to allow Defendants [including

Sparrow] to reap enormous profits from the resulting price decline." Throughout the complaint, MiMedx describes Sparrow as having engaged in "illegal," "manipulative," and "fraudulent" conduct.

13. In its subsequent 10Q filing with the Securities and Exchange Commission ("SEC"), MiMedx disclosed the lawsuit and again repeated its statement that Sparrow is Aurelius Value. To date, MiMedx has not retracted or otherwise modified those representations.

14. MiMedx's statements were and remain false. Neither Sparrow nor any of its partners or employees is Aurelius Value. Nor, more importantly, has Sparrow engaged in any criminal conduct, much less the type of illegal market-manipulating behavior MiMedx has alleged.

15. Almost immediately after MiMedx filed its lawsuit, Sparrow contacted MiMedx, explaining it was not Aurelius Value and demanding MiMedx dismiss the lawsuit. MiMedx refused. Sparrow went as far as providing MiMedx with sworn affidavits from each of its partners and employees attesting that no one from Sparrow had made comments attributed to Aurelius Value nor controls in any way what Aurelius Value publishes. Yet, MiMedx continued its public campaign against Sparrow.

16. Since that time, MiMedx has repeatedly reaffirmed its allegations that Sparrow is Aurelius Value and engaged in criminal, market-manipulating behavior.

17. On or about October 4, 2017, Parker H. Petit, Chairman and CEO of MiMedx, publicly stated with regard to the defendants in that lawsuit:

> "We contend the defendants *knowingly concocted and disseminated false statements* against MiMedx and our employees to our shareholders, the investment community and the public at large. To *manipulate the market* and serve their financial interest in driving down the price of MiMedx stock, they made these misleading statements. In their baseless statements, they either purposely omitted facts or context favorable to MiMedx, made suggestions concerning the Company that ran counter to the facts known by the defendants, or refused to do any

informational and fact-finding due diligence, but just published any information that supported their conspired short thesis.

We believe these types of *illegal short attacks* are ultimately short term in nature when the fundamentals of a business such as MiMedx are strong. Eventually, the constant outstanding performance delivered by MiMedx cannot be ignored. Unfortunately, in the meantime, honest shareholders may be deceived and harmed by the loss of their investment value, while dishonest individuals and entities are able to *profit through manipulation*." (Emphasis added).

18. Also, on or around October 4, 2017, Bill Taylor, President and COO of MiMedx, stated:

"In our press release of September 29, 2017, we alerted our shareholders to the document we posted on the MiMedx website to expose the *false and misleading* information distributed by Viceroy Research and *Aurelius Value*. We encourage everyone to thoroughly read that document to gain the appropriate insight into the volume of *misleading information, outright lies and libel* against innocent individuals and the Company these organizations or persons have stooped to publish. In this document, we have posted numerous examples that easily discredit their statements." (Emphasis added).

19. On October 17, 2017, MiMedx issued a press release accusing certain "short sellers of impersonating Pete Petit and sending out fake emails on his behalf." The press release described the behavior as "a crime." Pete Petit commented publicly on the instance, by saying: "[w]e believe this activity is related to the *recent short seller attacks* on the Company. *This particular group of short sellers* continues to resort to ridiculous and unscrupulous means to attempt to do damage to MiMedx. Of course, their ultimate goal is to depress the price of our stock. However, by impersonating me in emails to our analysts, with comments that create insecurity relative to our Company's performance or my ethics and integrity, is reprehensible and *unlawful*. We have also seen other indications of *unlawful activity*." (Emphasis added).

20. On or about October 27, 2017, on a public call with investors, Pete Petit again described the activities of those "entities that are involved in this *unlawful* short selling activity" as "illegal." His statements were recorded and subsequently published to investors.

21. On November 10, 2017, Linette Lopez, for the Business Insider, published an article entitled "The so-called Trump of Georgia is on a wild crusade against Wall Street short sellers." In the article, Ms. Lopez details at length MiMedx's and Pete Petit's campaign against Sparrow and others they accuse of illegal short selling activity. Among other things, the article describes MiMedx's and Pete Petit's purpose in filing the lawsuit against Sparrow as follows: "Pete Petit, the CEO of MiMedx, which makes wound-care products, is filing lawsuits against short sellers to try to the learn the identity of a pair of anonymous bloggers" (one of which is later identified to be Aurelius Value). She specifically identifies the allegations against Sparrow and notes Sparrow's emphatic denial that it is Aurelius Value.

