**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPARROW FUND MANAGEMENT, LP, | Civil Case No.: 1:18-cv-04921-PGG-KHP |
| Plaintiff, | |
| vs. | |
| MIMDEX GROUP, INC., PARKER H. "PETE" PETIT and JOHN DOES 1-10, | |
| Defendants. | |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD .......................................................................................................... 6

BACKGROUND .................................................................................................................. 7

    A.  Amid significant short selling of MiMedx stock, various commentators begin publicizing reports of MiMedx's questionable business practices. ...................................... 7

    B.  So, MiMedx files a lawsuit against Sparrow, falsely accusing it of being an anonymous blogger spreading lies about MiMedx in order to depress its stock. ............... 8

    C.  MiMedx, in turn, begins advertising its efforts to bring the short sellers of MiMedx stock to justice, claiming that the short sellers it sued are "criminals" engaging in illegal securities fraud and market manipulation. ............................................................... 9

    D.  But by June 2018, it becomes clears the supposed rumors about MiMedx had truth: The Department of Justice unseals bribery indictments implicating MiMedx; MiMedx is forced to announce that its past six years of financial statements and press releases must be retracted and cannot be relied upon; and Pete Petit resigns. .............................. 10

    E.  MiMedx's lawsuit is not only a sham designed to divert public attention away from its own problems, but it was also brought in bad faith. .................................................... 11

ARGUMENT .................................................................................................................... 13

    A.  Sparrow has pleaded a prima facie case of defamation. .................................................. 13

        1.  Defendants' original lawsuit was a "sham" lawsuit and therefore triggers no privilege at all. ........................................................................................................ 13

        2.  Defendants' defamatory statements exceed the scope, nature, and quality of their prior lawsuit's allegations and are removed from the privilege. ................................ 18

        3.  Defendants' defamatory statements directly identify and implicate Sparrow and are thus "of and concerning" Sparrow. .................................................................... 19

        4.  Sparrow has pleaded Defendants acted with "actual malice" and, therefore, any argument that Sparrow is a limited purpose public figure is irrelevant. .................... 21

        5.  But in either event, Sparrow is not a limited purpose public figure. ......................... 23

    B.  Sparrow has pleaded a prima facie case of civil conspiracy ........................................... 26

    C.  Alternatively, should the Court find any of the pleadings deficient, Sparrow respectfully requests the Court allow it leave to amend its pleadings to correct those deficiencies. .................................................................................................................. 30

CONCLUSION .................................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................ 6

*Bilinski v. Keith Haring Found., Inc.*,
 96 F. Supp. 3d 35 (S.D.N.Y.), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015) ................. 3, 18

*Brady v. Ottaway Newspapers, Inc.*,
 445 N.Y.S.2d 786 (2d Dep't 1981) ......................................................................... 21

*Bridge C.A.T. Scan Associates v. Ohio Nuclear, Inc., et al.*,
 608 F. Supp. 1187 (S.D.N.Y. 1985) .................................................................. 14, 18

*Broder v. Cablevision Systems Corp.*,
 418 F.3d 187 (2d Cir. 2005) ............................................................................. 6, 10

*Conte v. Newsday, Inc.*,
 703 F. Supp. 2d 126 (E.D.N.Y. 2010) ..................................................................... 15

*Diaz v. NBC Universal, Inc.*,
 536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009) ...................... 20

*Enigma Software Group USA, LLC v. Bleeping Computer LLC*,
 194 F. Supp. 3d 263 (S.D.N.Y. 2016) ...................................................................... 21

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974) ................................................................................... 5, 22, 23

*Halcyon Jets, Inc. v. Jet One Group, Inc.*,
 894 N.Y.S.2d 392 (2010) .............................................................................. 15, 16

*In re Morgan Stanley Info. Fund Sec. Litig.*,
 592 F.3d 347 (2d Cir. 2010) ..................................................................................... 7

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
 146 F.3d 66 (2d Cir. 1998) ....................................................................................... 7

*Jackson v. Ramirez*,
 No. 1:15-CV-617-GHW, 2016 WL 796854 (S.D.N.Y. Feb. 22, 2016), *aff'd*, 691 F.
 App'x 45 (2d Cir. 2017) ......................................................................................... 29

*Krauss v. Globe Int'l, Inc.*,
 674 N.Y.S.2d 662 (1998) .................................................................................. 25, 26

*Liberman v. Gelstein*,
 80 N.Y.2d 429 (1992). ............................................................................................ 19

*Long v. Marubeni Am. Corp.*,
 406 F. Supp. 2d 285 (S.D.N.Y. 2005) .................................................................. 15, 18

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*,
  22 F. Supp. 3d 240 (S.D.N.Y. 2014)..................................................... 5, 23, 24, 25

*Naataanbuu v. Abernathy*,
  816 F. Supp. 218 (S.D.N.Y. 1993) ...................................................... 23

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).............................................................................. 22

*Pasqualini v. Mortgageit, Inc.*,
  498 F. Supp. 2d 659 (S.D.N.Y. 2007).................................................. 13

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan
  Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)................................................................. 28

*Ronzani v. Sanofi*,
  899 F.2d 195 (2d Cir. 1990)................................................................. 30

*Waldbaum v. Fairchild Publications, Inc.*,
  627 F.2d 1287 (D.C. Cir. 1980) ........................................................... 23

*Williams v. Williams*,
  23 N.Y.2d 592 (1969) ............................................................................ 3

**Statutes**

N.Y. Civ. Rights Law § 74 (2017)................................................... 3, 13, 14, 15, 16, 18

**Federal Rules**

Fed. R. Civ. P. 11 ........................................................... 4, 9, 12, 13, 15, 20, 22

Fed. R. Civ. P. 12(b)(6) ............................................................... 6, 25, 26

Fed. R. Civ. P. 8(2) ......................................................................... 6

Fed. R. Evid. 201(b).......................................................................... 7

## INTRODUCTION

- **September 2017:** Former employee of Defendant MiMedx Group, Inc. and two anonymous bloggers begin publicly accusing MiMedx of a variety of improprieties, including "channel stuffing" – a fraudulent practice described as a company shifting inventory between sales channels to make it appear that the inventory has been sold when it actually has not.

- **October 4, 2017:** MiMedx files a lawsuit against Sparrow in this Court falsely claiming that Sparrow was one of the anonymous bloggers and that Sparrow was spreading rumors in order to profit from a short position in MiMedx stock. Over the next six months, MiMedx ramps up these attacks, engaging in a very public campaign to discredit Sparrow claiming, among other things, Sparrow is "illegally" short selling MiMedx stock.

- **March 15, 2018:** MiMedx issues a Form 8-K in which it admits that it is the subject of ongoing SEC and DOJ probes into allegations made by former employees and the anonymous bloggers.

- **May 8, 2018:** The federal district court for the District of South Carolina unseals an indictment implicating MiMedx in a bribery scandal at VA hospitals.

- **June 6, 2018:** MiMedx issues a Form 8-K stating that its last six years' worth of financial statements are no longer reliable and that the company's audit committee is now conducting an independent investigation into MiMedx's sales and accounting practices.

- **July 2, 2018:** MiMedx announces the resignation of its CEO, defendant Pete Petit due, in part, to the ongoing investigations into the sales and accounting practices.

