UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPARROW FUND MANAGEMENT, LP,<br><br>                               Plaintiff,<br><br>vs.<br><br>MIMDEX GROUP, INC., PARKER H. "PETE" PETIT and JOHN DOES 1-10,<br><br>                               Defendants. | Civil Case No.: 1:18-cv-04921-PGG-KHP<br><br>**PLAINTIFF'S OMNIBUS REPLY IN SUPPORT OF ITS MOTIONS FOR EXPEDITED DISCOVERY**<br>**(DKT. NOS. 15 & 24)** |

**I.**     **Summary**

- "The Circuit Courts have unanimously approved the procedure of suing John Doe defendants and then using discovery to identify such defendants. For example, the Second Circuit stated that 'courts have rejected the dismissal of suits against unnamed defendants . . . identified only as John Doe's until the plaintiff has had some opportunity for discovery to learn the identities. . . . Because identifying the [anonymous defendant] by name is necessary for Plaintiffs to advance the asserted claims, Plaintiffs have established the good cause for the requested discovery."

    o  Defendant MiMedx Group, Inc's briefing before this Court as to why expedited discovery was necessary in its action against Sparrow Fund Management LP to confirm the identify of an anonymous defendant.[1]

This quotation represents just one example, among countless others, demonstrating Defendants' flip-flopping, gamesmanship, and unjustifiable positions in the current matter. They consistently want to have it both ways in this litigation. On the one hand, they file a sham lawsuit for defamation, attempting to deflect attention from the revelations about their improper business practices while wrongfully accusing Sparrow of engaging in criminal short selling activities. But, on the other hand, they now want to hide behind that action claiming their sham lawsuit privileges their own defamatory statements. Additionally, on the one hand, they sued Sparrow

---

[1] *MiMedx Group, Inc., et al. v. Sparrow Fund Management LP AKA "Aurelius Value,"* Case No. 1:17-cv-07568 ("Sparrow I"), Dkt. No. 15, at pp. 11-12, n.1 (citations omitted).

1

for defamatory statements it did not even make, claiming that illegal short sellers need to be held to account for their misdeeds. But on the other hand, when Sparrow sues them for defamatory statements they undisputedly *did* make, they want to paint the litigation as illegitimate and as a "revenge suit."

And now, in the latest episode of "Defendants wanting to have their cake and eat it too," Defendants are objecting to Sparrow's attempts to serve third-party subpoenas to discover the John Doe defendants' identities, *despite having previously requested before this Court the exact same relief.* Remarkably, Defendants criticize Sparrow for making virtually the same argument they previously made. Sparrow contends it needs expedited discovery to confirm the John Doe defendants because, even though Sparrow has good-faith suspicions as to their identifies, it is unable to confirm them in the absence of formal discovery. In response, Defendants state that the argument "defies all logic," because "[i]f Sparrow is able to locate these individuals to serve them with discovery, then they should be able to serve them with process through the same exact means."[2] Yet, in their prior motion for expedited discovery in their suit against Sparrow, MiMedx argued as justification for expedited discovery to discover an anonymous defendant's identify, "[h]ere, [MiMedx] ha[s] identified [anonymous defendant] by its twitter handle and website *but need additional information to identify Viceroy as a legal person or entity.*"[3]

But even setting all that aside, Defendants' opposition to the motion for expedited discovery fails to address the elephant in the room: What standing do Defendants have to even oppose the expedited discovery (which amounts to a request for several third-party subpoenas)? "Generally, a party will not have standing to object to a subpoena directed to a third-party in the

---

[2] *Sparrow Fund Management LP v. MiMedx Group, Inc., et al. ("Sparrow II")*, Case No. 1:18-cv-04921-PGG-KHP, Dkt. No. 51, at p. 8.
[3] *Sparrow I*, Dkt. No. 15, at p. 12 (emphasis added).

absence of a claim of privilege." *Arista Records LLS v. Lime Grp. LLC*, 06 Civ. 5936 (KMW) (DF), 2010 US Dist LEXIS 144554, at *6 (SDNY Oct. 15, 2010) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975)). The exception is where "the [objecting party] has alleged some personal privacy right or privilege to the documents sought." *McNerney v. Archer Daniels Midland Co.*, 164 FRD 584, 587 (WDNY 1995). Defendants do not even contend they have some privacy right or privilege that could be implicated by the subpoenas, though their resistance to the motions now definitely has suspicious implications.

