### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPARROW FUND MANAGEMENT, LP,<br><br>Plaintiff,<br><br>vs.<br><br>MIMDEX GROUP, INC., PARKER H. "PETE" PETIT and JOHN DOES 1-10,<br><br>Defendants. | Civil Case No.: 1:18-cv-04921-JGK<br><br>**DECLARATION OF ADAM HEDER IN SUPPORT OF PLAINTIFF'S OMNIBUS REPLY IN SUPPORT OF ITS MOTIONS FOR EXPEDITED DISCOVERY (DKT NOS. 15 & 24)** |

I, Adam S. Heder, declare:

1.      I am one of the attorneys of record for Plaintiff Sparrow Fund Management, LP ("Sparrow") in the above-referenced matter.

2.      Sparrow, through my office, sent out litigation hold letters to numerous persons and entities that likely have relevant information to the above-referenced matter, including to the individuals Sparrow suspects as the John Doe defendants in the above-referenced matter. On July 3, 2018, for example, I sent a letter to The Cockrell Group USA, Inc., otherwise known as CG Capital, which we understand works as MiMedx Group, Inc.'s outsourced PR firm. As Sparrow has outlined in prior submissions, Sparrow has reason to believe that an employee or independent contractor for CG Capital is one of the John Does in this case, i.e., Tedra Desue.

3.      In response, CG Capital's outside counsel contacted me and explained that CG Capital was taking the position it was not bound by the litigation hold letter. A copy of that email correspondence is attached hereto as Exhibit 1.

4.      Furthermore, the bulk of evidence in this case relating to the John Doe defendants is found on servers controlled by Twitter Inc. Twitter has already indicated that barring a formal

court order, it will not commit to holding records relating to any of the John Doe defendants. A

copy of that response is attached hereto as Exhibit 2.

     5.     Litigation hold letters to Kevin Rogers and Blair Perot, on the other hand, have

gone unanswered. Nor has either individual responded to emails or voicemails from me.

**I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND I UNDERSTAND THIS DECLARATION IS MADE FOR USE AS EVIDENCE IN COURT AND IS THEREFORE SUBJECT TO PENALTY FOR PERJURY.**

DATED this 26th day of October 2018.

/s/ Adam S. Heder_____
Adam S. Heder

**From:**          Adam Heder <adamh@hbclawyers.com>
**Sent:**          Thursday, August 09, 2018 1:52 PM
**To:**            Outlaw, Jason
**Subject:**       Re: Sparrow Fund Mgmt. v. MiMedx, Litigation Hold Notice
**Attachments:**   20180703-1 LT CG Capital re lit hold.pdf

Jason:

It appears your client is trying to take an unnecessarily limited view of the hold letter to avoid having to preserve potentially relevant documents.  The inference is, of course, that it does have such documents, thereby highlighting the importance of the litigation hold letter.  The implications are troubling and transparent.

Let me be clear:  Tedra Desue's connections to CG Capital is only one link between CG Capital and the allegations in the complaint.  We are aware that CG Capital is MiMedx's PR firm and assists MiMedx in a variety of media campaigns, many of which are related to allegations in the underlying complaint.  Your client is no doubt aware of its ongoing employment with MiMedx and efforts related thereto.  Lest there be any confusion, let me clarify:  We are asking that your client, The Cockrell Group USA, Inc. (or "CG Capital") preserve all categories of documents listed in the attached letter, whether or not Tedra Desue is formally an employee of your client or not.

Your client's failure to take all actions necessary to preserve such categories of documents has, as you know, significant legal ramifications.  Discovery has not yet opened in the underlying matter and thus my client has not served any subpoenas yet.  Once discovery is opened, it will, rest assuredly, serve such subpoenas.  Until then, your client is on notice that it is to take all necessary actions, as outlined in the attached, to preserve all categories of documents, again as outlined in the attached, within its possession or control.

Best,

Adam S. Heder



H A R R I S   B E R N E
C H R I S T E N S E N LLP

**T** 503.968.1475 | **D** 503.596.2920| | **C** 503.209.8390| **F** 503.968.2003 | hbclawyers.com | Bio | vCard
5000 Meadows Road, Suite 400, Lake Oswego, OR 97035

This e-mail may contain privileged and confidential. Do not forward, copy or print without authorization.  If misdirected, please delete and notify the sender by email.

---

**From:** "Outlaw, Jason" <Jason.Outlaw@alston.com>
**Date:** Thursday, August 9, 2018 at 11:58 AM
**To:** "Adam S. Heder" <adamh@hbclawyers.com>
**Subject:** RE: Sparrow Fund Mgmt. v. MiMedx, Litigation Hold Notice

Adam:

I dispute your characterization of our conversation this morning.  As reflected in the hold letter, you have asked my client to agree to preserve documents relating to a broad scope of categories based on your assumption that CG Capital possesses information that would confirm "Mimedx falsely accused Sparrow of being the anonymous blogger Aurelius Value[.]"  That assumption is based on a misunderstanding that Ms. Desue was an employee of CG Capital at the time of the facts underlying Sparrow's suit against MiMedx.  Neither you nor Sparrow has put forth any concrete connection between CG Capital and the facts alleged in Sparrow's complaint.  Accordingly, your hold letter is unsubstantiated.  As I

**Exhibit 1**
**Page 1 of 40**

explained on the call, under these circumstances CG Capital cannot agree to preserve documents in accordance with your litigation hold letter.  If you want to discuss further, please let me know.  Thanks.

Jason

Jason Outlaw | Alston & Bird LLP
Direct 404.881.7941 | Fax 404.253.8841

---

**From:** Adam Heder [mailto:adamh@hbclawyers.com]
**Sent:** Thursday, August 9, 2018 1:05 PM
**To:** Outlaw, Jason <Jason.Outlaw@alston.com>
**Subject:** Re: Sparrow Fund Mgmt. v. MiMedx, Litigation Hold Notice

Mr. Outlaw:

Thank you for taking my call this morning.  You have explained that Ms. Tedra Desue is not an employee of CG Capital, though she has done some contract work for them.  You indicated that that the last time she did any work relating to MiMedx was in 2013.  As a result, you stated your client had no intent to comply with the litigation hold letter, because it has no responsive or relevant information.

Sparrow Fund Management LP's litigation hold letter asks your client to retain a much broader scope of documents than simply those relating to Ms. Desue, including internal communications/documents at CG Capital with MiMedx re Sparrow or Aurelius Value and correspondence with BofI Holding, Inc.  Thus, I am some puzzled by its response to the litigation hold letter.

In either event, upon the opening of discovery, my client will seek to subpoena these same categories of documents from your client.  Should it turn out that your client is or was in possession of relevant documents but failed to take steps necessary to preserve those documents, Sparrow Fund of course reserves its right and intends to seek all available legal redress.

Best,

Adam S. Heder

 HARRIS BERNE
CHRISTENSEN LLP

**T** 503.968.1475 | **D** 503.596.2920 | **C** 503.209.8390 | **F** 503.968.2003 | hbclawyers.com | Bio | vCard
5000 Meadows Road, Suite 400, Lake Oswego, OR 97035

This e-mail may contain privileged and confidential. Do not forward, copy or print without authorization.  If misdirected, please delete and notify the sender by email.

---

**From:** "Outlaw, Jason" <Jason.Outlaw@alston.com>
**Date:** Tuesday, July 31, 2018 at 5:48 PM
**To:** "Adam S. Heder" <adamh@hbclawyers.com>
**Subject:** RE: Sparrow Fund Mgmt. v. MiMedx, Litigation Hold Notice

That works.  Thanks, Adam.

Jason

Jason Outlaw | Alston & Bird LLP
Direct 404.881.7941 | Fax 404.253.8841

**Exhibit 1**
**Page 2 of 40**

**From:** Adam Heder [mailto:adamh@hbclawyers.com]
**Sent:** Tuesday, July 31, 2018 8:38 PM
**To:** Outlaw, Jason <Jason.Outlaw@alston.com>
**Subject:** Re: Sparrow Fund Mgmt. v. MiMedx, Litigation Hold Notice

Mr. Outlaw:

I am out of town on vacation with limited availability.  Can we speak next week when I am back?