22. Pete Petit responded to Ms. Lopez's article in a publicly posted letter dated November 14, 2017, in which he states: "MiMedx filed lawsuits in order to find legal relief and obtain damages for false and defamatory statements made by certain entities acting as shills for short-sellers *illegally attempting to manipulate MiMedx stock*." (Emphasis added). He further stated that "[the short sellers, including Sparrow] are wrong when the basis of their short sell thesis is founded on *false and fraudulent information and meritless claims. In fact, that is against the law.*" (Emphasis added).

23. On or about November 30, 2017, Pete Petit, in a public conference appearance with the investment community that physically took place in New York, again referred to the "short sellers" as being engaged in "illegal" behavior. He specifically identified those entities he accused

of "illegal" behavior as the ones that MiMedx was going "down the civil path with," which included Sparrow.  His statements were recorded and subsequently published to investors.

24.   In this time frame, MiMedx established a page on its website dedicated exclusively to "short selling commentary."  On or about November 30, 2017, Pete Petit wrote a letter to the SEC, which it subsequently posted to the "short selling commentary" section of its website, describing Aurelius Value as a "shill" engaged in "recent illegal short selling."  He further stated: "I realize that ordinary people do not understand just how corrupt dishonest persons can become.  Real truthful facts do not mean anything to individuals who have their own agenda. . . . This has become a classic case . . . of what fraudulent stock manipulation really involves. . . . [T]hese particular illegal short sellers apparently do not care about credible sources for their information."

25.   On or about December 13, 2017, Pete Petit again referred to "illegal short selling activities" in a public conference call with the investment community.  His statements were recorded and subsequently published to investors.

26.   And again, on or about January 18, 2018, Pete Petit referred in a conference call with the investment community to the short sellers "using illegal techniques."  His statements were recorded and subsequently published to investors.

27.   In February 2018, MiMedx posted to its website a rebuttal of claims made by Aurelius Value, suggesting again criminal and illegal activity.  To date, MiMedx has publicly maintained that Sparrow, or one of its partners or employees acting on behalf of Sparrow, is Aurelius Value.

**CONCURRENT WITH ITS PRESS RELEASES, JOHN DOES 1-10 BEGAN AN ONLINE CAMPAIGN TO DISCREDIT SPARROW BY ACCUSING IT, AGAIN, OF ILLEGAL AND CRIMINAL ACTIVITES**

28. Concurrent with the filing of MiMedx's complaint, a group of anonymous bloggers began simultaneously tweeting and posting content clearly designed to promote MiMedx stock while simultaneously disparaging Sparrow and "criminal short sellers." These John Does use at least five different twitter handles to anonymously blog about MiMedx, @nascardrivesr69, @webchicklet, @CE_breakingnews, @captkevinrogers, and @atlantadoctors. On a nearly daily basis, these John Does, through one or more of these handles, tweet positive content regarding MiMedx. At the same time, the John Does have also aggressively attacked Aurelius Value and other bloggers posting negative content about MiMedx and, most importantly, have directly attacked Sparrow.

29. On September 21, 2017, the John Does, through the website "Californiaexaminer.net," published an article entitled "Viceroy Research, Aurelius Value: Paid Shills Create Negative Fake News on Mimedix [sic] Group, MDXG". In the article, the John Does alleged that a specific hedge fund was paying Aurelius Value to disseminate fake information to depress the stock of MiMedx. In the article, the John Does described Aurelius as a "common criminal that [created] a website and attacked good companies on behalf of the highest bidder, all so they can make more money."

30. By October 10, 2017, it became clear the John Does were pushing a narrative publicly that Sparrow was paying Aurelius Value to disseminate false information. On October 10, 2017, through the handle, @CE_breakingnews, the John Does stated: "Sparrow fund henchmen made up lies to TRY to get your $10 puts in the money." In this context, "getting puts

in-the-money" is understood to mean illegal market manipulation by way of spreading false information publicly in order to artificially bring down a stock price.