1

Where there is smoke there is fire. And right now, there are billows smoke coming from Defendants. The investing public now knows that it cannot trust six years' worth of financial statements from MiMedx; it now knows that MiMedx's business practices are under investigation by the Department of Justice and the Securities and Exchange Commission; and it now knows MiMedx's CEO has resigned. Yet, when reports first began to surface that something was amiss at MiMedx, rather than address those underlying problems or disclose to the public the truth behind them, Defendatns did what all those evading accountability do: create a scapegoat. In October 2017, shortly after the critical reports began to circulate, MiMedx filed a lawsuit for libel, slander, defamation, and false light against a discrete group of investors, including Plaintiff Sparrow Fund Management, LP, falsely claiming Sparrow was one of the anonymous bloggers and was spreading rumors about MiMedx in order to depress the stock and increase the value of a short position (the "MiMedx Lawsuit").[1] In truth, Sparrow is not and never was one of the anonymous bloggers and Sparrow had no role whatsoever in spreading any supposed rumors about MiMedx. But more importantly, the record and pleadings demonstrate Defendants filed a sham lawsuit against Sparrow and others, intending to do little more than distract public attention away from its real problems. After filing its lawsuit, MiMedx began a public campaign of press releases, shareholder communications, and other public communications laying all the blame for its problems at the feet of Sparrow and other investors that MiMedx accused of "criminal" activity, securities fraud, and covert market manipulation of MiMedx's stock price.

Sparrow has filed the above-captioned lawsuit against MiMedx for its brazen defamation of Sparrow. But now, in a rather remarkable display of chutzpah, Defendants MiMedx and

---

[1] *See* Complaint for Damages and Injunctive Relief, MiMedx v. Sparrow, No. 1:17-cv-07568-PGG-KHP (S.D.N.Y. Oct. 4, 2017), ECF No. 1.

former CEO Pete Petit want to hide behind their own lawsuit, filed both on false premises (Sparrow is not and never was one of the anonymous bloggers) and to mask the truth of their own practices (which are apparently colorable enough to cause MiMedx to rescind six years' worth of previously approved and published financial data). They have filed a motion to dismiss, arguing their defamatory statements – which notably they do not dispute are false – are privileged under Section 74 of the NY Civil Rights Law because they represent "fair and accurate" reporting of the MiMedx Lawsuit. Fortunately, Section 74 does not work this way. "[I]t was never the intention of the Legislature in enacting section 74 to allow any person to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute." *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969).

Nor could Section 74, even if it applied, determine this case, because Defendants' defamatory statements exceed what was pleaded in the MiMedx Lawsuit. Subject to the *Williams* exception noted above, Section 74 provides a qualified privilege from claims of defamation "for the publication of a fair and true report of any judicial proceeding . . . ." And where the defamatory statements attribute to the Plaintiff more derogatory or more serious behavior than what was alleged in the underlying judicial proceeding, Section 74 provides no protection. *See Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 48–49 (S.D.N.Y.), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015) ("Application of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury could conclude that the report 'suggest[ed] more serious conduct than that actually suggested in the judicial proceeding.'"). Here, in its underlying lawsuit, MiMedx accused Sparrow of engaging in tortious behavior; it expressly stopped short of accusing Sparrow of any criminal behavior. But in their subsequent defamatory statements,

3

MiMedx has labeled Sparrow a "criminal," engaged in securities fraud and covert market manipulation.

The balance of Defendants' arguments can and also ought to be disposed of as premature at the pleadings stage. Defendants first argue their statements were not "of and concerning" Sparrow. This is false in all respects, but certainly so at the pleading stage. MiMedx expressly and falsely identified Sparrow as "Aurelius Value," the pseudonym for one of the two anonymous bloggers publishing reports about MiMedx. To date, MiMedx maintains publicly in this Court that Sparrow is Aurelius Value. Defendants' subsequent defamatory statements clearly referred either to Aurelius Value or the "short sellers" MiMedx was "going down the civil path with." Defendants' attempts to now claim there was some ambiguity in its statements or that one would not clearly link their public stance that Sparrow is Aurelius Value to its defamatory statements is both disingenuous and in fact undermines the very foundation of the MiMedx Lawsuit, which MiMedx still stands by. MiMedx cannot have it both ways.

Defendants next argue Sparrow is a "limited purpose public figure," and must, therefore, allege and prove Defendants acted with "actual malice" in making their defamatory statements. This argument fails for two reasons. First, Sparrow in fact alleges Defendants acted with "actual malice." Defendants brought their lawsuit in bad faith by falsely naming Sparrow as Aurelius Value (indeed, Sparrow has a pending Rule 11 motion in this court to adjudicate this very issue). Defendants' lawsuit was also a sham designed to divert public attention away from the company's significant internal problems. And thus, whether Sparrow is a public figure is irrelevant. Second, even if that were not the case, Sparrow is, under no stretch, a "limited purpose public figure." To be a limited purpose public figure, one must "thrust [oneself] into the vortex of this public issue, [and] engage the public's attention in an attempt to influence its

outcome." *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 249 (S.D.N.Y. 2014) (*quoting Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)) (internal quotation marks omitted). Again, Sparrow is not and never was Aurelius Value. It does not blog about MiMedx. It has never publicly commented on MiMedx. And it has never publicly commented on MiMedx's internal troubles (outside of and prior to this lawsuit, of course). Sparrow has certainly never "thrust itself" or "engaged the public's attention" on *any* issue related to MiMedx, and certainly not on its stock price nor accounting/sales practices.

And finally, Defendants seek to have the civil conspiracy to defame claim dismissed because it finds the allegations "implausible." This argument is both false and disingenuous. Aside from the suspicious timing of the John Doe defendants' statements to Defendants' broader campaign against Sparrow, Sparrow identifies in its Complaint specific links highlighting the connections between Defendants' confidential institutional knowledge and the John Does' statements. Furthermore, Defendants simultaneously question the identity of the John Doe Defendants while opposing Sparrow's motions for expedited discovery, the express purpose of which is to confirm the identities of the John Doe defendants and their links with Defendants.

In its motion to dismiss, Defendants falsely characterize Sparrow's lawsuit as an act of revenge when in fact Sparrow simply seeks to repair its reputation and receive the justice it deserves. Sparrow is in the investment management business – an industry in which a firm's integrity and compliance with regulations is its primary asset. Defendants attempt to chastise Sparrow for filing a lawsuit that is simply designed to make Sparrow whole for the damage caused by Defendants' relentless one-year attack on Sparrow. Defendants do not dispute that they falsely labeled Sparrow a "criminal" that engages in "securities fraud." These are terms that have a severely negative impact for an investment firm where reputation and integrity are

paramount. Sparrow did not invite itself into the controversy surrounding MiMedx. Defendants dragged them in. Sparrow's pleadings outline in plausible detail and specificity Defendants' long list of defamatory statements and their ulterior and malicious motives in so doing. Defendants' arguments to the contrary both fail on the merits but are also, and more importantly, woefully premature at this – the pleadings stage – of the litigation. Sparrow respectfully request the Court deny Defendants' motion to dismiss under FRCP 12(b)(6).

## **LEGAL STANDARD**

Under federal pleading standards, Sparrow must allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(2). Rule 12(b)(6), on the other hand, allows a defendant to move for dismissal on the basis that plaintiff's claims fail to state a claim upon which relief can be granted. The now well-known standard from the Supreme Court cases, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), requires allegations be "plausible" and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Significantly, when reviewing a motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party, i.e., Sparrow. *Broder v. Cablevision Systems Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (citation omitted).

When assessing a motion to dismiss, the Court's review is generally limited to the four corners of the complaint, with some notable exceptions. First, "[w]here a plaintiff has 'relied on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [the Court] may consider its contents even if it is not formally incorporated by reference." *Broder*, 418 F.3d at 196 (citation omitted). Second, the Court may consider those facts of which it can take judicial notice, i.e., facts that are "not subject to reasonable dispute."