In truth, Defendants do not contend they have standing to object to what amounts to a handful of third-party subpoenas because they have none. Sparrow seeks expedited discovery to identify and serve the John Doe defendants – the same relief Defendants previously sought in this Court using virtually the same rationale Defendants relied upon. Under this Court's guidance, good cause exists to grant that request now. Sparrow respectfully requests the Court grant its request for expedited discovery.

## II.    As an initial point, Defendants' latest filing continues their tradition of misstatements.

In what appears to be Defendants' latest excuse for maintaining its baseless lawsuit against Sparrow, Defendants contend in their opposition brief that "Aurelius [Value] notably ceased publication [following the filing of the *Sparrow I* lawsuit] of further articles on MiMedx until mid-February 2018 – approximately one month after this Courts' recommendation to dismiss the Complaint against Sparrow."[4] This is demonstrably false. On October 18, 2018 – approximately two weeks after the lawsuit was filed – Aurelius Value published a letter s/he had

---

[4] *Sparrow II*, Dkt. No. 51, at p. 6.

written to Senator Isakson expressing concern over MiMedx's practices within the VA and requesting that he recuse himself from the VA's investigation into those allegations.[5]

**III.   Again, Sparrow seeks expedited discovery for two primary reasons: 1) to identify and serve the John Doe Defendants and 2) to prevent the untimely destruction of relevant evidence.**

To be clear, this Court in *Sparrow I* has already found as valid Sparrow's primary reason for wanting expedited discovery: to identify and serve the John Doe Defendants.[6] In her Report and Recommendations recommending both dismissal of MiMedx's claims against Sparrow and allowing Plaintiff McCormack to conduct expedited discovery to identify one of the anonymous defendants, Judge Parker stated:

> A Court may order early or expedited discovery upon a showing of good cause. Discovery to determine the identity of John Doe defendants has been found appropriate. Because identifying the Defendant Viceroy by name is necessary for Plaintiffs to advance their asserted claims, and because Plaintiff McCormack may very well be able to make out a claim for defamation *per se* (and no Defendant has argued otherwise), Plaintiffs have established good cause for some discovery.[7]

That same rationale applies in the current case.[8] Sparrow needs to identify by name the John Doe defendants and serve them. And though Defendants have argued in their Motion to Dismiss that the claims *as to the named defendants* lack merit, they do not (and could not) assert that the claims against the John Doe defendants lack merit. Furthermore, for the reasons outlined

---

[5] Declaration of Nathan Koppikar ¶ 3, Ex. 1.
[6] Defendants attempt to dismiss this fact by claiming that in *Sparrow I* the then-assigned district judge's rules required MiMedx to serve the unnamed defendants before proceeding with the case. *Sparrow II*, Dkt. No. 51, at p.4. Here, Defendants argue, "[t]here is no rule in the instant case requiring the alleged 'John Doe defendants' be served before the court can address the pending motion to dismiss or otherwise allow the case to proceed to discovery in the normal course." *Id.* at pp. 4-5. This argument is disingenuous. In their briefing, Defendants never argued nor invoked the rule before this Court that they now claim was so crucial to the Court's earlier decision.
[7] *Sparrow I*, Dkt. No. 83, at p. 22.
[8] Judge Parkers' Report and Recommendations denied the motion for expedited discovery as to the named defendants, such as Sparrow, because those parties had already disclaimed knowledge of the information MiMedx sought (and had provided affidavits to that effect). *Sparrow I*, Dkt. No. 83, at p. 23. But here, Sparrow is not seeking discovery from MiMedx or Petit, only from third parties it suspects either have relevant information or are the John Doe defendants themselves.

4

in Sparrow's opposition briefs, Defendants' arguments in their Motion to Dismiss lack merit. In fact, mere days after the filing of Sparrow's opposition brief, MiMedx terminated defendant Pete Petit "with cause," apparently finding merit in the accusations regarding Petit's role in the "channel stuffing" allegations against MiMedx.[9] This further highlights the highly factual and colorable nature of Sparrow's claims and why they are inappropriate for dismissal on the pleadings.