Best,
Adam

Sent from my iPhone

On Jul 30, 2018, at 12:00 PM, Outlaw, Jason <Jason.Outlaw@alston.com> wrote:

> Adam:
>
> Further to my voicemail, I'm with Alston & Bird and we represent CGCAPITAL.  Please give me a call to discuss the above-referenced matter.  Thanks.
>
> Jason
>
> Jason Outlaw | Alston & Bird LLP
> Direct 404.881.7941 | Fax 404.253.8841

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

**Exhibit 1**
**Page 3 of 40**



**HARRIS BERNE**
**CHRISTENSEN** LLP

A T T O R N E Y S   &   C O U N S E L O R S

L A R G E   F I R M   E X P E R T I S E .   S M A L L   F I R M   E F F I C I E N C Y .

**Adam S. Heder**
adamh@hbclawyers.com
Admitted in Oregon and California

July 3, 2018

**VIA EMAIL: investorrelations@thecockrellgroup.com**
**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED & USPS FIRST-CLASS MAIL**

The Cockrell Group USA, Inc.
271 17th St. NW
Suite 530
Atlanta, GA 30363

>      Re:    **Sparrow Fund Management, LP v. MiMedx Group, Inc., et al.**
>             **United States District Court, Southern District of New York Case No. 1:18-cv-04921**
>             **LITIGATION HOLD NOTICE**

To Whom it May Concern:

I am an attorney for Sparrow Fund Management ("Sparrow"). We believe The Cockrell Group USA, Inc. (the "Cockrell Group") has information relevant to the pending lawsuit, *Sparrow Fund Management v. MiMedx et al.*, Case No. 1:18-cv-04921 (S.D. NY) (the "Action").

Sparrow Fund Management has sued MiMedx Group, Inc. ("MiMedx") for defamation and civil conspiracy related, in part, to statements made by certain John Doe defendants acting at the behest of MiMedx. For your benefit, we have attached a courtesy copy of that complaint hereto. Relevant to those claims is Sparrow's allegation that Mimedx falsely accused Sparrow of being the anonymous blogger Aurelius Value ("Aurelius"). Sparrow believes that the Cockrell Group is in possession of information that would confirm that position and that, more importantly, an employee of the Cockrell Group (Ms. Tedra Desue) is one of the John Doe defendants identified in the complaint (@atlantadoctors). For your reference and by way of background, I have attached hereto a copy of the operative complaint in this matter, along with a motion for expedited discovery (and accompanying declaration) Sparrow filed shortly after filing the complaint.

The basis for the belief that Ms. Desue is @atlantadoctors is spelled out in the motion for expedited discovery, a copy of which we have attached for your review. And I refer you to that.

This letter is intended to put you on notice that you must preserve all documents relating to your substance, timing, and knowledge of the identity of Aurelius, any discussions you held with BofI Holding,

**Main Office**
5000 Meadows Road
Suite 400
Lake Oswego, OR 97035

**Salem Office**
625 Hawthorne Avenue SE
Suite 100
Salem, OR 97301

T   503.968.1475
F   503.968.2003
W  hbclawyers.com

**Exhibit 1**
**Page 4 of 40**

July 3, 2018
Page 2

Inc. ("BofI") and/or MiMedx, and/or any discussions with third parties you have held regarding Sparrow and/or Aurelius.

By way of clarification, but not limitation, we demand that you preserve all paper records; physical items, including hard drives, phones, and tapes; electronically stored information, including email, electronic calendars, spreadsheets, Word documents, and phone recordings; and any and all other evidence relating to or relevant to the matters described below that were created and/or modified between September 20, 2017, and the present:

- Conversations you have held with BofI relating to Sparrow and/or the identity of Aurelius
- Internal conversations with Ms. Desue and/or others relating to Sparrow and/or the identity of Aurelius
- Conversations you have held with MiMedx relating to Sparrow and/or the identity of Aurelius
- Conversations you have held with any third parties relating to Sparrow
- Conversations you have held with any third parties relating to the identity of Aurelius

The above list provides examples of the types of documents you should retain and is intended to give examples; it is not an exhaustive list. Additionally, "documents" are not limited to official documents, and include drafts and handwritten notes or the drafts of final documents. Any document that contains any comments, notes, additions, or markings of any kind that are not part of another document is considered a separate document and must be separately preserved.

During the time this litigation hold is in place, do not discard or allow your employer, agents, and/or employees to discard documents or electronically stored information that is, may be, or may become relevant, and do not delete, overwrite, alter, or destroy such materials, irrespective of any records retention schedule that may otherwise apply. Failure to comply with this request could result in discovery or "spoliation of evidence" sanctions.

If you have engaged counsel in this matter, please direct counsel to contact me, or alternatively, provide me their contact information and I will direct all future correspondence to them. We will follow up with more information as the Action progresses, including advising you if the litigation hold is lifted. I can be reached at 503-596-2920 or at adamh@hbclawyers.com.

Very truly yours,

**HARRIS BERNE CHRISTENSEN LLP**

Adam S. Heder

ASH:svt
Enclosure

**Exhibit 1**
**Page 5 of 40**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SPARROW FUND MANAGEMENT, LP,** | Civil Action No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DEFAMATION PER SE AND CIVIL CONSPIRACY** |
| **MIMEDX GROUP, INC., PARKER H. "PETE" PETIT, and JOHN DOES 1-10,** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, Sparrow Fund Management LP ("Sparrow"), brings this action against Defendants MiMedx Group, Inc. ("MiMedx"), Parker H. "Pete" Petit, and John Does 1-10, arising out of Defendants' numerous defamatory public statements and false accusations against Sparrow – including labeling Sparrow a criminal organization – all in an effort to intimidate critics and distract the public from MiMedx's own unsavory business practices. At all relevant times, the Defendants acted in concert as part of a civil conspiracy to deflect attention from MiMedx's self-inflicted misfortunes and onto Sparrow by disparaging, undermining, and defaming it and its legitimate business practices.

### JURISDICTION

1.  Plaintiff Sparrow is a Delaware limited partnership with its principal places of business in California and New York. At all times relevant to the allegations herein, Sparrow was conducting its business primarily out of New York. Sparrow is in the investment management business, investing and growing capital on behalf of its investors.

2.  Defendant MiMedx is a Florida corporation with its principal place of business in Georgia. MiMedx is publicly traded on the NASDAQ exchange under the ticker symbol "MDXG." MiMedx describes itself as "a leading biopharmaceutical company developing and

**Exhibit 1**
**Page 6 of 40**

marketing regenerative and therapeutic biologics utilizing human placental tissue allografts with patent-protected processes for multiple sectors of healthcare."

3.       Defendant Parker H. "Pete" Petit is a resident of Georgia and Chairman and CEO of MiMedx.

4.       Defendants John Does 1-10 are affiliated with numerous Twitter handles, including @nascardrivers69, @CE_breakingnews, @webchicklet, @captkevinrogers, and @atlantadoctors. On information and belief, and as is outlined in greater detail below, John Does 1-10 have, at all relevant times, been acting at the behest, control, guidance, and direction of MiMedx.

5.       This Court has both general and specific personal jurisdiction over Defendant MiMedx. New York's long-arm statute confers personal jurisdiction on non-residents where those non-residents "transact[] any business within the state or contract[] anywhere to supply goods or services in the state." MiMedx conducts extensive business throughout New York, and a significant component of its sales network is located in the state. It also has employees physically located throughout the state. Its shares are traded on the NASDAQ, physically located in New York. And it regularly conducts management and investor meetings in New York. As to the allegations herein, MiMedx brought suit against Sparrow in the federal district court for the Southern District of New York and has thus availed itself of New York's courts. In its court action, as detailed further below, MiMedx first accused Sparrow of "criminal" and "illegal" behavior. It has since repeated such claims in numerous forums both within and without New York. Further, as detailed below, MiMedx has turned its civil action against Sparrow, physically taking place in New York, into a media parade of false and defamatory statements against Sparrow.

6.       This Court also has both general and specific personal jurisdiction over Defendant Pete Petit. Again, New York's long-arm statute confers personal jurisdiction on non-residents

Exhibit 1
Page 7 of 40

where those non-residents "transact[] any business within the state or contract[] anywhere to supply goods or services in the state." Pete Petit conducts regular business in New York and has a consistent presence therein. He is CEO of a New York company and travels there frequently to conduct business and avail himself of the privilege of conducting business in New York. He is also CEO of MiMedx and regularly and purposefully avails himself of the privilege of conducting business in New York, as he, for instance, regularly meets and conducts shareholder business in New York. As detailed below, he was the source of many of the defamatory statements against Sparrow. He made at least some of those statements (again, as detailed below) while physically in New York.