31. On the same day, through that same handle, the John Does tweeted, in reference to content shared by Aurelius Value regarding allegedly fraudulent behavior at MiMedx, "[i]t seems Sparrow/aka Aurelius Value got their lies published . . . ."

32. Again, on the same day, but this time under the handle @nascardrivers69, the John Does tweeted, in response to comments posted by an anonymous blogger about MiMedx, "oh oh. Sparrow is going to throw you under the bus for creating ineffective lies about $mdxg," again accusing Sparrow of paying the blogger to fabricate posts about MiMedx.

**UPON INFORMATION AND BELIEF, THE JOHN DOE DEFENDANTS WERE AND ARE AGENTS AND WORKING UNDER THE DIRECTION OF MIMEDX**

33. Numerous factors demonstrate the John Doe Defendants were communicating with and working at the direction of MiMedx.

34. The John Doe defendants attempted to keep their identities a secret while operating at least five twitter accounts whose primary activities focus on either inflating MiMedx stock or attacking bloggers and reporters writing negatively about MiMedx (such as Aurelius Value).

35. In February 2018, a group of twitter users, including @nascardrivers69, began attacking a former MiMedx-employee-turned-whistleblower, Jess Kruchoski. One of the John Does, through the handle @nascardrivers69, claimed Mr. Kruchoski faced a "constant stream of firings by every company [he] ever worked for." Of course, the basis for an employee's termination is generally not a matter of public record, yet the John Doe claimed to have intimate knowledge of Mr. Kruchoski's career history. The John Doe also participated in a Twitter thread in which the John Doe and other users alleged Mr. Kruchoski was fired from a past employer for drinking. In at least three separate tweets, Mr. Kruchoski implied that the John Doe's knowledge

of his career history pointed to the John Doe being an agent of MiMedx. First, in response to one of the John Doe's twitter posts, Mr. Kruchoski tweeted that: "I got drunk at a meeting and passed out in a hotel hallway. It was life changing because I quit drinking. Haven't had a drink in 8 years. Oddly, *that private info came out recently in sealed documents that only MDXG and their attorneys have*." (Emphasis added). In another tweet, Mr. Kruchoski implied that John Doe was an agent of MiMedx due to the John Doe's knowledge of his private employment history. Finally, in May 2018, Mr. Kruchoski stated that the John Doe's past public comments suggested the John Doe had information about Mr. Kruchoski and other former employees of MiMedx that the public does not have.

36. Additionally, upon information and belief, another John Doe Twitter account acting as an agent of MiMedx is @atlantadoctors. From review of the Twitter posts made by @atlantadoctors, it appears that the @atlantadoctors account was set up with the primary goal of promoting MiMedx's stock.

37. On April 9, 2018 @atlantadoctors tweeted disparagingly about Sparrow, stating that lead counsel for Sparrow had withdrawn their representation of Sparrow. This was not true. Not coincidentally, these false statements about Sparrow occurred on the business day immediately after counsel for Sparrow called counsel for MiMedx to present evidence of additional improper litigation tactics on the part of MiMedx. Furthering the inference that @atlantadoctors is in fact an agent of MiMedx: the account user changed its privacy settings to lock its profile from public viewership *after* counsel for Sparrow alerted counsel for MiMedx of Sparrow's belief that MiMedx was orchestrating a social media campaign to tarnish Sparrow's reputation.

38. Though there are methods to discover the identities associated with the John Doe defendants, and though there are general indications as to the identities of the persons associated

with the Twitter handles identified above, Sparrow is unable, in the absence of the discovery process, to confirm those identities with absolute certainty. Once Sparrow is able to do so through discovery, it will promptly move for leave to amend this complaint to add the real names of John Does 1-10. Sparrow intends to move the Court for an order granting it expedited discovery to learn the identities of the bloggers.

39. All of John Does 1-10s' tweets and online postings were false and defamatory. They sought to disparage Sparrow's legitimate business activities and destroy its business reputation.