6

Fed. R. Evid. 201(b). "Such facts must either be '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). This includes court filings in other actions, though "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* It also includes filings with the SEC. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010).

And finally, as noted throughout the body of this memorandum, virtually every issue Defendants move on in this matter are factual matters to be decided by a trier of fact and inappropriate for resolution on the pleadings, including whether the MiMedx Lawsuit was a sham lawsuit, whether the defamatory statements exceed the scope of the MiMedx Lawsuit, and whether the defamatory statements were "of and concerning" Sparrow.

<u>**BACKGROUND**</u>

The pleadings and other relevant documents, when taken in the light most favorable to Sparrow, leave little doubt as to Defendants' motivations, deceptions, and gamesmanship in this matter. Fearing exposure of their business practices and the inevitable loss in investor confidence resulting therefrom, Defendants filed a sham lawsuit to create a convenient scape goat. Defendants now seek to use that lawsuit as a shield to avoid accountability for their abuse of the judicial process.

**A.      Amid significant short selling of MiMedx stock, various commentators begin publicizing reports of MiMedx's questionable business practices.**

Sparrow is a small, relatively young investment firm comprised of three employees. MiMedx, on the other hand, is a public company that, by some accounts, has the largest share of

the wound-healing market in the US.[2] In September 2017, two anonymous bloggers and a former employee of MiMedx began publicizing accusations of accounting fraud within MiMedx.[3] One of the bloggers goes by "Aurelius Value." Neither Sparrow, nor any of its three employees, is or ever was or ever directed any agents to be or act as Aurelius Value.[4] At all relevant times until July 2, 2018, Parker "Pete" Petit was the CEO of MiMedx.[5]

Whether related to these reports or for some other reason, MiMedx has historically "been heavily 'shorted' by investors," which means "to 'borrow' the stock from a lender with an agreement to return the stock at a later date," after which "[t]he borrower then sells the stock at a high price, banking on the stock dropping in value."[6] "Once the stock drops in value, the borrower then purchases the stock at the lower price and returns it to lender, thereby making a profit on the transaction."[7]

**B.    So, MiMedx files a lawsuit against Sparrow, falsely accusing it of being an anonymous blogger spreading lies about MiMedx in order to depress its stock.**

In October 2017, MiMedx filed a lawsuit against Sparrow in the Southern District of New York, Case No. 1:17-cv-07568-PGG-KHP,[8] alleging that Sparrow was and is Aurelius Value and that Sparrow, as Aurelius Value, was purposefully seeking to depress MiMedx's stock price in order to benefit from a short position in the stock. Notably, MiMedx described Sparrow's behavior as illegal "under common-law concepts of libel, slander, defamation, and

---

[2] Complaint for Defamation Per Se and Civil Conspiracy at ¶ 9. Sparrow v. MiMedx, No. 1:18-cv-04921-PGG-KHP (S.D.N.Y. June 4, 2018), ECF No. 1 (hereinafter, "Complaint").
[3] Complaint ¶¶ 10-11.
[4] Complaint ¶ 12.
[5] Complaint ¶ 3.
[6] Complaint ¶ 9.
[7] *Id.*
[8] Again, this case is referred to herein as the MiMedx Lawsuit.

false light."[9] The MiMedx Lawsuit nowhere alleges Sparrow is or was a criminal or was otherwise engaged in criminal behavior.

In connection with the MiMedx Lawsuit, Sparrow immediately contacted MiMedx and explained it was not Aurelius Value.[10] Each employee even went so far as to provide sworn affidavits attesting as much.[11] But MiMedx did not withdraw its lawsuit. To date, MiMedx's lawsuit is still an active matter and MiMedx has not withdrawn its accusation that Sparrow is Aurelius Value. Indeed, as noted below, MiMedx has stood by the accusations even in the face of a pending Rule 11 motion.[12]

**C.     MiMedx, in turn, begins advertising its efforts to bring the short sellers of MiMedx stock to justice, claiming that the short sellers it sued are "criminals" engaging in illegal securities fraud and market manipulation.**

After filing its lawsuit, Defendants immediately began publicizing it, discussing at every opportunity its heroic efforts to expose short sellers that Defendants claim are intentionally manipulating MiMedx's stock price.

In press releases, shareholder communications, and numerous other public correspondences, Defendants repeated the accusations against Sparrow. The Complaint outlines those in detail and they need not be repeated here, except to note one thing: Defendants' public statements went beyond the allegations in the MiMedx Lawsuit. Whereas MiMedx was assiduously careful to not accuse Sparrow of any actual crimes or of otherwise being a criminal in the MiMedx Lawsuit, in their subsequent public communications, Defendants disregarded that

---

[9] MiMedx Lawsuit, ECF No. 1, at ¶ 3.
[10] Complaint ¶¶ 14-15.
[11] Complaint ¶¶ 14-15.
[12] The Court recently dismissed, without prejudice, the Rule 11 motion on a service technicality, but has allowed Sparrow to renew the motion, which Sparrow, assuming MiMedx continues to refuse to withdraw its lawsuit, intends to do. See MiMedx Lawsuit, ECF No. 108. Further, contrary to MiMedx's assertion, it was not Sparrow's intention to re-litigate MiMedx's frivolous lawsuit in this argument. However, MiMedx expressly put its own frivolous filing in play in this action by attempting to use it as both a sword and shield for its tortious conduct.

caution, repeatedly referring to Sparrow as "criminal" and engaged in all manner of securities fraud. For instance, in a shareholder communicated dated October 25, 2017, MiMedx referred to "the *real criminals* a[s] the ones propagating false and misleading information about MiMedx and then doing their illegal short selling."[13] Similarly, in its October 17, 2017 press release (¶ 19), MiMedx accused those involved in "the recent short seller attacks on [MiMedx]," which ostensibly included Sparrow, as impersonating Pete Petit, which it expressly described as "a crime."[14] In a January 24, 2018 shareholder communication, MiMedx again described the short-sellers as guilty of "a type of securities fraud."[15] As Sparrow alleges, since Sparrow informed MiMedx that it was not Aurelius, "MiMedx has repeatedly reaffirmed its allegations that Sparrow is Aurelius Value and engaged in *criminal*, market-manipulating behavior."[16]

**D.     But by June 2018, it becomes clears the supposed rumors about MiMedx had truth: The Department of Justice unseals bribery indictments implicating MiMedx; MiMedx is forced to announce that its past six years of financial statements and press releases must be retracted and cannot be relied upon; and Pete Petit resigns.**

While Defendants were conducting their public campaign against Sparrow, the truth behind Defendants' business practices began to emerge. And it revealed Defendants' business practices were apparently not as sound as they claimed.

---

[13] Declaration of Nathan Koppikar ("Koppikar Decl.") ¶ 3, Ex. 1 (emphasis added). Again, Sparrow may reference these documents, since they constitute a portion of the defamatory statements Sparrow identifies and relied upon in preparing its Complaint. *Broder*, 418 F.3d at 196.

[14] Complaint ¶ 19. Contrary to Defendants' contention on page 12 of their Motion to Dismiss (ECF No. 45) that "Sparrow identifies no statement where Defendants have accused Sparrow or Aurelius of impersonating Petit," Petit expressly tied his allegations to the "particular group of short sellers" linked to the "recent short seller attacks on [MiMedx]." Complaint ¶ 19. MiMedx expressly accused Sparrow of being one of those short sellers linked to the "recent short seller attacks" and thus expressly included them among those accused of impersonating Petit. Defendants' contention that they directed these attacks only at Viceroy Research, is disingenuous, as that accusation was, by its own account, not made until March 6, 2018, well after Petit's statements accusing Sparrow and other short-sellers of criminally impersonating him.