Further, the threat of losing access to relevant discovery, in the absence of expedited discovery, is very real. In their opposition, Defendants argue that Sparrow can simply send out litigation hold letters. But Sparrow has done that, and some of the relevant individuals/entities have flatly refused to comply with them, while others have refused to even acknowledge them. For example, Sparrow sent a litigation hold letter to CG Capital, MiMedx's outsourced PR firm. Sparrow has reason to believe that an employee or independent contractor for CG Capital is one of the John Does in this case, i.e., Tedra Desue. In response, CG Capital responded that it would not be complying with the litigation hold letter based on an unjustifiably narrow interpretation of the letter. Furthermore, the bulk of evidence in this case relating to the John Doe defendants is found on servers controlled by Twitter Inc. Sparrow sent Twitter a litigation hold letter, to which Twitter responded that, barring a formal court order, it would not commit to holding records relating to any of the John Doe defendants.[10] Kevin Rogers and Blair Perot, on the other hand, have not even acknowledged the letters nor returned voicemails.[11]

---

[9] MiMedx Group, Inc., Press Release (Exhibit 99.1 to Form 8-K) (Sep. 20, 2018), https://www.sec.gov/Archives/edgar/data/1376339/000119312518278879/d623644d8k.htm.
[10] Declaration of Adam Heder ("Heder Decl.") ¶¶ 2-5, Exs. 1-2.
[11] Heder Decl. ¶ 5.

## IV. Defendants do not have standing to object to the motion; they have not even argued as much; and their arguments on this point only further color Sparrow's allegations.

Sparrow's motions for expedited discovery request nothing more than to serve third-party subpoenas on a handful of parties, two of whom Sparrow suspects are the John Doe defendants. In contrast with Defendants' motions for expedited discovery in *Sparrow I* where they sought expedited discovery *from Sparrow* (a motion Sparrow successfully defeated)[12], here, Sparrow does not seek *any* discovery from Defendants. Yet, Defendants have not offered a single argument as to why they have standing to oppose those subpoenas now. Again, "[g]enerally, a party will not have standing to object to a subpoena directed to a third-party in the absence of a claim of privilege," except where the party has some privacy right personal privilege pertaining to the documents. *Arista Records LLS*, 2010 US Dist. LEXIS 144554, at *6 (citations omitted); *McNerney*, 164 FRD at 587. Defendants do not even contend they have standing to oppose the third-party subpoenas. More importantly, they cannot make that argument without conceding Sparrow's allegations; i.e., that Defendants are working with or at the direction of Defendants to defame Sparrow. Again, Defendants want it both ways – to oppose third-party subpoenas without disclosing their basis for standing to do so.

Furthermore, Defendants cannot show any "good cause" why the motions should be denied. Aside from failing to even argue they have standing, they also fail to identify how they would be burdened in any way by the motions for expedited discovery. The truth is they won't be burdened because the subpoenas would not be directed at the named Defendants and would result in only incidental expense to them.

---

[12] To be clear, in *Sparrow I*, MiMedx and Sean McCormack sought expedited discovery both from Sparrow and in the form of third-party subpoenas directed at confirming the identity of the defendant Viceroy. The Court denied the requests as to Sparrow and the other named defendants but granted Mr. McCormack's request (and not MiMedx's) as to the internet service provider associated with Viceroy's IP address.

6

## V.     Conclusion

Sparrow has shown good cause for needing expedited discovery, giving the same reasons, in fact, MiMedx previously presented to this Court. Defendants do not have standing to object to third-party subpoenas, and they have not even attempted to argue as much. Sparrow respectfully requests the Court allow it to serve the subpoenas identified in its prior motions (Dkt. Nos. 15 & 24).

Dated: October 26, 2018

                                Respectfully submitted,

**BRESSLER, AMERY & ROSS, P.C.**

/s/ Nikolas S. Komyati
Nikolas S. Komyati, NYB #4298188
nkomyati@bressler.com
Bressler, Amery & Ross, P.C.
17 State Street
New York, NY 10004
Tel: 212-425-9300
Fax: 212-425-9337

**HARRIS BERNE CHRISTENSEN LLP**

/s/ Adam S. Heder
Adam S. Heder, CSB #270946, OSB #151144
adamh@hbclawyers.com
Harris Berne Christensen LLP
15350 SW Sequoia Parkway, Suite 250
Portland, OR 97224
Tel: 503-968-1475
Fax: 503-968-2003
*Admitted pro hac vice*

*Counsel for Plaintiff Sparrow Fund Management, LP*