7.      The Court also has subject matter jurisdiction over this case because there is diversity of citizenship among the parties, and the amount in controversy, exclusive of costs and interests, exceeds $75,000.00. Accordingly, pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this case.

8.      Venue is also proper in this case because, pursuant to 28 U.S.C. § 1391, this venue is where "a substantial part of the events or omissions giving rise to the claim occurred" and because this Court has personal jurisdiction over the Defendants.

## VARIOUS ANONYMOUS BLOGGERS START REPORTING FRAUDULENT BEHAVIOR WITHIN MIMEDX

9.      MiMedx is a billion-dollar company with, according to some reports, the largest share of the wound-healing market in the US. Its stock, however, has long been heavily "shorted" by investors. To short a stock means to "borrow" the stock from a lender with an agreement to return the stock at a later date. The borrower then sells the stock at a high price, banking on the stock dropping in value. Once the stock drops in value, the borrower then purchases the stock at the lower price and returns it to lender, thereby making a profit on the transaction.

**Exhibit 1**
**Page 8 of 40**

10.     In September 2017, two anonymous bloggers, including one named Aurelius Value, began tweeting and publicly posting content claiming MiMedx's stock was inflated because it was "channel stuffing," a fraudulent practice described as a company shifting inventory between sales channels to make it appear that the inventory has been sold when it actually has not, thereby overstating reported revenues.

11.     Additionally, a former employee of MiMedx, Jess Kruchoski, made public allegations that MiMedx was channel stuffing through distributors to hospitals belonging to the Department of Veterans Affairs.  Aurelius Value claimed the channel stuffing went beyond VA hospitals and that this information was not widely known, thus MiMedx's share price was overvalued.

**IN RESPONSE, MIMEDX BEGINS A LOUD AND PUBLIC CAMPAIGN AGAINST "CRIMINAL" SHORT SELLERS AND BEGINS MAKING FALSE PUBLIC ACCUSATIONS THAT SPARROW WAS BEHIND THE ANONYMOUS ATTACKS AND IS ENGAGING IN CRIMINAL ACTIVITIES**

12.     Neither Sparrow nor any of its partners, agents, or employees is Aurelius Value. Nevertheless, on October 4, 2017, MiMedx filed a complaint in federal court for the Southern District of New York, Case No. 1:17-cv-07568-PGG-KHP, naming as a defendant in that lawsuit, "Sparrow Fund Management LP, 'a/k/a Aurelius Value'."  MiMedx alleged that "Aurelius Value is actually one or more of Sparrow's partners or employees, posting under a pseudonym for the benefit of themselves and/or Sparrow."  In fact, throughout the complaint, MiMedx uses the names "Sparrow" and "Aurelius" interchangeably.  Further, MiMedx boldly alleges that "[i]n an all-out effort to ensure that they would profit from their negative investments, Defendants [including Sparrow] have maliciously disseminated materially false, misleading and defamatory statements about MiMedx and its employees to shareholders and the investing public, intending to fraudulently manipulate the market for MiMedx's stock and to allow Defendants [including

**Exhibit 1**
**Page 9 of 40**

Sparrow] to reap enormous profits from the resulting price decline." Throughout the complaint, MiMedx describes Sparrow as having engaged in "illegal," "manipulative," and "fraudulent" conduct.

13.     In its subsequent 10Q filing with the Securities and Exchange Commission ("SEC"), MiMedx disclosed the lawsuit and again repeated its statement that Sparrow is Aurelius Value.  To date, MiMedx has not retracted or otherwise modified those representations.

14.     MiMedx's statements were and remain false.  Neither Sparrow nor any of its partners or employees is Aurelius Value.  Nor, more importantly, has Sparrow engaged in any criminal conduct, much less the type of illegal market-manipulating behavior MiMedx has alleged.

15.     Almost immediately after MiMedx filed its lawsuit, Sparrow contacted MiMedx, explaining it was not Aurelius Value and demanding MiMedx dismiss the lawsuit.  MiMedx refused.  Sparrow went as far as providing MiMedx with sworn affidavits from each of its partners and employees attesting that no one from Sparrow had made comments attributed to Aurelius Value nor controls in any way what Aurelius Value publishes.  Yet, MiMedx continued its public campaign against Sparrow.

16.     Since that time, MiMedx has repeatedly reaffirmed its allegations that Sparrow is Aurelius Value and engaged in criminal, market-manipulating behavior.

17.     On or about October 4, 2017, Parker H. Petit, Chairman and CEO of MiMedx, publicly stated with regard to the defendants in that lawsuit:

> "We contend the defendants *knowingly concocted and disseminated false statements* against MiMedx and our employees to our shareholders, the investment community and the public at large. To *manipulate the market* and serve their financial interest in driving down the price of MiMedx stock, they made these misleading statements. In their baseless statements, they either purposely omitted facts or context favorable to MiMedx, made suggestions concerning the Company that ran counter to the facts known by the defendants, or refused to do any

**Exhibit 1**
**Page 10 of 40**

informational and fact-finding due diligence, but just published any information that supported their conspired short thesis.

We believe these types of *illegal short attacks* are ultimately short term in nature when the fundamentals of a business such as MiMedx are strong. Eventually, the constant outstanding performance delivered by MiMedx cannot be ignored. Unfortunately, in the meantime, honest shareholders may be deceived and harmed by the loss of their investment value, while dishonest individuals and entities are able to *profit through manipulation*." (Emphasis added).

18.     Also, on or around October 4, 2017, Bill Taylor, President and COO of MiMedx, stated:

"In our press release of September 29, 2017, we alerted our shareholders to the document we posted on the MiMedx website to expose the *false and misleading* information distributed by Viceroy Research and *Aurelius Value*. We encourage everyone to thoroughly read that document to gain the appropriate insight into the volume of *misleading information, outright lies and libel* against innocent individuals and the Company these organizations or persons have stooped to publish. In this document, we have posted numerous examples that easily discredit their statements." (Emphasis added).

19.     On October 17, 2017, MiMedx issued a press release accusing certain "short sellers of impersonating Pete Petit and sending out fake emails on his behalf." The press release described the behavior as "a crime." Pete Petit commented publicly on the instance, by saying: "[w]e believe this activity is related to the *recent short seller attacks* on the Company. *This particular group of short sellers* continues to resort to ridiculous and unscrupulous means to attempt to do damage to MiMedx. Of course, their ultimate goal is to depress the price of our stock. However, by impersonating me in emails to our analysts, with comments that create insecurity relative to our Company's performance or my ethics and integrity, is reprehensible and *unlawful*. We have also seen other indications of *unlawful activity*." (Emphasis added).

**Exhibit 1**
**Page 11 of 40**

20.     On or about October 27, 2017, on a public call with investors, Pete Petit again described the activities of those "entities that are involved in this *unlawful* short selling activity" as "illegal." His statements were recorded and subsequently published to investors.

21.     On November 10, 2017, Linette Lopez, for the Business Insider, published an article entitled "The so-called Trump of Georgia is on a wild crusade against Wall Street short sellers." In the article, Ms. Lopez details at length MiMedx's and Pete Petit's campaign against Sparrow and others they accuse of illegal short selling activity. Among other things, the article describes MiMedx's and Pete Petit's purpose in filing the lawsuit against Sparrow as follows: "Pete Petit, the CEO of MiMedx, which makes wound-care products, is filing lawsuits against short sellers to try to the learn the identity of a pair of anonymous bloggers" (one of which is later identified to be Aurelius Value). She specifically identifies the allegations against Sparrow and notes Sparrow's emphatic denial that it is Aurelius Value.

22.     Pete Petit responded to Ms. Lopez's article in a publicly posted letter dated November 14, 2017, in which he states: "MiMedx filed lawsuits in order to find legal relief and obtain damages for false and defamatory statements made by certain entities acting as shills for short-sellers *illegally attempting to manipulate MiMedx stock*." (Emphasis added). He further stated that "[the short sellers, including Sparrow] are wrong when the basis of their short sell thesis is founded on *false and fraudulent information and meritless claims. In fact, that is against the law.*" (Emphasis added).

23.     On or about November 30, 2017, Pete Petit, in a public conference appearance with the investment community that physically took place in New York, again referred to the "short sellers" as being engaged in "illegal" behavior. He specifically identified those entities he accused

**Exhibit 1**
**Page 12 of 40**

of "illegal" behavior as the ones that MiMedx was going "down the civil path with," which included Sparrow. His statements were recorded and subsequently published to investors.