**THE DEPARTMENT OF JUSTICE REVEALED IN MAY 2018 INDICTMENTS OF SEVERAL FORMER VA EMPLOYEES ACCUSED OF ACCEPTING BRIBES FROM MIMEDX**

40. On May 8, 2018, the federal district court for the District of South Carolina unsealed an indictment accusing Donna Becker, Marcela Dolores Farrer, and Carol Guardiola of violating 18 U.S.C. 208, 201, and 1347. The indictment alleges the defendants, former employees of the Department of Veteran Affairs and healthcare providers, accepted bribes from MiMedx in exchange for increasing sales of MiMedx products to VA facilities.

41. In relevant part, the indictment states the following:

"It was . . . part of the conspiracy that Defendants, in the course of their employment with the VA, utilized skin graft products provided by MiMedx Group, Inc.

"It was further part of the conspiracy that the Defendants cultivated relationships with MiMedx sales representatives and other officials.

"It was further part of the conspiracy that Defendants received benefits from MiMedx in the form of meals, salaries, trips, gifts, and other in-kind inducements which caused the Defendants to order, purchase, and use MiMedx products on VA patients.

> "It was further part of the conspiracy that DONNA BECKER and MARCELA DOLORES FARRER participated in speaking engagements on behalf of MiMedx. The goal of these speaking engagements was to increase sales to VA facilities. By accepting these speaking engagements DONNA BECKER and MARCELA DOLORES FARRER became employees, agents, or independent contractors of MiMedx.
>
> It was further part of the conspiracy that the Defendants caused the excessive use of MiMedx products on VA patients in South Carolina."

42. On information and belief, MiMedx has been engaged in improperly bribing VA employees throughout the country to use and promote its products.

43. In an effort to divert attention away from such practices and silence those individuals (such as Aurelius Value) calling attention to its improper business practices, MiMedx initiated a campaign against Sparrow and others, falsely claiming they were engaged in illegal and criminal short selling activities.

44. MiMedx has no evidence that Sparrow has done anything illegal or criminal, yet MiMedx has made false claims and acted with reckless disregard for the truth in making numerous defamatory statements about Sparrow. Further, MiMedx has acted with actual malice in its public representations regarding Sparrow.

45. Defendants' statements were not mere rhetoric or hyperbole. In a business update call with investors on September 21, 2017, Pete Petit made the following statement regarding Defendants' responsibilities in making public statements:

> "First, I think you would benefit from a little background on responsibilities I have as a public company officer versus those that the short sellers have. First, there are well defined regulations and laws associated with comments that I make or our company makes as to their authenticity. *If we misrepresent facts or lie, as a company official, [I] can go to jail and certainly be fined*. On the other hand, the individuals who involve with short selling do not have those same laws and regulations to constrain them. Yes, they have to cope with laws that they pay for, obtain inside information of the manipulated stock, but certainly

you see those kind of actions taken by federal agencies against short sellers." (Emphasis added).

### SPARROW IS NOT A GENERAL OR LIMITED PURPOSE PUBLIC PERSON

46. MiMedx is mired in controversy and in a very public battle with short sellers that have publicly alleged the company is engaged in fraud. Sparrow did not invite itself into the controversy surrounding MiMedx and therefore is not a public figure. To the contrary, Sparrow is a relatively small investment firm of only three employees that is not even required to be SEC registered.

### COUNT I – DEFAMATION *PER SE*

47. Sparrow re-alleges paragraphs 1 through 46.

48. Sparrow enjoys a good reputation within the investment management community. Sparrow has further enjoyed good relations with its investors and contacts within the investment management community.

49. By making repeated false statements (both written and oral) accusing Sparrow of "criminal" and "illegal" behavior, Defendants intended to and did communicate and publish to others both within and without the investment management community false statements about Sparrow's business activities and professional integrity.

50. Defendants' statements were and remain false. Sparrow is not Aurelius Value and has not engaged in the criminal behavior Defendants have alleged.

51. By making their repeated false statements, Defendants intended to and did injure Sparrow's business reputation and disparage its business.