[15] Koppikar Decl. ¶ 4, Ex. 2.

[16] Complaint ¶ 16 (emphasis added).

On March 15, 2018, for example, MiMedx issued a Form 8-K in which it admitted that it was the subject of ongoing SEC and DOJ probes into the same improprieties alleged by market commentators and former employees.[17]

On May 8, 2018, the federal district court of the District of South Carolina unsealed indictments accusing certain VA hospital employees of accepting bribes from MiMedx employees.[18]

On June 6, 2018, MiMedx issued a Form 8-K with the SEC, stating that "[MiMedx's] consolidated financial statements and other financial information, any press releases, investor presentations or other communications related thereto [from each fiscal year dating back to December 31, 2012] should no longer be relied upon," and that MiMedx's Audit Committee was "conducting an independent investigation into current and prior-period matters relating to allegations regarding certain sales and distribution practices at [MiMedx] and certain other matters."[19]

And on July 2, 2018, MiMedx announced Pete Petit's resignation as CEO, which the company attributed in part to the findings of the aforementioned internal investigation.[20]

**E.**   **MiMedx's lawsuit is not only a sham designed to divert public attention away from its own problems, but it was also brought in bad faith.**

The pleadings and other relevant materials the Court may consider more than create an inference that the MiMedx Lawsuit was a sham. The supposed rumors MiMedx claimed were so deceptive and necessary to fight have now been revealed as having significant truth. It is no

---

[17] MiMedx Group, Inc., Press Release (Exhibit 99.1 to Form 8-K) (Mar. 31, 2018), https://www.sec.gov/Archives/edgar/data/1376339/000137633918000026/0001376339-18-000026-index.html.

[18] Complaint ¶¶ 40-42.

[19] MiMedx Group, Inc., Current Report (Form 8-K) (June 6, 2018), https://www.sec.gov/Archives/edgar/data/1376339/000137633918000036/a8-kdocument662018.htm.

[20] MiMedx Group, Inc., Current Report (Form 8-K) (June 30, 2018), https://www.sec.gov/Archives/edgar/data/1376339/000119312518210478/d655278d8k.htm.

stretch to infer that Defendants filed their lawsuit and began their public campaign against

Sparrow entirely to divert investor attention from the very issues being publicly raised that the

public now knows are rooted in reasonable suspicion, if not outright truth.

Furthermore, Sparrow is not and never was Aurelius Value and promptly informed

Defendants of that fact. MiMedx, nevertheless, maintained its lawsuit and incredibly still

maintains it to this day. In her Report and Recommendation[21] recommending dismissal of the

MiMedx Lawsuit, the Honorable Katharine H. Parker stated the following:

> Here, Plaintiffs offer no factual support whatsoever for their belief that
> Sparrow is Aurelius Value. Nor have they offered any factual basis for their belief
> that Sparrow knows the identity of persons responsible for publishing Aurelius
> Value. For example, Plaintiffs do not assert that they have any person or
> informant that has stated there is a connection between the two entities. They do
> not assert that they have any forensic research connecting the internet address of
> Aurelius Value to Sparrow or any Sparrow employee. They do not identify in the
> Complaint any particular employee of Sparrow that is known to blog about
> MiMedx and reference postings by Aurelius Value. Moreover, as recently as
> November 2017, after the Complaint against Sparrow was filed, MiMedx
> conceded that it does not know the true identity of Aurelius Value and "is still in
> the process of perfecting its case against . . . two hidden entities." (Doc. No. 56,
> Crisp Decl., Ex. B (Ltr. from P. Petit to B. Fields (Nov. 1, 2017)) & Ex C
> (MiMedx Press Release (Nov. 8, 2017)).) The Court also notes that at least one
> other court has rejected an attempt to unmask Aurelius Value, suggesting that
> MiMedx really has no idea who is running Aurelius Value. *See Aurelius v. BofI
> Fed. Bank*, No. MC 16-71 DSF (FFM), 2016 WL 8925145, at \*3-6 (C.D. Cal.
> Sept. 20, 2016) (granting motion to quash and holding that "innuendo" and
> allegations of coordination based on the "timing" of certain events and statements,
> without more, did not justify BofI's attempt to unmask Aurelius).
>
> J'accuse is not enough to satisfy the pleading standard under *Iqbal*.
> Plaintiffs have failed to provide a sufficient factual basis to render it plausible that
> Sparrow is responsible for the conduct of Aurelius Value. Thus, all the claims
> against Sparrow must be dismissed.

After providing the proper notice, Sparrow filed a Rule 11 motion for sanctions against

MiMedx. Sparrow refers the Court to that filing, of which it may take judicial notice, for its

---

[21] Report & Recommendation at 9-10, MiMedx Lawsuit, ECF No. 83 (footnote omitted).

contention that the MiMedx Lawsuit was brought in bad faith and should be subject to

sanctions.[22] Sparrow will not recount those facts here, other than to note that, for purposes of

evaluating a motion to dismiss, the Court may consider the existence of other judicial filings and

may consider them as pleadings and facts in support of Sparrow's claims. [23]

## ARGUMENT

**A.    Sparrow has pleaded a prima facie case of defamation.**

Under New York law, a plaintiff must plead and prove the following elements to prove a

case for defamation *per se*: 1) a defamatory statement of fact; 2) of and concerning the plaintiff;

3) publication to a third-party; 4) falsity; 5) made with the applicable level of fault; 6) causing

injury to the plaintiff; and 7) the statement is not protected by privilege. *Pasqualini v.

Mortgageit, Inc.*, 498 F. Supp. 2d 659, 670 (S.D.N.Y. 2007).

Defendants have challenged Sparrow's pleading as to the seventh, second, and fifth

elements, in that order; that Defendants' defamatory statements are privileged (because they

represent a "true and fair" reporting of the MiMedx Lawsuit); that Defendants' statements were

not "of and concerning" Sparrow, because Sparrow was one of a few parties subject to

Defendants' attacks; and that Sparrow is a limited purpose public figure and cannot, therefore,

show Defendants acted with "actual malice." Sparrow addresses each argument in turn.

### 1.    Defendants' original lawsuit was a "sham" lawsuit and therefore triggers no privilege at all.

Defendants claim their defamatory statements were all privileged, invoking New York

Civil Rights Law § 74, which states: "A civil action cannot be maintained against any person,

firm or corporation, for the publication of a fair and true report of any judicial proceeding,

---

[22] *See* MiMedx Lawsuit, ECF Nos. 59, 60, 61, 73, and 74.
[23] Again, the Court recently dismissed, without prejudice, the Rule 11 motion on a service technicality, but has allowed Sparrow to renew the motion, which Sparrow, assuming MiMedx continues to refuse to withdraw its lawsuit, intends to do. *See* MiMedx Lawsuit, ECF No. 108.

legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." But Defendants ignore an exception to Section 74 that expressly prevents a defendant from claiming as privileged reports arising from their own sham lawsuit. This exception derives from the Court of Appeals' seminal opinion in *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969), wherein the Plaintiff alleged the defaming defendant deliberately instituted frivolous litigation for the express purpose of then hiding behind the statute (Section 74) to shield its statements from a defamation lawsuit. The court held Section 74 inapplicable, stating "it was never the intention of the Legislature in enacting section 74 to allow any person to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute." *Id.* The *Williams* exception has been a known, and well-established exception to Section 74 ever since.