24. In this time frame, MiMedx established a page on its website dedicated exclusively to "short selling commentary." On or about November 30, 2017, Pete Petit wrote a letter to the SEC, which it subsequently posted to the "short selling commentary" section of its website, describing Aurelius Value as a "shill" engaged in "recent illegal short selling." He further stated: "I realize that ordinary people do not understand just how corrupt dishonest persons can become. Real truthful facts do not mean anything to individuals who have their own agenda. . . . This has become a classic case . . . of what fraudulent stock manipulation really involves. . . . [T]hese particular illegal short sellers apparently do not care about credible sources for their information."

25. On or about December 13, 2017, Pete Petit again referred to "illegal short selling activities" in a public conference call with the investment community. His statements were recorded and subsequently published to investors.

26. And again, on or about January 18, 2018, Pete Petit referred in a conference call with the investment community to the short sellers "using illegal techniques." His statements were recorded and subsequently published to investors.

27. In February 2018, MiMedx posted to its website a rebuttal of claims made by Aurelius Value, suggesting again criminal and illegal activity. To date, MiMedx has publicly maintained that Sparrow, or one of its partners or employees acting on behalf of Sparrow, is Aurelius Value.

**Exhibit 1**
**Page 13 of 40**

**CONCURRENT WITH ITS PRESS RELEASES, JOHN DOES 1-10 BEGAN AN ONLINE CAMPAIGN TO DISCREDIT SPARROW BY ACCUSING IT, AGAIN, OF ILLEGAL AND CRIMINAL ACTIVITES**

28.     Concurrent with the filing of MiMedx's complaint, a group of anonymous bloggers began simultaneously tweeting and posting content clearly designed to promote MiMedx stock while simultaneously disparaging Sparrow and "criminal short sellers."  These John Does use at least five different twitter handles to anonymously blog about MiMedx, @nascardrivesr69, @webchicklet, @CE_breakingnews, @captkevinrogers, and @atlantadoctors.  On a nearly daily basis, these John Does, through one or more of these handles, tweet positive content regarding MiMedx.  At the same time, the John Does have also aggressively attacked Aurelius Value and other bloggers posting negative content about MiMedx and, most importantly, have directly attacked Sparrow.

29.     On September 21, 2017, the John Does, through the website "Californiaexaminer.net," published an article entitled "Viceroy Research, Aurelius Value: Paid Shills Create Negative Fake News on Mimedix [sic] Group, MDXG".  In the article, the John Does alleged that a specific hedge fund was paying Aurelius Value to disseminate fake information to depress the stock of MiMedx.  In the article, the John Does described Aurelius as a "common criminal that [created] a website and attacked good companies on behalf of the highest bidder, all so they can make more money."

30.     By October 10, 2017, it became clear the John Does were pushing a narrative publicly that Sparrow was paying Aurelius Value to disseminate false information.  On October 10, 2017, through the handle, @CE_breakingnews, the John Does stated:  "Sparrow fund henchmen made up lies to TRY to get your $10 puts in the money."  In this context, "getting puts

**Exhibit 1
Page 14 of 40**

in-the-money" is understood to mean illegal market manipulation by way of spreading false information publicly in order to artificially bring down a stock price.

31.     On the same day, through that same handle, the John Does tweeted, in reference to content shared by Aurelius Value regarding allegedly fraudulent behavior at MiMedx, "[i]t seems Sparrow/aka Aurelius Value got their lies published . . . ."

32.     Again, on the same day, but this time under the handle @nascardrivers69, the John Does tweeted, in response to comments posted by an anonymous blogger about MiMedx, "oh oh. Sparrow is going to throw you under the bus for creating ineffective lies about $mdxg," again accusing Sparrow of paying the blogger to fabricate posts about MiMedx.

## UPON INFORMATION AND BELIEF, THE JOHN DOE DEFENDANTS WERE AND ARE AGENTS AND WORKING UNDER THE DIRECTION OF MIMEDX

33.     Numerous factors demonstrate the John Doe Defendants were communicating with and working at the direction of MiMedx.

34.     The John Doe defendants attempted to keep their identities a secret while operating at least five twitter accounts whose primary activities focus on either inflating MiMedx stock or attacking bloggers and reporters writing negatively about MiMedx (such as Aurelius Value).

35.     In February 2018, a group of twitter users, including @nascardrivers69, began attacking a former MiMedx-employee-turned-whistleblower, Jess Kruchoski.  One of the John Does, through the handle @nascardrivers69, claimed Mr. Kruchoski faced a "constant stream of firings by every company [he] ever worked for."  Of course, the basis for an employee's termination is generally not a matter of public record, yet the John Doe claimed to have intimate knowledge of Mr. Kruchoski's career history.  The John Doe also participated in a Twitter thread in which the John Doe and other users alleged Mr. Kruchoski was fired from a past employer for drinking.  In at least three separate tweets, Mr. Kruchoski implied that the John Doe's knowledge

**Exhibit 1**
**Page 15 of 40**

of his career history pointed to the John Doe being an agent of MiMedx. First, in response to one of the John Doe's twitter posts, Mr. Kruchoski tweeted that: "I got drunk at a meeting and passed out in a hotel hallway. It was life changing because I quit drinking. Haven't had a drink in 8 years. Oddly, *that private info came out recently in sealed documents that only MDXG and their attorneys have*." (Emphasis added). In another tweet, Mr. Kruchoski implied that John Doe was an agent of MiMedx due to the John Doe's knowledge of his private employment history. Finally, in May 2018, Mr. Kruchoski stated that the John Doe's past public comments suggested the John Doe had information about Mr. Kruchoski and other former employees of MiMedx that the public does not have.

36.     Additionally, upon information and belief, another John Doe Twitter account acting as an agent of MiMedx is @atlantadoctors. From review of the Twitter posts made by @atlantadoctors, it appears that the @atlantadoctors account was set up with the primary goal of promoting MiMedx's stock.

37.     On April 9, 2018 @atlantadoctors tweeted disparagingly about Sparrow, stating that lead counsel for Sparrow had withdrawn their representation of Sparrow. This was not true. Not coincidentally, these false statements about Sparrow occurred on the business day immediately after counsel for Sparrow called counsel for MiMedx to present evidence of additional improper litigation tactics on the part of MiMedx. Furthering the inference that @atlantadoctors is in fact an agent of MiMedx: the account user changed its privacy settings to lock its profile from public viewership *after* counsel for Sparrow alerted counsel for MiMedx of Sparrow's belief that MiMedx was orchestrating a social media campaign to tarnish Sparrow's reputation.

38.     Though there are methods to discover the identities associated with the John Doe defendants, and though there are general indications as to the identities of the persons associated

**Exhibit 1**
**Page 16 of 40**

with the Twitter handles identified above, Sparrow is unable, in the absence of the discovery process, to confirm those identities with absolute certainty. Once Sparrow is able to do so through discovery, it will promptly move for leave to amend this complaint to add the real names of John Does 1-10. Sparrow intends to move the Court for an order granting it expedited discovery to learn the identities of the bloggers.

39. All of John Does 1-10s' tweets and online postings were false and defamatory. They sought to disparage Sparrow's legitimate business activities and destroy its business reputation.

### THE DEPARTMENT OF JUSTICE REVEALED IN MAY 2018 INDICTMENTS OF SEVERAL FORMER VA EMPLOYEES ACCUSSED OF ACCEPTING BRIBES FROM MIMEDX

40. On May 8, 2018, the federal district court for the District of South Carolina unsealed an indictment accusing Donna Becker, Marcela Dolores Farrer, and Carol Guardiola of violating 18 U.S.C. 208, 201, and 1347. The indictment alleges the defendants, former employees of the Department of Veteran Affairs and healthcare providers, accepted bribes from MiMedx in exchange for increasing sales of MiMedx products to VA facilities.

41. In relevant part, the indictment states the following:

"It was . . . part of the conspiracy that Defendants, in the course of their employment with the VA, utilized skin graft products provided by MiMedx Group, Inc.

"It was further part of the conspiracy that the Defendants cultivated relationships with MiMedx sales representatives and other officials.

"It was further part of the conspiracy that Defendants received benefits from MiMedx in the form of meals, salaries, trips, gifts, and other in-kind inducements which caused the Defendants to order, purchase, and use MiMedx products on VA patients.