52. Defendants' statements were defamatory *per se* because: 1) the statements were and are in printed form and are thus libel; 2) the statements were also communicated orally and thus slander; 3) the statements ascribe characteristics that have a tendency to injure and have in

fact injured Sparrow in its business and occupation; and 4) the statements claim Sparrow engaged in criminal and illegal conduct.

53. Sparrow has suffered damages directly and proximately caused by Defendants' libelous actions, including but not limited to loss of business opportunities, damage to reputation, and loss of revenue in an amount that is currently unknown but not less than $100 million. By reason of Defendants' defamation, Sparrow is entitled to both general damages and all actual and compensatory damages proved at the time of trial.

54. Defendants' statements were not privileged. Defendants made statements to the general press, non-participants in the litigation, that neither served the purpose of furthering MiMedx's underlying litigation in the Southern District of New York nor had any logical connection to that action. "Litigating in the press" does not serve the purpose of the privilege.

55. Defendants' behavior was intentional and fraudulent. Defendant made repeated intentional and willful misrepresentations to the public, or at least acted with reckless disregard for the truth, in a deliberate effort to undermine and harm Sparrow. Sparrow is, as a result, entitled to exemplary and punitive damages in an amount to be proven at trial.

56. For Defendants' conduct, Sparrow seeks preliminary and permanent injunctive relief against Defendants.

## COUNT II – CIVIL CONSPIRACY TO DEFAME

57.     Sparrow re-alleges paragraphs 1 through 56.

58.     Defendants formed a conspiracy amongst each other, the purpose of which was to defame Sparrow and cause harm to Sparrow's business and reputation.

59.     Upon formation of their conspiracy, Defendants committed the acts as alleged above in furtherance of that conspiracy so as to put their scheme into motion.

60.     By putting their scheme into motion, Defendants did defame Sparrow as alleged above, causing damage to Sparrow's reputation and prospective business relationships.

61.     Sparrow has suffered damages proximately caused by Defendants' conspiracy, including but not limited to loss of business opportunities, damage to reputation, and loss of revenue in an amount that is currently unknown but not less than $100 million.  By reason of Defendants' conspiracy, Sparrow is entitled to both general damages and all actual and compensatory damages proved at the time of trial.

62.     By conspiring together, and by each participating in the plan to defame Sparrow, as alleged above, Defendants are jointly and severally liable for all damages incurred by Sparrow, irrespective of whether or not each co-conspirator was a direct actor, and regardless of the degree of each co-conspirator's activity in furtherance of the conspiracy.

63.     Defendants' behavior was intentional and fraudulent. Defendant made repeated intentional and willful misrepresentations to the public, or at least acted with reckless disregard for the truth, in a deliberate effort to undermine and harm Sparrow.  Sparrow is, as a result, entitled to exemplary and punitive damages in an amount to be proven at trial.

64.     For Defendants' conduct, Sparrow seeks preliminary and permanent injunctive relief against Defendants.

**WHEREFORE**, Sparrow prays that the Court grant it the following relief against Defendant:

A. As to Count I, damages in an amount to be proved at trial but not less than $100,000,000.00, and preliminary and permanent injunctive relief;

B. As to Count II, damages in an amount to be proved at trial but not less than $100,000,000.00, and preliminary and permanent injunctive relief;

C. As to both Counts, punitive damages in an amount to be proven at trial;

D. As to both Counts, pre- and post-judgment interest;

E. Costs; and

F. Any other relief available at law or equity.

Dated: June 4, 2018

**BRESSLER, AMERY & ROSS, P.C.**

/s/Nikolas S. Komyati
Nikolas S. Komyati, NYB #4298188
nkomyati@bressler.com
Bressler, Amery & Ross, P.C.
17 State Street
New York, New York 10004
Telephone: (212) 425-9300
Fax: (212) 425-9337

**HARRIS BERNE CHRISTENSEN LLP**
Adam S. Heder, CSB #270946
adamh@hbclawyers.com
Harris Berne Christensen LLP
5000 Meadows Road, Suite 400
Lake Oswego, OR 97035
Telephone: 503-968-1475
Fax: 503-968-2003
(*Pro hac vice* application to be submitted)

*Counsel for Plaintiff Sparrow Fund Management, LP*