In *Bridge C.A.T. Scan Associates v. Ohio Nuclear, Inc., et al.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985), for instance, the plaintiff, Technicare, brought a claim for defamation against defendant who filed a lawsuit claiming Technicare's scanners were defective and unsafe and then delivered a copy of the complaint to the press. Defendant invoked Section 74, claiming that both its statements in the complaint itself and its publicizing those statements to the press thereafter were sufficient to defeat a claim for defamation. *Id.* at 1194. But the Court found Plaintiff's allegations dispositive, stating: "Technicare claims that the statements were made and delivered to the press by [Defendant] for the purpose of publicly maligning its products. It has alleged that the complaint was unfounded, instituted with malice, and for the purpose of publicly disseminating libelous statements about its C.A.T. Scanners." *Id.* Citing the *Williams* exception, the Court concluded: "Under New York law, such a claim is barred neither by the absolute

14

privilege afforded statements made in pleadings, nor by the statutory privilege afforded fair and true reports of such statements," because "for [a party], purposely and maliciously, to stimulate press coverage and wide publicity of a complaint with its allegedly false and malicious statements is beyond the pale of protection." *See also Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 293 (S.D.N.Y. 2005) (discussing *Williams* and stating the rule that Section 74 will not protect defendants who "ma[ke] scurrilous false accusations in court . . . only so as to be able to repeat them out of court, under the purported protection § 74.")

Most importantly, for purposes of the current motion to dismiss, whether a lawsuit is in fact a sham lawsuit sufficient to avoid application of Section 74 is a factual issue inappropriate for resolution on a motion to dismiss. *Halcyon Jets, Inc. v. Jet One Group, Inc.*, 894 N.Y.S.2d 392, 393 (2010) ("Defendants' intention to use the [lawsuit] as such a device is a factual issue that is sufficiently pleaded and cannot [ ] presently be decided."); *Conte v. Newsday, Inc.,* 703 F. Supp. 2d 126, 146–47 (E.D.N.Y. 2010) (ruling as sufficient to defeat a motion to dismiss allegations that "defendants 'worked together' to 'concoct and draft' the state civil complaint, and did so specifically 'to avail themselves of the privileges associated with court proceedings.'").

And here, the allegations are more than plausible and clear: the MiMedx Lawsuit was and is a sham lawsuit. As Sparrow has both pleaded and outlined exhaustively in both its pending motion to dismiss and Rule 11 motion for sanctions in the MiMedx Lawsuit, MiMedx's allegations against Sparrow were frivolous, false, and not brought in good faith. But now, one can also safely infer that the allegations were designed to defame Sparrow while distracting the investing public's attention away from MiMedx's own unlawful activities. Defendants filed their lawsuit and began making their defamatory statements almost immediately on the heels of

numerous public reports from online bloggers regarding MiMedx's alleged practices of "channel stuffing" – a form of accounting fraud. Defendants wanted to immediately discredit and defame any who would dare either speak out about MiMedx or bet against its long-term fortunes. Yet, it is now revealed those initial reports were not so incredible as Defendants wanted the investing public to believe. On May 8, 2018, the federal district court for the District of South Carolina unsealed an indictment implicating MiMedx employees in what appears to be a far-ranging bribery scandal.[24] And on June 6, 2018, MiMedx was forced to issue a Form 8-K stating that "[MiMedx's] consolidated financial statements and other financial information, any press releases, investor presentations or other communications related thereto [from each fiscal year dating back to December 31, 2012] should no longer be relied upon," and that MiMedx's Audit Committee was "conducting an independent investigation into current and prior-period matters relating to allegations regarding certain sales and distribution practices at [MiMedx] and certain other matters." Defendants announced Petit's resignation approximately one month later, due in part to the ongoing investigation into the allegations.[25]

Moreover, that Defendants themselves published the allegations in the complaint, as opposed to some third-party publisher, weighs heavily against Defendants' invocation of Section 74. In *Halcyon Jets*, the court found relevant that the press release at issue, "unlike that in *Williams*, was not the reportage of an independent publisher but rather was issued by defendants themselves. While not dispositive, defendants' self-publication tends to connect the litigation and report thereof more closely than in *Williams*, making this an *a fortiori* case, and

---

[24] Complaint ¶ 40.

[25] Indeed, while Defendants argue that Petit's letter to the SEC referring to Aurelius Value as a shill is absolutely or at least qualifiedly privileged, that letter only further highlights Defendants' motives. Were Petit actually concerned about Sparrow's activities, it could have filed a Tip, Complaint, or Referral (TCR) form with the SEC; instead, it published a letter sent to the SEC providing further fire to the inference that Defendants were not so much interested in somehow bringing a supposedly "criminal" Sparrow to justice, but instead simply focused on generating press to distract the investing public.

undermining defendants' argument that because their press release, unlike that in *Williams*, was not directed at members of the parties' industry but was disseminated as a general news item, *Williams* does not apply as a matter of law." 894 N.Y.S.2d at 393.

Remarkably, Defendants now want to hide behind their own sham lawsuit, using their false allegations as both a sword and a shield. This is nowhere more evident than in Footnotes 7 and 9 of Defendants' Motion to Dismiss, in which Defendants make the argument that their defamatory statements "concerned Aurelius, not Sparrow," and that "Sparrow cannot sue Defendants for alleged harms to Aurelius's reputation while simultaneously claiming that it has no relation to Aurelius whatsoever."[26] In other words, Defendants now contend, unbelievably, they could not have defamed Sparrow because Sparrow is not Aurelius, while simultaneously maintaining a false lawsuit against Sparrow, in which they claim Sparrow *is* Aurelius. MiMedx's obstinance in maintaining its false lawsuit against Sparrow should not be rewarded. It is becoming increasingly clear that MiMedx maintains that suit purely as a mechanism to claim litigation privilege in Sparrow's defamation suit against MiMedx. In its moving papers, Defendants attempt to simultaneously, in front of the same Court, argue that Sparrow is and is not Aurelius, pivoting its argument based simply on what is most convenient for Defendants.

Fortunately, as outlined above, the law does not favor such audacity. Sparrow has pleaded that Defendants' lawsuit was in fact such a sham lawsuit, and to allow Defendants to now invoke its protection would not only violate this longstanding rule in New York but would also erode a party's right to have its reputation protected in the state.

---

[26] Memorandum of Law in Support of Defendants MiMedx Group, Inc.'s and Parker H. "Pete" Petit's Motion to Dismiss, pp. 16, 18, ECF No. 45.

2.      **Defendants' defamatory statements exceed the scope, nature, and quality of their prior lawsuit's allegations and are removed from the privilege.**

Additionally, Section 74 does not offer absolute protection for statements, such as the press releases and shareholder statements at issue here, made outside of the proceedings itself. *See Bridge C.A.T. Scan*, 608 F. Supp. at 1195 ("The common law privilege offers a shield to one who publishes libelous statements in a pleading or in open court for the purpose of protecting litigants' zeal in furthering their causes. . . . Delivery of a complaint or summary of a complaint to the press is neither essential nor relevant to the judicial proceedings themselves. It in no way aids a party in furthering his or her cause before a judicial tribunal and, hence, must fall outside the privilege afforded statements made during the course of judicial proceedings.")