**Exhibit 1**
**Page 17 of 40**

"It was further part of the conspiracy that DONNA BECKER and MARCELA
DOLORES FARRER participated in speaking engagements on behalf of MiMedx.
The goal of these speaking engagements was to increase sales to VA facilities.  By
accepting these speaking engagements DONNA BECKER and MARCELA
DOLORES FARRER became employees, agents, or independent contractors of
MiMedx.

It was further part of the conspiracy that the Defendants caused the excessive use
of MiMedx products on VA patients in South Carolina."

42.     On information and belief, MiMedx has been engaged in improperly bribing VA
employees throughout the country to use and promote its products.

43.     In an effort to divert attention away from such practices and silence those
individuals (such as Aurelius Value) calling attention to its improper business practices, MiMedx
initiated a campaign against Sparrow and others, falsely claiming they were engaged in illegal and
criminal short selling activities.

44.     MiMedx has no evidence that Sparrow has done anything illegal or criminal, yet
MiMedx has made false claims and acted with reckless disregard for the truth in making numerous
defamatory statements about Sparrow.  Further, MiMedx has acted with actual malice in its public
representations regarding Sparrow.

45.     Defendants' statements were not mere rhetoric or hyperbole.  In a business update
call with investors on September 21, 2017, Pete Petit made the following statement regarding
Defendants' responsibilities in making public statements:

"First, I think you would benefit from a little background on responsibilities I
have as a public company officer versus those that the short sellers have. First,
there are well defined regulations and laws associated with comments that I
make or our company makes as to their authenticity. *If we misrepresent facts or
lie, as a company official, [I] can go to jail and certainly be fined*.  On the other
hand, the individuals who involve with short selling do not have those same
laws and regulations to constrain them.  Yes, they have to cope with laws that
they pay for, obtain inside information of the manipulated stock, but certainly

**Exhibit 1**
**Page 18 of 40**

you see those kind of actions taken by federal agencies against short sellers."
(Emphasis added).

## SPARROW IS NOT A GENERAL OR LIMITED PURPOSE PUBLIC PERSON

46.     MiMedx is mired in controversy and in a very public battle with short sellers that have publicly alleged the company is engaged in fraud.  Sparrow did not invite itself into the controversy surrounding MiMedx and therefore is not a public figure.  To the contrary, Sparrow is a relatively small investment firm of only three employees that is not even required to be SEC registered.

## COUNT I – DEFAMATION *PER SE*

47.     Sparrow re-alleges paragraphs 1 through 46.

48.     Sparrow enjoys a good reputation within the investment management community. Sparrow has further enjoyed good relations with its investors and contacts within the investment management community.

49.     By making repeated false statements (both written and oral) accusing Sparrow of "criminal" and "illegal" behavior, Defendants intended to and did communicate and publish to others both within and without the investment management community false statements about Sparrow's business activities and professional integrity.

50.     Defendants' statements were and remain false.  Sparrow is not Aurelius Value and has not engaged in the criminal behavior Defendants have alleged.

51.     By making their repeated false statements, Defendants intended to and did injure Sparrow's business reputation and disparage its business.

52.     Defendants' statements were defamatory *per se* because:  1) the statements were and are in printed form and are thus libel; 2) the statements were also communicated orally and thus slander; 3) the statements ascribe characteristics that have a tendency to injure and have in

**Exhibit 1**
**Page 19 of 40**

fact injured Sparrow in its business and occupation; and 4) the statements claim Sparrow engaged in criminal and illegal conduct.

53.     Sparrow has suffered damages directly and proximately caused by Defendants' libelous actions, including but not limited to loss of business opportunities, damage to reputation, and loss of revenue in an amount that is currently unknown but not less than $100 million.  By reason of Defendants' defamation, Sparrow is entitled to both general damages and all actual and compensatory damages proved at the time of trial.

54.     Defendants' statements were not privileged.  Defendants made statements to the general press, non-participants in the litigation, that neither served the purpose of furthering MiMedx's underlying litigation in the Southern District of New York nor had any logical connection to that action.  "Litigating in the press" does not serve the purpose of the privilege.

55.     Defendants' behavior was intentional and fraudulent. Defendant made repeated intentional and willful misrepresentations to the public, or at least acted with reckless disregard for the truth, in a deliberate effort to undermine and harm Sparrow.  Sparrow is, as a result, entitled to exemplary and punitive damages in an amount to be proven at trial.

56.     For Defendants' conduct, Sparrow seeks preliminary and permanent injunctive relief against Defendants.

**Exhibit 1**
**Page 20 of 40**

## COUNT II – CIVIL CONSPIRACY TO DEFAME

57.     Sparrow re-alleges paragraphs 1 through 56.

58.     Defendants formed a conspiracy amongst each other, the purpose of which was to defame Sparrow and cause harm to Sparrow's business and reputation.

59.     Upon formation of their conspiracy, Defendants committed the acts as alleged above in furtherance of that conspiracy so as to put their scheme into motion.

60.     By putting their scheme into motion, Defendants did defame Sparrow as alleged above, causing damage to Sparrow's reputation and prospective business relationships.

61.     Sparrow has suffered damages proximately caused by Defendants' conspiracy, including but not limited to loss of business opportunities, damage to reputation, and loss of revenue in an amount that is currently unknown but not less than $100 million.  By reason of Defendants' conspiracy, Sparrow is entitled to both general damages and all actual and compensatory damages proved at the time of trial.

62.     By conspiring together, and by each participating in the plan to defame Sparrow, as alleged above, Defendants are jointly and severally liable for all damages incurred by Sparrow, irrespective of whether or not each co-conspirator was a direct actor, and regardless of the degree of each co-conspirator's activity in furtherance of the conspiracy.

63.     Defendants' behavior was intentional and fraudulent. Defendant made repeated intentional and willful misrepresentations to the public, or at least acted with reckless disregard for the truth, in a deliberate effort to undermine and harm Sparrow.  Sparrow is, as a result, entitled to exemplary and punitive damages in an amount to be proven at trial.

64.     For Defendants' conduct, Sparrow seeks preliminary and permanent injunctive relief against Defendants.

**Exhibit 1**
**Page 21 of 40**

**WHEREFORE**, Sparrow prays that the Court grant it the following relief against Defendant:

    A.  As to Count I, damages in an amount to be proved at trial but not less than $100,000,000.00, and preliminary and permanent injunctive relief;

    B.  As to Count II, damages in an amount to be proved at trial but not less than $100,000,000.00, and preliminary and permanent injunctive relief;

    C.  As to both Counts, punitive damages in an amount to be proven at trial;

    D.  As to both Counts, pre- and post-judgment interest;

    E.  Costs; and

    F.  Any other relief available at law or equity.

Dated: June 4, 2018

                                **BRESSLER, AMERY & ROSS, P.C.**

                                /s/Nikolas S. Komyati
                                Nikolas S. Komyati, NYB #4298188
                                nkomyati@bressler.com
                                Bressler, Amery & Ross, P.C.
                                17 State Street
                                New York, New York 10004
                                Telephone: (212) 425-9300
                                Fax: (212) 425-9337

                                **HARRIS BERNE CHRISTENSEN LLP**
                                Adam S. Heder, CSB #270946
                                adamh@hbclawyers.com
                                Harris Berne Christensen LLP
                                5000 Meadows Road, Suite 400
                                Lake Oswego, OR 97035
                                Telephone: 503-968-1475
                                Fax: 503-968-2003
                                (*Pro hac vice* application to be submitted)

                                *Counsel for Plaintiff Sparrow Fund Management, LP*

**Exhibit 1**
**Page 22 of 40**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPARROW FUND MANAGEMENT, L.P., | Civil Action No. 1:18-cv-04921-JGK |
| Plaintiff, | |
| v. | |
| MIMEDX GROUP, INC., PARKER H. "PETE" PETIT and JOHN DOES 1-10, | |
| Defendant. | |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY ON AN EMERGENCY BASIS

---

BRESSLER, AMERY & ROSS, P.C.
17 State Street
New York, New York 10004
(973) 514-1200
Attorneys for Plaintiff

On the Brief:

    Nikolas S. Komyati, Esq.
    Adam S. Heder, Esq. (*pro hac vice* pending)

**Exhibit 1**
**Page 23 of 40**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

      A.    MiMedx and Petit Have Engaged in a Public Campaign to Defame Sparrow and Have Used Anonymous Bloggers as a Part of that Campaign. ...............................................................................2