Rather, such "'[o]ut-of-court statements such as press releases, which are not covered by the litigants' privilege, are privileged only to the extent that they represent *fair and true reports* of what occurred in the proceeding (subject to the *Williams* exception for a party's out-of-court repetition of a maliciously false statement in a pleading)." *Long*, 406 F. Supp. 2d at 294 (emphasis added). And here, Defendants have, in their press releases, shareholder communications, and other public correspondences identified in the Complaint, repeatedly labeled Sparrow a "criminal," and engaged in "criminal, market-manipulating behavior,"[27] which goes beyond anything pleaded in the MiMedx Lawsuit.

Again, this Court has stated that "[a]pplication of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury could conclude that the report 'suggest[ed] more serious conduct than that actually suggested in the judicial proceeding.'" *Bilinski*, 96 F. Supp. 3d at 48–49. *See also Long*, 406 F. Supp. 2d at 291-92.

---

[27] Complaint ¶16.

In its pleadings, MiMedx indeed alleged Sparrow had engaged in unlawful short selling and market manipulation but came short of accusing Sparrow of any criminal behavior. As MiMedx stated in its lawsuit, "Defendants' attempts to profit at the expense of MiMedx, its employees . . ., its customers, and its stockholders . . . are wrongful and illegal *under common-law concepts of libel, slander, defamation, and false light*."[28] MiMedx expressly stopped short of calling Sparrow a criminal or otherwise accusing Sparrow of engaging in criminal conduct, as opposed to tortious conduct. Yet, in Defendants' subsequent press releases, shareholder communications, and other defamatory communications, Defendants did exactly that, thereby exceeding the scope of the MiMedx Lawsuit allegations. For instance, in a shareholder communicated dated October 25, 2017, MiMedx expressly referred to "the *real criminals* a[s] the ones propagating false and misleading information about MiMedx and then doing their illegal short selling."[29] Similarly, in its October 17, 2017 press release (¶ 19), MiMedx expressly accused those involved in "the recent short seller attacks on [MiMedx]," which would logically implicate Sparrow, as impersonating Pete Petit, which it expressly described as "a crime." In a January 24, 2018 shareholder communication, MiMedx again described the short-sellers as guilty of "a type of securities fraud."[30] Criminal charges are significantly more serious than tort violations, and, for that reason, automatically qualify, and indeed are one of the prototypical examples of defamation per se. *Liberman v. Gelstein*, 80 N.Y.2d 429, 434-5 (1992).

3. **Defendants' defamatory statements directly identify and implicate Sparrow and are thus "of and concerning" Sparrow.**

To state a claim for defamation *per se*, Defendants' statements must be "of and concerning" Plaintiff. The MiMedx Lawsuit falsely identifies Sparrow as the anonymous blogger

---

[28] MiMedx Lawsuit, ECF No. 1, at ¶ 3 (emphasis added).
[29] Koppikar Decl. ¶ 3, Ex. 1 (emphasis added).
[30] Koppikar Decl. ¶ 4, Ex. 2.

Aurelius Value. And, despite Sparrow providing sworn affidavits from all of its employees and a mountain of evidence that exists contradicting that assertion, and along with pending motions to dismiss and for Rule 11 sanctions, *to date, Defendants have not refuted, withdrawn, or otherwise modified this accusation*. In Defendants' many public statements at issue, Defendants refer expressly to Aurelius Value, which it still publicly maintains is Sparrow, as one of a group of "short sellers" it is suing. There is no confusion or ambiguity about whom Defendants' statements are referencing. Moreover, whether a defamatory statement is "of and concerning" the plaintiff is generally a question of fact for the jury, inappropriate for resolution on the pleadings. *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).

Defendants are claiming their statements cannot be defamatory because they do not, with sufficient particularly, identify Sparrow among the others they are also likely defaming. This is demonstrably false, but in either event at most it simply highlights the factual nature of this question and why it is inappropriate for resolution on the pleadings.

Again, the underlying complaint itself identifies Sparrow *as* "Aurelius Value," so all of Defendants' statements must be taken in the context of that allegation. Because Defendants themselves have identified a small subset of "short sellers" as those whom MiMedx has already sued, and because Sparrow is one of the entities that MiMedx did in fact sue, any of Defendants' statements about "short sellers" are implicitly "of and concerning" Sparrow as one member of this discrete group. On page 18 of their motion to dismiss (ECF No. 45), for instance, Defendants plainly acknowledge that "Petit is alleged to have referred to *a group of short sellers including Sparrow* as being engaged in 'illegal' behavior and the defendants that MiMedx was 'going down the civil path with.' Petit's statement regarding 'going down the civil path' is *clearly a*

*reference to the pending MiMedx Litigation* between MiMedx and *the short sellers, including Sparro*w."[31] Defendants also wrote that "Petit is alleged to have written in a letter to the SEC that Aurelius was a 'shill' engaged in 'illegal short selling.' . . ."[32] The statements of Defendants here do not discuss short selling generally, but short selling with respect to MiMedx, and more importantly, the particular short sellers that "MiMedx was 'going down the civil path with'"—to use Defendants' own words. That group is considerably smaller—it can be counted on one hand—and plainly includes Sparrow, as Defendants themselves admitted in their own motion. *See Brady v. Ottaway Newspapers, Inc*., 445 N.Y.S.2d 786 (2d Dep't 1981) (group of 53 unindicted police officers allowed to pursue a libel claim based upon a newspaper story stating the "entire [police] department was under a cloud").

### 4. Sparrow has pleaded Defendants acted with "actual malice" and, therefore, any argument that Sparrow is a limited purpose public figure is irrelevant.

A plaintiff's public status determines the level of scienter that plaintiff must plead (and ultimately prove) against defendants. A "private figure" is one who has not invited public scrutiny of their life, business, and behavior. And therefore, that plaintiff need plead only that the defamers acted either negligently, or where the defamatory content is "arguably within the sphere of legitimate public concern," "in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016). Where, on the other hand, a plaintiff in a defamation suit is a public figure and has presumptively invited such scrutiny, the plaintiff must plead the defamers acted with "actual malice" "[i.e.,] with knowledge that [the statement] was false or with reckless

---

[31] ECF No. 45, at p. 18 (emphasis added) (citation omitted).
[32] *See* MiMedx Lawsuit Complaint, ECF No. 1, at ¶ 77 ("*Defendants' role was to act as a 'shill'* for bearish traders and short sellers of MiMedx stock …').")"; ECF No. 45, at p. 18 (emphasis added).

disregard of whether it was false or not." *Gertz*, 418 U.S. at 327, 342 (*quoting* at 327 *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)) (internal quotation marks omitted). There are two types of public figures, general purpose and limited purpose. In their motion to dismiss, Defendants argue Sparrow is a "limited purpose public figure." Sparrow addresses the substance of that argument below, but first, and to be clear, the argument is itself irrelevant, because Sparrow has sufficiently pleaded that Defendants acted with "actual malice."

The Complaint ties Defendants' motivation for making their defamatory statements, again, to their effort to distract investor attention away from their own unsavory business practices to Sparrow.[33] In other words, Defendants made statements about Sparrow that they either knew were not true or made with reckless disregard for the truth for the express purpose of distracting the investing public. Further, Sparrow alleges that "MiMedx has no evidence that Sparrow has done anything illegal or criminal, yet MiMedx has made false claims and acted with reckless disregard for the truth in making numerous defamatory statements about Sparrow. Further, MiMedx has acted with actual malice in its public representations regarding Sparrow."[34] The fact alleged is that Defendants have no evidence of any improper conduct on the part of Plaintiff—a fact taken as true for purposes of this motion. That is a fact that can be proven or disproven at trial. And finally, in their Rule 11 motion for sanctions, which the Court can take notice of and consider for purposes of Defendants' motion, Sparrow outlines the evidence that Defendants indeed did act in bad faith when making their allegations against Sparrow.