      B.    Sparrow Has Good Faith Belief as to the Identities of at Least Two of the John Does, Though is Unable to Confirm Them Outside Formal Discovery. ...............................................................3

ARGUMENT ...................................................................................................................5

      A.    There is Good Cause for Expedited Discovery .................................................5

      B.    Sparrow Has Pleaded a Prima Pacie Case of Defamation Per Se and Civil Conspiracy Against the John Doe Defendants. ................................6

      C.    Expedited Discovery is Necessary Because (1) Sparrow Must Know the John Does' Identities Before it can Serve Them and (2) There is a Risk of the Defendants Destroying Evidence. ..........................7

SCOPE OF DISCOVERY REQUESTS ......................................................................................7

CONCLUSION ................................................................................................................8

i

**Exhibit 1**
**Page 24 of 40**

## TABLE OF AUTHORITIES

**Page**

**Cases**

*adMarketplace, Inc. v. Tee Support, Inc.*,
    No. 13 Civ. 5635 (LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013)..................................5

*Caixin Media Co. Ltd. v. Guo Wengui*,
    2018 NY Slip Op 30349(U) (Sup. Ct.) ......................................................................................6

*Digital Sin., Inc. v. Does 1-176*,
    279 F.R.D. 239 (S.D.N.Y. 2012) ..............................................................................................5

*Gristede's Foods, Inc. v. Poospatuck Nation*,
    No. 06-CV-1260, 2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009) ................................................6

*MiMedx Group, Inc. and Sean McCormack v. Sparrow Fund Management, LP, et
al.*,
    Case No. 17-CV-07568 (PGG)(KHP), Dkt. 83 ........................................................................5

*Next Phase Distrib., Inc. v. John Does 1-27*,
    284 F.R.D. 165 (S.D.N.Y. 2012) ..............................................................................................5

**Other Authorities**

Fed. R. Civ. P. 26(d) ........................................................................................................................5

Local Civil Rule 37.2 ........................................................................................................................7

Rule 26(f) ..........................................................................................................................................5

www.californiaexaminer.net..............................................................................................................3

**Exhibit 1**
**Page 25 of 40**

## INTRODUCTION

Plaintiff Sparrow Fund Management, LP ("Sparrow") (1) seeks expedited discovery to learn the identities of the John Doe defendants described in the Complaint and (2) does so on an emergency basis because any delay will not only prevent timely service of all defendants in the matter but could also result in destruction of relevant evidence in the matter.

As outlined in Sparrow's Complaint, Defendants MiMedx Group, Inc. ("MiMedx") and Parker Petit ("Petit") have orchestrated a deliberate civil conspiracy to actively and maliciously defame Sparrow. Defendants have repeatedly made false statements about Sparrow and its business practices, wrongfully claiming Sparrow is guilty of criminal short selling activity and falsely accusing Sparrow of being the online blogger "Aurelius Value." As detailed in the Complaint, Defendants have directed numerous online bloggers to proliferate the defamatory statements to distract from MiMedx's own failed business practices. These online bloggers remain anonymous and are the "John Doe defendants" in the lawsuit. Though the allegations shine the light on the already discovered evidence and links between the John Doe defendants and MiMedx and Petit, the John Doe defendants nonetheless remain anonymous. As outlined below, Sparrow has strong leads and suspicions regarding their identities, but in the absence of formal discovery, is unable to confirm those identities. Consequently, Sparrow is presently unable to serve the John Doe defendants, and therefore properly prosecute, this matter.

Sparrow requests permission to make the discovery on an expedited basis, both in order to timely effectuate service but also because the John Doe defendants may already be taking steps to destroy and eliminate the electronic paper trail linking them to MiMedx and Petit.

Sparrow's request is limited and narrowly tailored to achieve only the immediate goals necessary to advance the case. Sparrow seeks to 1) identify the John Doe defendants so that it can serve them while 2) preventing Defendants and third parties from either intentionally or

**Exhibit 1**
**Page 26 of 40**

unintentionally destroying crucial evidence in this matter. Sparrow is not seeking any discovery from the named defendants themselves and seeks only to subpoena third parties to confirm whether they are the John Doe defendants.

Sparrow respectfully requests the Court grant its Motion for Expedited Discovery and allow it to serve the subpoenas requested outlined below.

## BACKGROUND

**A.  MiMedx and Petit Have Engaged in a Public Campaign to Defame Sparrow and Have Used Anonymous Bloggers as a Part of that Campaign.**

As outlined in the Complaint, MiMedx and Petit have made numerous public statements, both verbally and in writing, in a variety of forums falsely claiming Sparrow is both engaged in criminal activities and is the anonymous blogger, Aurelius Value (who, they claim, is the author of an illegal short selling campaign against MiMedx).[1] The Complaint outlines in detail the scope and nature of MiMedx's and Petit's defamatory statements, and Sparrow does not repeat those all here, except to note that Defendants' public campaign began roughly concurrent with MiMedx's filing of a lawsuit in this Court in October 2017, *MiMedx Group, Inc. v. Sparrow Fund Management, LP, et al.*, Case No. 1:17-cv-07568 (PGG) (KHP) (the "MiMedx Lawsuit").[2] Importantly, Sparrow also alleges MiMedx and Petit employed numerous online bloggers as part of its public campaign to defame and attack Sparrow.[3] Upon the filing of MiMedx's lawsuit, at least five different twitter handles, @nascardrivers69, @webchicklet, @CE_breakingnews, @captkevinrogers, and @atlantadoctors, all began promoting MiMedx while simultaneously attacking Sparrow and Aurelius Value (which, in its lawsuit, MiMedx linked to Sparrow).[4] The

---

[1] Complaint ¶¶ 12-27.
[2] Complaint ¶ 12.
[3] Complaint ¶¶ 28-39.
[4] Complaint ¶¶ 28-32.

2

**Exhibit 1**
**Page 27 of 40**

persons and/or entities behind the Twitter handles are the John Doe defendants in this matter. More importantly, Sparrow alleges MiMedx authorized, fed information to, and generally directed the persons or entities behind the Twitter handles to make the defamatory statements it did.[5] The Complaint also alleges MiMedx and Petit worked with the John Doe defendants as part of civil conspiracy to defame Sparrow.

The John Doe defendants are, and remain, anonymous. The point of this motion is to determine their identities, so that Sparrow can amend its Complaint and serve them accordingly.

**B.  Sparrow Has Good Faith Belief as to the Identities of at Least Two of the John Does, Though is Unable to Confirm Them Outside Formal Discovery.**

Sparrow has a good faith basis as to the identities of at least two of the John Does. The first is an individual named Kevin Rogers. On March 18, 2018, a Twitter user accused @nascardrivers69 of being Kevin Rogers, which @nascardrivers69 seemed to confirm.[6] Since that time, Sparrow undertook a forensic investigation and tied three additional twitter accounts identified in the Complaint to cell phones and email addresses registered in Kevin Rogers' name, @webchicklet, @CE_breakingnews, and @captkevinrogers.[7] Sparrow has also tied Kevin Rogers to publicly available domain registrar information for www.californiaexaminer.net.[8] On September 21, 2017, Mr. Rogers through that website, published an article titled "Viceroy Research, Aurelius Value: Paid Shills Create Negative Fake News on Mimedx Group, MDXG."[9] In the article, Mr. Rogers alleged that a specific hedge fund was paying Aurelius Value to disseminate fake information to depress the stock of MiMedx.[10] In the article, Mr. Rogers

---

[5] Complaint ¶¶ 33-39.
[6] Declaration of Nathan Koppikar ("Koppikar Decl.") ¶ 10, Ex. 1.
[7] Koppikar Decl. ¶¶11-14.
[8] Koppikar Decl. ¶ 12.
[9] Koppikar Decl. ¶ 12.
[10] Koppikar Decl. ¶ 12.

3

Exhibit 1
Page 28 of 40

described Aurelius as a "common criminal that [created] a website and attacked good companies on behalf of the highest bidder, all so they can make more money."[11] Notwithstanding the evidence, Sparrow is unable to confirm Mr. Roger's identity as being linked to the twitter handles, @nascardrivers69, @webchicklet, @CE_breakingnews, and @captkevinrogers, without the opportunity to first subpoena and depose Mr. Rogers.