And thus, whether or not Sparrow is a limited purpose public figure (which it is not, as outlined below), Sparrow has sufficiently pleaded Defendants acted with "actual malice," thereby making any argument about Sparrow's public status irrelevant.

---

[33] Complaint ¶¶ 40-43.
[34] Complaint ¶ 44.

**5.      But in either event, Sparrow is not a limited purpose public figure.**

Again, for purposes of determining the level of scienter a plaintiff must plead in a

defamation case, there are two types of public figures: general purpose and limited purpose.

Defendants here do not claim that Sparrow is a general-purpose public figure. After all, Sparrow

is a small investment firm with only three employees; it is hardly a household name.[35] Nor is

Sparrow a limited purpose public figure, because Sparrow has not "thrust [itself] into the vortex

of this public issue, nor did [it] engage the public's attention in an attempt to influence its

outcome." *Mitre Sports*, 22 F. Supp. 3d at 249 (*quoting Gertz*, 418 U.S. at 352) (internal

quotation marks omitted). Sparrow was plucked out of the investment crowd by Defendants and

subjected to baseless accusations of tortious and then criminal conduct. The only public

statement that Sparrow has engaged in have been in defense of these accusations.

As an initial matter, it is unclear what "public controversy" Defendants contend Sparrow

"thrust itself into the vortex of." In determining whether a "public controversy" exists and what

the controversy is, a court "must examine whether persons actually were discussing some

*specific question.* A general concern or interest will not suffice." *Waldbaum v. Fairchild*

*Publications, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980) (emphasis added). At most, Defendants

have contended as the "public controversy" the general propriety of short selling. But, as

outlined below, Sparrow has never even commented on that (much less thrust itself into the

vortex of any such debate). More importantly, that cannot be the "public controversy" here,

because a "public controversy" is "defined as the event that the defamatory statements describe."

*Naataanbuu v. Abernathy*, 816 F. Supp. 218, 225 (S.D.N.Y. 1993). The defamatory statements at

issue all describe "criminal" and "illegal" short selling activity and, more specifically, the value

---

[35] Complaint ¶ 46.

of MiMedx's stock. As discussed below, outside of this litigation and the MiMedx Lawsuit, and even then only to defend itself, Sparrow has never commented on any of those issues and certainly never "thrust itself into the vortex" of any such issues.

Additionally, irrespective of any notoriety within the investment community, professional renown is not enough to make an entity into even a limited purpose public figure. For example, in *Mitre Sports Int'l*, the company branded itself as "synonymous with soccer," the "number one manufacturer of [soccer balls] in the world," "the leading maker of soccer shoes and balls in the U.S.," a "top supplier of soccer equipment," and as one of "two giants in the soccer industry," yet still did not meet the standard for general purpose public figure on the issue of using illegal child labor to make soccer balls. *Id*. at 250 (internal quotation marks omitted). But more significantly, *Mitre Sports Int'l* held that these branding efforts, other public attention on the issue of child labor, and Mitre's own policy on child labor were not sufficient to confer limited purpose public figure status where Mitre had not taken any "affirmative steps to attract *personal attention* or had strived to achieve a measure of *public acclaim*" on the issue. *Id*. at 251 (emphasis added). Indeed, Mitre had done none of these publicity-seeking activities prior to an exposé by HBO that documented child laborers in India, and thus was not a limited public figure at all. *Id.* at 252 (factoring in prior news stories about company using child labor, Mitre's participation in the issue was still not "voluntary").

Similarly, Sparrow has done none of these publicity-seeking activities in this case. It has not invited any attention of the public to short selling, let alone to MiMedx's individual situation.[36] Sparrow has not volunteered to take any role in the MiMedx investigation or in the press surrounding allegations of fraud against the company.[37] Certainly, Sparrow has not

---

[36] Complaint at ¶ 46.
[37] *Id.*

attempted to cast itself as an expert or advocate for short selling, as that is nowhere in evidence or in the complaint. And finally, there is no proof in the complaint or elsewhere that Sparrow has affirmatively placed itself before the media on the MiMedx situation or any other short selling controversy.

Defendants, perhaps recognizing the lack of any proof of such behavior on the part of Sparrow, turn to one of Sparrow's employees, Nathan Koppikar posting under the pseudonym "The Friendly Bear," as "proof" that Sparrow itself is attracting media attention on the topic of short selling, or on the MiMedx fraud investigation in particular. Defendants' bait-and-switch fails for at least two substantial reasons. First and most importantly, the anonymous comments of an employee are neither attributed to nor attributable to Sparrow, have never been attributed to Sparrow, and there is no evidence whatsoever that these comments were undertaken on behalf of the company. This fact alone eviscerates Defendants' argument that Sparrow has sought out media attention for itself, because under New York law, the "*burden of proof [is] on the defendant*" to establish that plaintiff is a public figure. *Krauss v. Globe Int'l, Inc.*, 674 N.Y.S.2d 662, 663–64 (1998) (citation omitted) (emphasis added). On an FRCP 12(b)(6) motion, looking only to the complaint and any associated filings, Defendants flatly cannot carry that burden here. Koppikar is not Sparrow, and Sparrow is indeed a private figure.

Next, Defendants fail to establish how—or cite authority for the idea that—offering public opinions of short selling (a legal activity, like manufacturing soccer balls) in any way allows accusations of illegal market manipulation. Just as in *Mitre Sports Int'l*, even if one holds oneself out as an expert in a field, and engaged in marketing and branding activities, that does not translate into an abandonment of private-figure status. Nothing about the short-selling of stocks or the posting of anonymous comments on the internet by an individual employee will

invite accusations of criminal conduct. Despite Defendants' fevered diatribes, there is no "public controversy" about short selling. There is definitely no evidence of any such wide-spread, generally engaged debate in the public square about such practices. "[I]n order to be considered a public controversy for this purpose, the subject matter must be more than simply newsworthy . . . Instead, it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Krauss*, 674 N.Y.S.2d at 663–664 (citations omitted). But again, more importantly, even if there were, Defendants have not even argued that Sparrow, or Mr. Koppikar, ever commented on MiMedx's business practices.  Defendants' reference to the moniker, The Friendly Bear, reads more as an 11th hour attempt to justify their original lawsuit, which Sparrow addresses in its pending Rule 11 motion (the one which it intends to renew shortly).  Either way, it does not change the fact that The Friendly Bear has never said a word about MiMedx.

Therefore, Defendants are not entitled to assume a malice standard for purposes of their FRCP 12(b)(6) motion, and Plaintiff has pleaded that Defendants have acted with malice in any event. Even so, any purported failure to plead malice or plead private figure status with sufficient particularity is not fatal. These are pleading issues, and any defects can be corrected. Should Defendants truly wish to challenge these points, the proper posture would be at summary judgment where facts can be marshalled on all sides. Defendants' motion to dismiss on public figure grounds is not only poorly taken, it is also premature. The motion to dismiss should be denied.

**B.      Sparrow has pleaded a prima facie case of civil conspiracy.**

Defendants also attack Sparrow's claim for civil conspiracy brought against all Defendants, including the John Doe defendants, claiming the allegations lack plausible specificity. As an initial point, Defendants' argument hinges on the viability of Sparrow's

defamation claims. In other words, Defendants argue that, should their arguments against the defamation claim be accepted, then so too must the civil conspiracy claim be dismissed. The converse is, of course, also true. Should the Court reject Defendants' arguments, then dismissal of the civil conspiracy claim is not automatic.