The Complaint also identifies as another of the John Doe defendants, the Twitter handle, @atlantadoctors.[12] Sparrow has a good faith basis for believing Tedra Desue, an employee of MiMedx's public relations firm CG Capital, is behind @atlantadoctors, either on her own accord or in connection with her job duties as CG Capital, an Atlanta-based public relations firm. In short, a review of posted content from Twitter user, @tedradesue, and Twitter user, @atlantadoctors, revealed remarkable similarities in timing and content of posts, while also demonstrating similar writing and speech patterns.[13] In a Twitter thread relating to the topic of the identity of the John Doe defendants, an anonymous Twitter user addressed "Tedra" on Twitter and despite not being party to the conversation, Twitter user @atlantadoctors, appeared to acknowledge her name was in fact "Tedra."[14] Tedra Desue publicly advertises that she is an employee of CG Capital, and MiMedx has publicly identified CG Capital as its PR firm.[15] But again, despite the indicia of Ms. Desue's identity as Twitter user, @atlantadoctors, Sparrow is unable to confirm that in the absence of formal discovery directed at Ms. Desue and her employer CG Capital.

Moreover, after Sparrow's counsel in the MiMedx Lawsuit alerted MiMedx's counsel of Sparrow's belief that MiMedx was orchestrating a social media campaign to defame Sparrow,

---

[11] Koppikar Decl. ¶ 12.
[12] Complaint ¶¶ 36-37.
[13] Koppikar Decl. ¶¶ 15-17.
[14] Koppikar Decl. ¶ 16, Ex. 2.
[15] Koppikar Decl. ¶ 17.

Exhibit 1
Page 29 of 40

@atlantadoctors changed its privacy settings to lock its profile from public viewership.[16] And so, it is entirely possible @atlantadoctors has already begun deleting online postings and tweets, furthering the need for expedited discovery from Ms. Desue; there is no way for Sparrow to know one way or the other.

## ARGUMENT

### A. There is Good Cause for Expedited Discovery.

Rule 26 of the Federal Rules of Civil Procedure authorizes expedited discovery (i.e., discovery before a Rule 26(f) conference) upon a showing of "good cause." Fed. R. Civ. P. 26(d); *Digital Sin., Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). The Court has broad discretion as to whether to grant a request for expedited discovery. *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171-72 (S.D.N.Y. 2012). In a defamation case, this Court has specifically found that the need to identify John Doe defendants justifies expedited discovery: "Courts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena." *adMarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ. 5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (citations omitted).

In fact, in the MiMedx Lawsuit, Judge Parker found MiMedx had established good cause for expedited discovery when it requested the discovery in order to establish the identity of a defendant (who was an anonymous blogger).[17] Similarly, Sparrow requests expedited discovery to learn the identities of the John Doe defendants so that it can amend its complaint and serve those defendants.

---

[16] Koppikar Decl. ¶ 18.
[17] *MiMedx Group, Inc. and Sean McCormack v. Sparrow Fund Management, LP, et al.*, Case No. 17-CV-07568 (PGG)(KHP), Dkt. 83, at pp. 21-22.

**Exhibit 1**
**Page 30 of 40**

**B.** **Sparrow Has Pleaded a Prima Facie Case of Defamation Per Se and Civil Conspiracy Against the John Doe Defendants.**

In New York, to prove a claim for defamation per se, a plaintiff must show defendant: (1) at least negligently (2) made a false statement of fact (2) regarding the plaintiff (3) which is published to any third-party without authorization or privilege (4) causing injury. *Gristede's Foods, Inc. v. Poospatuck Nation*, No. 06-CV-1260, 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1, 2009). Sparrow outlines in detail in the Complaint MiMedx's and Petit's many public statements falsely accusing Sparrow of engaging in criminal activity and falsely posing as Aurelius Value. Sparrow also outlines the various defamatory statements made by the John Does. Paragraph 29 of the Complaint, for instances, the John Does labeled Sparrow a "common criminal," while paragraph 28 details the John Does' public statements that Sparrow was illegally attempting to manipulate the market and engaging in "illegal" short selling. Such statements (and others described in the complaint) were false, made publicly regarding Sparrow, and published to the general public. Defamatory statements are *per se* if they accuse plaintiff of a crime, which is exactly what happened here. *Caixin Media Co. Ltd. v. Guo Wengui*, 2018 NY Slip Op 30349(U), ¶¶ 5-6 (Sup. Ct.) (emphasis added). Further, the John Doe defendants have repeatedly and in numerous forums labeled Sparrow a criminal. Sparrow runs a hedge fund and its reputation, especially as it relates to its stock trading activity, is the most important lifeblood of its business. Defendants' statements have and continue to cause injury. Further, given the links connecting the John Doe defendants to MiMedx and Petit, Sparrow has outlined a prima facie case that the John Doe defendants were acting at least negligently, if not also with malice.

6

**Exhibit 1**
**Page 31 of 40**

C.   **Expedited Discovery is Necessary Because (1) Sparrow Must Know the John Does' Identities Before it can Serve Them, and (2) There is a Risk of the Defendants Destroying Evidence.**

Outside of discovery, Sparrow is unable to confirm Tedra Desue as @atlantadoctors and Kevin Rogers as @nascardrivers69, @webchicklet, @CE_breakingnews, and @captkevinrogers. If Sparrow is unable to confirm those identities, Sparrow is unable to serve them.

Further, many online blogging sites, including Twitter, delete a user's information 30 days after an account has been deleted.[18] Thus, as soon as any of the John Does decide to delete their account, it will be a fairly quick matter of time before the information is no longer discoverable. And as noted above, @atlantadoctors has already locked its profile, and thus there is currently no way to know whether @atlantadoctors is erasing information.

Because of these exigencies, Sparrow requests it be exempted from the requirements of the Court's Individual Practices and Local Civil Rule 37.2.

## SCOPE OF DISCOVERY REQUESTS

By this Motion, Sparrow seeks the following discovery which it believes will confirm the identities of the John Does named in its Complaint:

- Deposition subpoena and subpoena duces tecum on Kevin Rogers;

- Deposition subpoena and subpoena duces tecum on Tedra Desue; and

- Subpoena duces tecum on CG Capital.

Sparrow intends to seek only information related to the identity of the John Does and their connection to MiMedx and Petit, and will limit the scope of its discovery accordingly.

---

[18] Koppikar Decl. ¶ 18.

**Exhibit 1**
**Page 32 of 40**

**CONCLUSION**

Sparrow has demonstrated good cause for its request. It needs to identify the John Does so that it can amend its complaint and serve all defendants. Without this order, it could be months – if not longer – before Sparrow is able to identify and serve the John Does. By then, much (perhaps most) of the electronic discovery connected with those individuals and their Twitter and other online accounts could be destroyed. Sparrow respectfully requests the Court grant its Motion for Expedited Discovery.

Dated: June 27, 2018

        Respectfully submitted,

        **BRESSLER, AMERY & ROSS, P.C.**

        /s/ Nikolas S. Komyati
        Nikolas S. Komyati, NYB #4298188
        nkomyati@bressler.com
        17 State Street
        New York, New York 10004
        Telephone: 212-425-9300
        Fax: 212-425-9337

        **HARRIS BERNE CHRISTENSEN LLP**

        /s/ Adam S. Heder
        Adam S. Heder, CSB #270946, OSB #151144
        adamh@hbclawyers.com
        5000 Meadows Road, Suite 400
        Lake Oswego, Oregon 97035
        Telephone: 503-968-1475
        Fax: 503-968-2003
        (*Pro hac vice* pending)

        *Counsel for Plaintiff Sparrow Fund Management, LP*

8

**Exhibit 1
Page 33 of 40**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPARROW FUND MANAGEMENT, LP, | Civil Case No.: 1:18-cv-04921-JGK |
| Plaintiff, | |
| vs. | **DECLARATION OF NATHAN KOPPIKAR IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY** |
| MIMDEX GROUP, INC., PARKER H. "PETE" PETIT and JOHN DOES 1-10, | |
| Defendants. | |

I, Nathan Koppikar, declare:

1. I am a founding and managing partner of Plaintiff, Sparrow Fund Management, LP.

2. Sparrow Fund Management, LP ("Sparrow") is an investment firm that grows capital on behalf of its investors.

3. In October 2017, MiMedx Group, Inc. ("MiMedx") filed a lawsuit against Sparrow accusing Sparrow (or one of its principals) of being the anonymous online blogger, "Aurelius Value," who allegedly regularly posted negative information about MiMedx. The lawsuit was filed in this Court, MiMedx Group, Inc. v. Sparrow Fund Management, LP, et al., Case No. 1:17-cv-07568-PGG-KHP (the "MiMedx Lawsuit"). No one from Sparrow is Aurelius Value, and all employees of Sparrow provided individual affidavits to MiMedx attesting to this fact soon after MiMedx filed its lawsuit.