More to the point, the allegations of civil conspiracy are plausible and rooted in cognizable, provable facts, inappropriate for resolution on a motion to dismiss. Sparrow has outlined a theory by which it has linked a number of online bloggers to Defendants MiMedx and Pete Petit.

First, Sparrow expressly links one of the John Doe defendants, @nascardrivers69, to confidential information about a former MiMedx employee, Jess Kruchoski, that according to Mr. Kruchoski, only somebody within MiMedx would know.[38] Additionally, Sparrow alleges a second John Doe defendant, @atlantadoctors, made public allegations (albeit false allegations) about Sparrow's counsel that would have only been discussed by either Sparrow and its counsel or Defendants and their counsel.[39] There is nothing speculative or implausible about such direct links of the John Doe defendants to Defendants.

Second, the John Doe defendants began simultaneously tweeting positive information about MiMedx and disparaging information about Sparrow around the same time Defendants began their very public campaign against Sparrow as a "criminal," and "illegal" short seller.[40] Such timing is more than slightly suspicious, and it is not likely any other traders would have engaged in such behavior independently at a time when MiMedx's stock was not performing. "[C]ircumstantial factual allegations [may]… give rise to a 'reasonable inference' that the

---

[38] Complaint ¶ 35.
[39] Complaint ¶¶ 36-37.
[40] Complaint ¶¶ 28-32.

defendant committed the alleged misconduct … when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013) (citation and internal quotation marks omitted). Indeed, a reasonable "plausible inference" is all that is required at this stage in the proceeding. *Pension Ben.*, 712 F.3d at 719.

Third, nobody else was claiming, publicly or privately, that Sparrow was Aurelius Value, likely because it is simply not true. Yet, the John Does were, and that was uniquely consistent with Defendants' public accusations.[41]

And fourth, Sparrow readily acknowledges and has pleaded that, "[t]hough there are methods to discover the identities associated with the John Doe defendants, and though there are general indications as to the identities of the persons associated with the Twitter handles identified above, Sparrow is unable, in the absence of the discovery process, to confirm those identities with absolute certainty."[42] And for that purpose, Sparrow has filed two motions for expedited discovery to confirm the identities of these individuals and their links to Defendants. Defendants have opposed those motions. Remarkably, however, Defendants have now questioned the plausibility of Sparrow's claims that could be proved or disproved but for Defendants' opposition to standard motions for expedited discovery. In fact, Defendants openly question why Sparrow would delay identifying the John Doe defendants when it has suspicions as to who they are.[43] It is, of course, precisely to avoid any speculative pleading that Sparrow has so delayed identifying the John Does. Given MiMedx's rush to falsely accuse Sparrow of being Aurelius Value, MiMedx might do well to consider such tactics itself. But in either event,

---

[41] Complaint ¶ 31.
[42] Complaint ¶ 38.
[43] ECF No. 45, at p. 29.

Defendants' logic is circular: Sparrow's allegations are speculative because they seek to confirm through discovery the identities of the John Doe defendants in order to not be speculative and we Defendants will oppose those efforts while arguing Sparrow's allegations are speculative. Such logic is dizzying. Moreover, Defendants' opposition to those motions – which in effect amount to Sparrow requesting from the Court permission to serve third-party subpoenas – is telling. Should Sparrow's allegations be as speculative and outlandish as Defendants suggest, why oppose them now?

Obviously, a conspiracy by its very nature is not going to be observable to those outside of the conspiracy, and must be proven by circumstantial means. This Court itself has noted that: "The Second Circuit has recognized that 'conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Jackson v. Ramirez*, No. 1:15-CV-617-GHW, 2016 WL 796854, at *14 (S.D.N.Y. Feb. 22, 2016), *aff'd*, 691 F. App'x 45 (2d Cir. 2017) (citations omitted). In all, the allegations of civil conspiracy here go well beyond a rote recitation of elements or conclusory restating of elements. Plaintiff has alleged that the known Defendants and the John Doe defendants engaged in coordinated, orchestrated offensive and defensive public statements at the same time on the same topics, with the Doe defendants utilizing information that was known to be in the possession of the known Defendants and their legal counsel immediately prior to it being anonymously disclosed on the internet. At the very least, taking all facts and inferences in the light most favorable to Plaintiff, there is enough evidence to avoid dismissal at this stage. Defendants' motion should be denied, and discovery allowed to proceed to identify the authors of those anonymous internet postings.

**C.**     **Alternatively, should the Court find any of the pleadings deficient, Sparrow respectfully requests the Court allow it leave to amend its pleadings to correct those deficiencies.**

For all the foregoing reasons, Sparrow contends its Complaint, as presently pleaded, is sufficient to survive Defendants' motion. Nevertheless, should the Court disagree, Sparrow respectfully requests leave from the Court to amend, to cure whatever deficiencies the Court identifies. Leave to amend is to be granted liberally and can only be denied upon a "valid ground;" i.e., where it would be impossible to cure any deficiencies. *Ronzani v. Sanofi*, 899 F.2d 195, 198 (2d Cir. 1990). That is not the case here, and Sparrow respectfully requests leave to so amend should the Court identify any deficiencies in its pleadings.

<u>**CONCLUSION**</u>

*Nullus commodum capere potest ex sua injuria propria*

– No one can derive an advantage from his own wrong.

When the investment community began discussing and absorbing the reports of Defendants' improper business practices, Defendants desperately sought a scapegoat. They filed a lawsuit in bad faith, falsely accusing Sparrow of being an anonymous blogger out to tank their stock while profiting from it. Seeking to amplify their efforts, they then began an aggressive campaign essentially marketing their own lawsuit while also going beyond those allegations to show the investing public that all was well with the company and all the problems emanated from the "criminal" Sparrow. But now the record is clear that Defendants knew not all was well at home, and their efforts to simultaneously deny that while shifting blame towards Sparrow were both deceptive and in bad faith. The Department of Justice has issued indictments implicating MiMedx employees, while MiMedx's audit committee has retracted six years' worth of financial records and public statements. Where there is smoke there is fire. And there is a lot of smoke here. Defendants do not get to use their lawsuit as both a sword and a shield. They do

30

not get to file a sham lawsuit to deceive the public and defame Sparrow, a private entity with no

connection to the events at issue, and then use that lawsuit as a tool to prevent any accountability

for such brazen defamation. As the maxim states, "no one can derive an advantage from his own

wrong." And that is exactly what Defendants are attempting to do here. Sparrow respectfully

requests the Court deny Defendants' motion to dismiss as premature in light of the strong and

plausible evidence supporting the allegations.


Dated: September 14, 2018

                        Respectfully submitted,

                        **BRESSLER, AMERY & ROSS, P.C.**

                        /s/ Nikolas S. Komyati
                        Nikolas S. Komyati, NYB #4298188
                        nkomyati@bressler.com
                        Bressler, Amery & Ross, P.C.
                        17 State Street
                        New York, NY 10004
                        Tel: 212-425-9300
                        Fax: 212-425-9337

                        **HARRIS BERNE CHRISTENSEN LLP**

                        /s/ Adam S. Heder
                        Adam S. Heder, CSB #270946, OSB #151144
                        adamh@hbclawyers.com
                        Harris Berne Christensen LLP
                        5000 Meadows Road, Suite 400
                        Lake Oswego, OR 97035
                        Tel: 503-968-1475
                        Fax: 503-968-2003
                        *Admitted pro hac vice*

                            *Counsel for Plaintiff Sparrow Fund*
                            *Management, LP*