4. Concurrent with its lawsuit against Sparrow, MiMedx and its CEO Parker "Pete" Petit began to issue regular press releases that smeared Sparrow's reputation publicly, labeling it a criminal enterprise. As a result, I began to closely monitor all news flow relating to MiMedx. One of the websites I use to monitor news flow is Twitter.

**Exhibit 1**
**Page 34 of 40**

5. Immediately following MiMedx's lawsuit against Sparrow, I noticed a surge in activity on Twitter from what appeared to be proponents of MiMedx.

6. In the course of such monitoring, I became acquainted with the following Twitter handles, @nascardrivers69, @webchicklet, @CE_BreakingNews, @captkevinrogers, and @atlantadoctors (the "John Does").

7. Many of these accounts were either newly created or previously inactive for several years. However, in the period following MiMedx's lawsuit, these accounts began to seemingly spend all of their time either promoting MiMedx's stock or attacking MiMedx's critics.

8. Following the filing of the MiMedx Lawsuit, the John Does began making false, accusatory statements against Sparrow, while simultaneously promoting MiMedx's business practices. For example, on October 10, 2017, Twitter user, @CE_breakingnews, tweeted: "Sparrow fund henchmen made up lies to TRY to get your $10 puts in the money." In the financial industry, we understand this phrase, "getting puts-in-the-money," to mean illegal market manipulation by way of spreading false information publicly in order to artificially bring down a stock price. Similarly, on that same day, Twitter user, @nascardrivers69, stated, when responding to comments about MiMedx, "oh oh. Sparrow is going to throw you under the bus for creating ineffective lies about $mdxg." I understood "$mdxg" to refer to MiMedx. MiMedx's NASDAQ symbol is MDXG and it is customary for Twitter users to tag posts relating to specific companies with a "$" symbol followed by the target company's stock symbol. Further, the statement from @nascardrivers69 suggested Sparrow was paying the blogger to fabricate statements about MiMedx.

9. The identities behind the Twitter handles at issue are anonymous. Nevertheless, Sparrow has developed some suspicions as to their identities.

**Exhibit 1**
**Page 35 of 40**

10.     First, on March 18, 2018, @nascardrivers69 was publicly accused of being Kevin Rogers.  By the response, @nascardrivers69 seemed to confirm the accusation.  A screenshot of that exchange is attached hereto as Exhibit 1.

11.     Following the announcement from @nascardrivers69, we confirmed additional ties between Kevin Rogers and three of the other Twitter handles mentioned above, @webchicklet, @CE_breakingnews, and @captkevinrogers.  The latter handle, @captkevinrogers, speaks for itself.  Sale records from the website, Flippa.com, indicate that a user, "captkev," (with obvious similarities to "@captkevinrogers") purchased the handle, @webchicklet.  And simple online searches revealed the same "captkev.gmail.com" as the owner of the website, californiaexaminer.net.

12.     On September 21, 2017, the owner of the website published an article titled "Viceroy Research, Aurelius Value: Paid Shills Create Negative Fake News on Mimedix Group, MDXG."  The article alleged that a specific hedge fund was paying Aurelius Value to disseminate fake information to depress the stock of MiMedx.  The article further described Aurelius as a "common criminal that [created] a website and attacked good companies on behalf of the highest bidder, all so they can make more money."  A link to this article was tweeted by Twitter user @CE_BreakingNews, an account that appeared to be directly tied to the website CaliforniaExaminer.net.

13.     Using Google, I discovered that Kevin Rogers previously ran a company called 7825013 Canada Inc.  The email addressed used to register 7825013 Canada Inc. is 7825013@gmail.com.  Using publicly available Twitter tools, I was able to confirm that the email address registered to the Twitter handle @CE_BreakingNews is in fact 7825013@gmail.com.  Using this same methodology, I was able to link @nascardrivers69 to Kevin Rogers' cell phone.

**Exhibit 1**
**Page 36 of 40**

14.     At this point, these are suspicions, albeit well-founded suspicions.  Nevertheless, in the absence of formal discovery (namely, being able to subpoena documents and deposition testimony from Mr. Rogers), Sparrow is currently unable to confirm its suspicions.

15.     We have also identified as one of the John Doe defendants, the Twitter user, @atlantadoctors.  Sparrow has reason to believe an individual named Tedra Desue is linked to @atlantadoctors.

16.     In a Twitter thread, dated March 14, 2018, relating to the topic of the identity of the John Doe defendants, an anonymous Twitter user addressed "Tedra" on Twitter and despite not being party to the conversation, Twitter user @atlantadoctors, appeared to acknowledge her name was in fact "Tedra."  A copy of a screenshot of this conversation is attached hereto as Exhibit 2.

17.     Following the Twitter exchange and my own knowledge of Tedra Desue's alleged history of undisclosed paid stock promotion, I reviewed thousands of posts from Tedra Desue's personal Twitter account, @tedradesue, and compared them to Twitter user @atlantadoctors.  I also reviewed Tedra Desue's employment background and discovered that she identified herself as an employee of CG Capital, which MiMedx lists as its official outsourced investor relations firm.  As a result, there was reason to suspect links between @tedradesue and @atlantadoctors.  A thorough review of thousands of @tedradesue's and @atlantadoctor's posts revealed remarkably similar writing styles between the two, along with similar content.  But again, outside of formal discovery, Sparrow is unable to confirm @atlantadoctors' identity.

18.     I am concerned that if we do not have an immediate opportunity to seek discovery from Mr. Rogers or Ms. Desue, we may lose a chance to do so.  This is because online content is often dynamic.  For example, I have reviewed Twitter's policies and I understand that, where a Twitter user deletes his or her account, Twitter will delete the information behind that account

**Exhibit 1**
**Page 37 of 40**

within 30 days. In fact, @atlantadoctors has already locked her online profile, so if @atlantadoctors is deleting her postings, there is no way I can know that.

**I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND I UNDERSTAND THIS DECLARATION IS MADE FOR USE AS EVIDENCE IN COURT AND IS THEREFORE SUBJECT TO PENALTY FOR PERJURY.**

DATED this 2 7 day of June 2018.

Nathan Koppikar

**Exhibit 1**
**Page 38 of 40**

**Exhibit 1**



**Marc Cohodes**
@AlderLaneeggs

[ Follow ]  ⌄

Out of respect for your wife I have taken her picture down and replaced it with this you complete Scum Bag. You will be brought to justice for what you have done. i never mentioned your Wife once, you are a Coward and a Fraud. @viceroyresearch @AureliusValue



3:09 PM - 18 Mar 2018

1 Retweet  16 Likes

♡ 5   ⇄ 1   ♡ 16

**Nascar Driver Tweets** @nascardrivers69 · Mar 18
Replying to @AlderLaneeggs @viceroyresearch @AureliusValue
thank you jackass. how hard was that?

♡ 1   ⇄   ♡

Exhibit 1
Page 39 of 40

**Exhibit 2**



**Britney Jean** @BritneyJeanS8Rs · 4h
Dayyyyum apparently Tedra still isn't too busy
to reply here. C'monnnnn unblock me, it'll be
more fun we can swap 'mugs'

💬 1        🔁        ♡        ⌁

**atlanta doctors**
@atlantadoctors

Replying to @BritneyJeanS8Rs @nascardrivers69 and
2 others

Mr Perring - hate to ruin the fun but
don't you have better things to do ?
Don't you have several court cases
you should be preparing for ?
@Mantistoolongjr

11:04 AM · 14 Mar 18

Exhibit 1
Page 40 of 40

**From:**          Twitter Litigation <litigation@twitter.com>
**Sent:**          Thursday, August 30, 2018 11:45 AM
**To:**            adamh@hbclawyers.com
**Subject:**       Twitter Response to Preservation Request

Dear Adam S. Heder:

We have received your letter requesting preservation of Twitter user accounts.

Due to the volume of requests we receive and the burden they impose on us, we do not preserve account information unless required by law or court order.

Per our Privacy Policy, Twitter does not release user information except as required by valid legal process. For more information on accessing your Twitter data, including where to submit non-government requests, please visit https://support.twitter.com/articles/20172679.

Twitter

1

**Exhibit 2**
**Page 1 of 1**