```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 12-14-2018           │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SPARROW FUND MANAGEMENT LP,

                                        Plaintiff,

-against-

MIMEDX GROUP, INC., PARKER H. "PETE" PETIT,
AND JOHN DOES 1-10

                                        Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION AND
ORDER**

**18-CV-4921 (PGG) (KHP)**

**TO: THE HONORABLE PAUL G. GARDEPHE, UNITED STATES DISTRICT JUDGE
FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Continuing a longstanding dispute, Sparrow Fund Management LP ("Sparrow"), a New

York-based hedge fund, filed the instant action against MiMedx Group, Inc. ("MiMedx"), a

biopharmaceutical company with its principal place of business in Georgia, and its former Chief

Executive Officer ("CEO") Parker H. Petit, as well as several John Does (the "John Doe

Defendants"). Sparrow's claims arise out of an earlier lawsuit filed in this Court by MiMedx

against Sparrow and others.[1] In that case, MiMedx claimed that Sparrow and others who held

short positions in MiMedx stock published false and defamatory accusations that MiMedx

engaged in channel-stuffing to inflate its sales revenues and earnings figures. MiMedx alleged

the purpose of the defamation was profit: to harm the company's value and drive the stock

price down, which advantaged short sellers. Sparrow vehemently denied MiMedx's allegations

and ultimately won dismissal of the claims against it.

---

[1] *See MiMedx Group, Inc. et al. v. Sparrow Fund Management LLP et al.,* 1:17-cv-07568-PGG-KHP (S.D.N.Y. 2017)
(the "MiMedx Action").

Sparrow now makes the inverse claim, alleging that MiMedx and Petit defamed it throughout the course of the MiMedx Action by making false statements in pleadings, on MiMedx's website and elsewhere suggesting that Sparrow was involved in illegal market manipulation.  Sparrow also claims that MiMedx and Petit conspired with anonymous bloggers and tweeters (the John Doe Defendants) to spread this false narrative through the ethersphere.

Before this Court are MiMedx and Petit's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) (Doc. No. 44); Petit's motion to dismiss for lack of personal jurisdiction (Doc. No. 46); and Sparrow's two motions for expedited discovery to help it learn the identity of the John Doe Defendants.  (Doc. Nos. 15, 24.)

For the reasons set forth below, this Court recommends that Defendants' motions to dismiss be GRANTED in part without prejudice and DENIED in part.  Sparrow's motions for expedited discovery are hereby DENIED.

## **BACKGROUND**

The MiMedx Action was commenced on October 4, 2017 against Sparrow, Viceroy Research, and BR Dialectic Capital Management LLC and its principal John Fichthorn for defamation and related torts.  *See* MiMedx Action, ECF 1.  The gravamen of the allegations in that lawsuit against Sparrow was that Sparrow or one of its principals (Nathan Koppikar), using the pseudonym Aurelius Value, defamed MiMedx in blog posts and tweets with the aim of harming market confidence in MiMedx and bettering Sparrow's short positions in MiMedx stock.  Sparrow denied that it was Aurelius Value and argued to this Court that MiMedx had publicly recognized that it did not know who was behind Aurelius Value.  *See* MiMedx Action,

2

ECF 55 at 6-7, ECF 56, Exs. B & C.  Sparrow moved to dismiss the complaint in the MiMedx

Action.  It also moved for sanctions against MiMedx under Rule 11 of the Federal Rules of Civil

Procedure.  The Court granted Sparrow's motion to dismiss but denied its motion for sanctions.

*See MiMedx Group, Inc. v. Sparrow Fund Management LP*, 17-cv-7568 (PGG) (KHP), 2018 WL

847014 (Jan. 12, 2018), adopted by 2018 WL 4735717 (Sept. 29, 2018).  The MiMedx Action was

subsequently terminated in its entirety after MiMedx elected not to file an amended complaint.

*See* MiMedx Action, ECF 116, 117.

On June 4, 2018, during the pendency of the MiMedx Action, Sparrow filed the

complaint (the "Complaint" or "Compl.," Doc. No. 5) in the instant action.  It claims that

MiMedx and/or Petit made defamatory statements about it in the MiMedx Action, in filings and

correspondence with the U.S. Securities and Exchange Commission ("SEC"), on the company

website, in press releases, news articles (and responses to those articles), in public conferences,

and in calls and meetings with investors.  (Compl. ¶¶ 12-27.)  The alleged defamation all relates

to the claims made by MiMedx in the MiMedx Action against Sparrow (and/or Aurelius Value)

and other investors who held short positions in MiMedx stock.  Sparrow also claims that

MiMedx and Petit conspired with other unknown persons (*i.e.,* the John Doe Defendants), who

defamed it on Twitter and in internet posts that were supportive of the MiMedx Action and

critical of Aurelius Value and/or Sparrow.  (Compl. ¶¶ 28-39.)

The defamatory statements attributed to MiMedx and Petit are:

1. Statements made in MiMedx's pleadings in the MiMedx Action, such as the allegation
   that Aurelius Value is one or more of Sparrow's partners or employees and that "[i]n an
   all-out effort to ensure that they would profit from their negative investments,
   Defendants [including Sparrow] have maliciously disseminated materially false,

misleading and defamatory statements about MiMedx and its employees to shareholders and the investing public, intending to fraudulently manipulate the market for MiMedx's stock and to allow Defendants [including Sparrow] to reap enormous profits from the resulting price decline."  (Compl. ¶¶ 12, 14, 15, 16) (collectively, "Statement 1.")

2. In an October 31, 2017 10-Q filing with the SEC, MiMedx disclosed the MiMedx Action and listed "Sparrow Fund Management LP, 'a/k/a Aurelius Value'" as a defendant. (Compl. ¶ 13) ("Statement 2.")

3. On or about October 4, 2017, Petit publicly stated with regard to the defendants in the MiMedx Action:

   "We contend that the defendants knowingly concocted and disseminated false statements against MiMedx and our employees to our shareholders, the investment community and the public at large.  To manipulate the market and serve their financial interest in driving down the price of MiMedx stock, they made these misleading statements.  In their baseless statements, they either purposely omitted facts or context favorable to MiMedx, made suggestions concerning the Company that ran counter to the facts known by the defendants, or refused to do any informational and fact-finding due diligence, but just published any information that supported their conspired short thesis.

   We believe these types of illegal short attacks are ultimately short term in nature when the fundamentals of a business such as MiMedx are strong.  Eventually, the constant outstanding performance delivered by MiMedx cannot be ignored.  Unfortunately, in the meantime, honest shareholders may be deceived and harmed by the loss of their investment value, while dishonest individuals and entities are able to profit through manipulation."  (Compl. ¶ 17) ("Statement 3.")

4. On or about October 4, 2017, Bill Taylor, President and COO of MiMedx stated:

   "In our press release of September 29, 2017, we alerted our shareholders to the document we posted on the MiMedx website to expose the false and misleading information distributed by Viceroy Research and Aurelius Value.  We encourage everyone to thoroughly read the document to gain the appropriate insight into the volume of misleading information, outright lies and libel against innocent individuals and the Company these organizations or persons have stooped to publish.  In this document, we have posted numerous examples that easily discredit their statements." (Compl. ¶ 18) ("Statement 4.")

5.  On or about October 17, 2017, MiMedx issued a press release accusing "short sellers of impersonating Pete Petit and sending out fake emails on his behalf" and described such actions as "a crime." (Compl. ¶ 19.) Petit commented publicly on this press release by stating: "[w]e believe this activity is related to the recent short seller attacks on the Company. This particular group of short sellers continues to resort to ridiculous and unscrupulous means to attempt to do damage to MiMedx. Of course their ultimate goal is to depress the price of our stock. However, by impersonating me in emails to our analysts, with comments that create insecurity relative to our Company's performance or my ethics and integrity, is reprehensible and unlawful. We have also seen other indications of unlawful activity." (*Id.*) (collectively, "Statement 5.")

6.  On or about October 27, 2017, on a public call with investors, Petit described the activities of those "entities that are involved in this unlawful short selling activity" as "illegal." (Compl. ¶ 20) ("Statement 6.")

7.  On November 10, 2017, an article by Linette Lopez was published in Business Insider about MiMedx entitled "The so-called Trump of Georgia is on a wild crusade against Wall Street short sellers." (Compl. ¶ 21.) On November 14, 2017, in a publicly-posted letter, Petit responded to the article by stating: "MiMedx filed lawsuits in order to find legal relief and obtain damages for false and defamatory statements made by certain entities acting as shills for short-sellers illegally attempting to manipulate MiMedx stock." (Compl. ¶ 22.) Petit also stated that "[the short sellers, including Sparrow] are wrong when the basis of their short sell thesis is founded on false and fraudulent information and meritless claims. In fact, that is against the law." (Compl. ¶ 22) (collectively, "Statement 7.")

8.  On or about November 30, 2017, Petit stated in a public conference in New York that "short sellers" are engaged in "illegal" behavior. Further, Petit identified the short sellers to whom he was referring as those who MiMedx was going "down the civil path with." (Compl. ¶ 23) ("Statement 8.")

9.  On or about November 30, 2017, Petit wrote a letter to the SEC, which MiMedx published on its website on a page for "short selling commentary." In the letter, Petit described Aurelius Value as a "shill" engaged in "recent illegal short selling." (Compl. ¶ 24.) He further stated:

    "I realize that ordinary people do not understand just how corrupt dishonest persons can become. Real truthful facts do not mean anything to individuals who have their own agenda. . . . This has become a classic case . . . of what fraudulent stock manipulation really involves. . . . [T]hese particular illegal short sellers apparently do not care about credible sources for their information." (Compl. ¶ 24) (collectively, "Statement 9.")

10. On or about December 13, 2017, Petit referred to "illegal short selling activities" in a public conference call with investors.  (Compl. ¶ 25) ("Statement 10.")

11. On or about January 18, 2018, Petit referred to short sellers "using illegal techniques" in a conference call with investors.  (Compl. ¶ 26) ("Statement 11.")

12. Sometime in February 2018, MiMedx posted a rebuttal of claims made by Aurelius Value on its website, suggesting criminal and illegal activity.  (Compl. ¶ 27) ("Statement 12.")

Sparrow asserts that the John Doe Defendants operating as @nascardrivers69,

@webchicklet, @captkevinrogers, @atlantadoctors, @CE_breakingnews and

californiaexaminer.net said the following on Twitter and in an internet article:

13. A specific hedge fund paid Aurelius Value and Viceroy Research to spread negative information in order to depress MiMedx's stock price.  Aurelius is "a common criminal that [created] a website and attacked good companies on behalf of the highest bidder all so they can make more money."  (Compl. ¶ 29) (collectively, "Statement 13.")

14. "Sparrow fund henchmen made up lies to TRY to get your $10 puts in the money." (Compl. ¶ 30) ("Statement 14.")

15. "[i]t seems Sparrow/aka Aurelius Value got their lies published…" in response to content shared by Aurelius Value discussing allegedly fraudulent behavior by MiMedx.  (Compl. ¶ 31) ("Statement 15.")

16. "[O]h oh Sparrow is going to throw you under the bus for creating ineffective lies about $mdxg," in response to comments by an anonymous blogger.  (Compl. ¶ 32) ("Statement 16.")

17. @atlantadoctors tweeted incorrectly that lead counsel for Sparrow had withdrawn their representation of Sparrow.  (Compl. ¶37) ("Statement 17.")

Sparrow claims that the anonymous John Does are working in concert with MiMedx to

damage Sparrow's business reputation.  The factual bases for the alleged conspiracy are that:

- "Concurrent with the filing of MiMedx's complaint, a group of anonymous bloggers began simultaneously tweeting and posting content clearly designed to promote MiMedx stock while simultaneously disparaging Sparrow and 'criminal short sellers.'"

- One of the John Does, @nascardrivers69, tweeted about the private employment history of a former MiMedx employee and whistleblower.
- @atlantadoctors "was set up with the primary goal of promoting MiMedx's stock."
- @atlantadoctors claimed that lead counsel for Sparrow had withdrawn the day after "counsel for Sparrow called counsel for MiMedx to present evidence of additional improper litigation tactics on the part of MiMedx."
- @atlantadoctors changed the privacy settings of its account after counsel for Sparrow alerted counsel for MiMedx of Sparrow's belief that MiMedx was "orchestrating a social media campaign to tarnish Sparrow's reputation."

(Compl. ¶¶ 28, 33-37.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") governs dismissal of lawsuits for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the non-moving party.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  To survive a motion to dismiss, a complaint must "plead sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The complaint must make more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Iqbal*, 556 U.S. at 679.  If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement to relief.  *Id.*

A federal court sitting in diversity applies the choice of law rules of the forum state, which in this case is New York.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, (1941).  The parties' briefs assume that New York law controls here, and such implied consent is

sufficient to find that New York law governs.  *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000).  Accordingly, this Court applies New York substantive law to the claims of defamation and civil conspiracy to defame.

Federal Rule of Civil Procedure 12(b)(2) governs dismissal of lawsuits for failure to establish personal jurisdiction.  "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (internal citations omitted).  To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must "make a prima facie showing that jurisdiction exists."  *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

## <u>ANALYSIS</u>

### I.  *MiMedx and Petit's Motion to Dismiss*

MiMedx and Petit's motion to dismiss argues that Sparrow fails to state a claim for defamation and for civil conspiracy to defame.  (Doc. No. 45.)

#### A.  *Defamation Claim*

##### 1.  *Elements of a Defamation Claim*

To state a claim for defamation under New York law, the plaintiff must allege the following: (1) a false defamatory statement of fact of and concerning the plaintiff, (2) published to a third party, (3) made with the applicable level of fault, (4) causing injury, and (5) not protected by privilege.  *In Touch Concepts, Inc. v. Cellco Partnership*, 949 F. Supp. 2d 447, 484 (S.D.N.Y. 2013) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)).  Where a claim of defamation is made against a public figure, the plaintiff also must show that the

alleged defamatory statement was made with "actual malice."  *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 161 (1967); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).

> ### a.  First Element: False Defamatory Statement of Fact of and Concerning Plaintiff

With regard to the first element – a false defamatory statement of fact of and concerning plaintiff – actionable statements are statements of fact that "tend[ ] to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of [the person] in the minds of a substantial number in the community."  *Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir. 1997) (quoting *Tracy v. Newsday, Inc.,* 5 N.Y.2d 134, 136, (1959)).  Further, "it is essential in making out a prima face case in [defamation] *to prove* that the matter is published of and concerning the plaintiff."  *Julian v. Am*. *Business Consultants, Inc.,* 2 N.Y.2d 1, 17 (1956) (emphasis in original); *see also Kirch v. Liberty Media Corp.,* 449 F.3d 388, 398 (2d Cir.2006). Although this is an issue of fact generally decided by the jury, the Court may dismiss an action pursuant to Rule 12(b)(6) as a matter of law where the statements "are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff."  *Diaz v. NBC Universal, Inc.*, 546 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (quoting *Church of Scientology Int'l v. Time Warner, Inc.,* 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992)).  To do this, "[t]he Court must determine whether, upon reading the statements, it would be clear that the plaintiff was the target of the allegedly libelous statement to those who know him or her." *Chau v. Lewis*, 935 F.Supp.2d 644, 663 (S.D.N.Y. 2013).

"Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group." *Church of Scientology Int'l,* 806 F.Supp. at 1160 (citing *New York Times Co.*, 376 U.S. 254); *Diaz,* 536 F. Supp. 2d at 3343.

### b.   *Fifth Element: Statements Protected by Privilege*

#### i.   *Absolute Privilege*

New York law accords absolute immunity to statements made in the "context of a legal proceeding . . . if, by any view or under any circumstances, they are pertinent to the litigation." *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995) (quoting *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (3d Dep't 1991), appeal dismissed, 77 N.Y.2d 940 (1991)).  This privilege covers statements made in pleadings and in court, as well as statements made in the course of a litigation, such as statements by attorneys to subpoenaed witnesses and parties, during settlement discussions, or statements to news reporters that quote from, and restate, allegations in a complaint.  *Id.* at 171 (collecting cases).  "Likewise, under New York law, statements made to governmental authorities, such as the SEC, are accorded an absolute privilege "where they are made as part of or preliminary to a judicial or quasi-judicial proceeding." *Fischkoff v. Iovance Biotherapeutics*, *Inc.*, No. 17-cv-5041 (GWG), 2018 WL 5074659, at *3-5 (S.D.N.Y. Oct. 17, 2018) (internal citations and quotation marks omitted); *see also Able Energy, Inc. v. Marcum & Kliegman LLP*, 893 N.Y.S.2d 36, 37 (1st Dep't 2010) (statements made to SEC that could be used in a quasi-judicial proceeding are absolutely

privileged).

### ii.    Qualified Privilege

Statements made outside of judicial proceedings are subject to a qualified privilege to the extent that they simply provide fair and true reporting on such proceedings under New York Civil Rights Law Section 74 ("Section 74").  N.Y. Civ. Rts. Law § 74 ("A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding. . . .").  The New York Court of Appeals has explained that Section 74's qualified privilege applies to out-of-court reports or statements about a judicial proceeding that are a "substantially accurate" description of the judicial proceeding.  *See Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979); *see also Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006); *Karedes v. Ackerley Grp.,* 423 F.3d 107, 119-20 (2d Cir. 2005).

The exact words in a pleading need not be given if the substance of the statement is substantially the same and does not "suggest more serious conduct than that actually suggested in the official proceeding."  *Lan Sang v. Ming Hai*, 951 F. Supp.2d 504, 521 (S.D.N.Y. 2013) (internal citations omitted); *see also Southridge Capital Mgmt., LLC v. Lowry*, No. 01-cv-4880 (RO), 2003 WL 68041, at *2 (S.D.N.Y. 2013).

However, Section 74 does not protect statements or communications concerning a "maliciously institute[d]" judicial proceeding.  *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969) ("[I]t was never the intention of the Legislature in enacting [S]ection 74 to allow any person to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then

11

circulate a press release or other communication based thereon and escape liability by invoking the statute.").

### c.   Actual Malice and the Limited Purpose Public Figure Doctrine

Where a plaintiff in a defamation suit is a public figure, the plaintiff must plead that the defendants made the allegedly defamatory statements with "actual malice," meaning, that the defendants acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times Co.*, 376 U.S. at 279-80.  The actual malice requirement also applies to statements made about "limited-purpose public figures." *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984).  A limited purpose public figure is one who has: "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media. *Id.*

### 2.   Application of Legal Standards to Sparrow's Defamation Claims

Defendants argue that the defamation claim should be dismissed because (1) the statements made were not "of and concerning" Sparrow; (2) the statements attributable to MiMedx and the statements made by Petit are subject to an absolute or qualified privilege because they all were made in the context of, and concerned, the MiMedix Action; and (3) Sparrow is a limited-purpose public figure who must – but fails to – show that the statements were made with "actual malice."  The Court addresses each of these arguments in turn below.

> **a.  Whether the Alleged Defamatory Statements are "Of and Concerning" Sparrow**

As explained above, to withstand a motion to dismiss, Plaintiff has the burden of proving that an allegedly defamatory statement is "published of and concerning the [P]laintiff." *Julian,* 2 N.Y.2d at 17; *Kirch,* 449 F.3d 388 at 398.  In analyzing whether a statement is "of and concerning" Plaintiff, this Court shall consider whether, after reading the statement, the reader could think that Plaintiff was the target of the statement.  *See Anyanwu v. Columbia Broad Sys. Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y. 1995).

The assertions in Statements 5, 6, 8, 10, and 11 do not satisfy the "of and concerning" element of a defamation claim because they refer to unidentified short sellers as a group and are not sufficiently particular to differentiate the unidentified "short sellers" from Sparrow specifically.  There is no way for a reasonable reader to view Defendants' alleged statements regarding unlawful activity by "short sellers" as pertaining specifically to Sparrow, and therefore, Plaintiff's claim falls short under the group libel doctrine.  Thus, any defamation claim based on these Statements fails as a matter of law.

However, Statements 4, 9, and 12 specifically mention Aurelius Value, the "anonymous" blogger.  Sparrow has, and continues to, vehemently deny that it is Aurelius Value.  But MiMedx identified Sparrow as Aurelius Value in the MiMedx Action.  *See* MiMedx Action, ECF 1 (identifying Sparrow as "Sparrow Fund Management LP a/k/a 'Aurelius Value' ('Sparrow' or 'Aurelius')").  In the complaint in the MiMedx Action, MiMedx pled that, "under the pseudonym 'Aurelius Value,' [Sparrow's] principals and/or employees are engaged in the

13

publishing of supposed 'research' about publicly -traded companies on its website, http://aureliusvalue.com/." *Id.* ¶ 15.  It also pled that "[u]pon information and belief, Aurelius Value is actually one or more of Sparrow's partners or employees, posting under a pseudonym for the benefit of themselves and/or Sparrow."  *Id.* ¶ 36.  The Court's role in the present motions to dismiss is not to uncover the mystery of Aurelius Value's identity.  Instead, the Court's inquiry is to determine whether Sparrow has shown that readers, in light of the surrounding circumstances, could understand that the Statements concerning Aurelius Value are referring to Sparrow.  *See Wexler*, 2018 WL 1626346, at *8; *see also Daytree at Cortland Square Inc. v. Walsh*, 332 F. Supp. 3d 610, 629 (E.D.N.Y. 2018) ("The test in this circuit is whether the libel designates the plaintiff in such a way as to let those who knew the plaintiff understand that he was the person meant.  It is not necessary that all the world should understand the libel.") (internal citations omitted).  Based on the circumstances – most importantly, that Defendants themselves have previously argued that Aurelius Value is "actually one or more of Sparrow's partners or employees" posting for Sparrow's "benefit"– this Court concludes, based on the information pled in the Complaint, that a reader could understand that Defendants were referring to Sparrow when they made the Statements about Aurelius Value.  Accordingly, Sparrow has sufficiently pled that Statements 4, 9, and 12 are "of and concerning" Sparrow.

Thus, Statements 5, 6, 8, 10, and 11 are not actionable because Plaintiff failed to plead that the Statements are "of and concerning" Plaintiff, while Statements 4, 9, and 12 are sufficient to withstand a motion to dismiss.

#### b.  *Whether the Alleged Defamatory Statements are Privileged*

Statement 1 contains statements made in MiMedx's pleadings in the MiMedx Action. These statements are protected by the absolute litigation privilege because they were made within a judicial proceeding.  *O'Brien*, 898 F. Supp. at 171.  Statement 2 is protected by the qualified statutory privilege under Section 74 because it merely discloses the existence of the MiMedx Action to the SEC and identifies Sparrow as a defendant in the litigation without suggesting more serious conduct than that which was actually plead in the MiMedx Action.[2]

Likewise, Statement 3, made by Petit, is protected by the qualified statutory privilege under Section 74.  Statement 3 concerns the press release issued by MiMedx on the day it filed the MiMedx Action and simply summarizes the allegations in that action.  Petit's statement begins with the language "we contend" and then is followed by the assertion that the Defendants (which included Sparrow) knowingly disseminated false statements in order to drive down MiMedx's stock price, thereby profiting from their short position in the company. The language in Statement 3 tracks the allegations made in the complaint in the MiMedx Action about Sparrow/Aurelius Value and their alleged co-conspirators.  For example, in that complaint, MiMedx alleged that Sparrow "maliciously disseminated materially false, misleading and defamatory statements about MiMedx and its employees to shareholders and the investing public, intending to fraudulently manipulate the market for MiMedx's stock and to allow Defendants to reap enormous profits from the resulting price decline."  *See* MiMedx Action,

---

[2] Defendants argue that Statement 2 is protected by an absolute privilege because it was made to the SEC.  The Court declines to reach the question of whether Statement 2 is protected by an absolute privilege because Defendants do not provide sufficient information from which the Court could conclude that the Statement was made to the SEC under circumstances that afford it an absolute privilege.  *See Fischkoff*, 2018 WL 5074659, at *3-5.

ECF 1 ¶¶ 1, 85.  Petit's assertion in Statement 3 that Sparrow "purposely omitted facts or context favorable to MiMedx" and "refused to do any informational and fact-finding due diligence, but just published any information that supported their conspired short thesis" also tracks allegations made in the complaint in the MiMedx Action.  *See id.*  ¶¶ 41, 77.  Statement 3 therefore is a substantially accurate summary of the allegations in the complaint in the MiMedx Action and does not suggest more serious conduct than that which was actually pled.

Similarly, Statement 7, made by Petit, explicitly refers to the MiMedx Action, substantially tracks the allegations in the complaint in the MiMedx Action, and was made in response to questions from a reporter inquiring about the MiMedx Action.  Petit's comments merely state that MiMedx filed the lawsuit to obtain legal relief for defamatory statements made by short-sellers who were attempting to manipulate MiMedx's stock, which is a fair and accurate summary of the MiMedx Action.  Thus, Statement 7 is protected by Section 74.[3] Finally, the Court notes that nowhere in the Complaint does Sparrow allege that Statements 2, 3, and 7 were not "fair and true reports" of the allegations made by MiMedx in the MiMedx Action.

In sum, Statement 1 is protected by the absolute privilege applicable to statements made in a legal proceeding.  Statements 2, 3, and 7 are protected by the qualified privilege under Section 74.  These Statements, therefore, are not actionable.

---

[3] The Court also questions whether Sparrow has shown that Statement 7 is "of and concerning" Sparrow.  The article itself references Sparrow and Aurelius Value, however, Petit's statement in response to the article refers to the short sellers as a group.  Sparrow puts its name, Sparrow, in brackets, in the middle of Petit's quoted language, but the Court does not find this sufficient to show that Petit actually mentioned Sparrow.  Nevertheless, the Court need not decide whether Statement 7 is "of and concerning" Sparrow because it is privileged under Section 74.

### 3.   Whether Sparrow is a Limited Purpose Public Figure

The parties also dispute whether Sparrow is a limited purpose public figure such that any defamatory statements must have been made with "actual malice" to be actionable. Defendants have the burden to show that Sparrow is a limited purpose public figure. *See Lerman*, 745 F.2d at 136. Defendants argue that Sparrow is a limited purpose public figure because one of Sparrow's principals, Nathan Koppikar, is "the notorious short seller 'The Friendly Bear." According to MiMedx, Koppikar's postings as "Friendly Bear" on Seeking Alpha, a website on which various users post content related to publicly-traded companies, somehow render Sparrow a limited purpose public figure. This argument fails for a few reasons. First, Koppikar's name does not appear on Friendly Bear's posts, so the Court is not convinced that Koppikar even made the statements at issue. Second, even assuming Koppikar made the statements, MiMedx fails to show that Koppikar's statements may be attributed to Sparrow. There is no evidence that these comments were made on behalf of Sparrow, as Friendly Bear's posts do not state that they reflect Sparrow's views. Thus, even if Koppikar did make the statements, the statements still cannot be attributed to Sparrow without any evidence showing that Koppikar was acting within the scope of his employment when he made the statements. *See Garrison v. Toshiba Bus. Sol. (USA) Inc.*, 907 F. Supp. 2d 301, 309 (E.D.N.Y. 2012). Thus, Defendants have not shown that Sparrow has "voluntarily injected [itself] into a public controversy" and "successfully invited public attention to [its] views" through Friendly Bear's posts. *Lerman*, 745 F.2d at 136. Accordingly, Defendants' argument that Sparrow is a limited purpose public figure that was required to plead actual malice fails.

17

In sum, this Court recommends that MiMedx and Petit's motion to dismiss Sparrow's defamation claim be granted as to Statements 1, 2, 3, 5, 6, 7, 8, 10, and 11 and denied as to Statements 4, 9, and 12.

### B.  Civil Conspiracy Claim

Sparrow also alleges that all Defendants (including the John Doe Defendants) conspired to defame Sparrow.  (Compl. ¶¶ 57-64.)  Under New York law, civil conspiracy to defame is only actionable where there is an underlying claim of defamation that is actionable.  *See LaPorte v.Greenwich House*, No. 09-cv-6645 (NRB), 2010 WL 1779342, at *8 (S.D.N.Y. Apr. 26, 2010); *see also Rivera v. Greenberg*, 663 N.Y.S.2d 628, 629 (2d Dep't 1997).  Here, this Court has recommended denying Defendants' motion to dismiss Sparrow's defamation claim as to three of the Statements.  Accordingly, the Court will address the sufficiency of Sparrow's civil conspiracy to defame claim.

To plead civil conspiracy, Sparrow must demonstrate the underlying tort of defamation, plus: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.  *Treppel v. Biovail Corp.*, No. 03-cv-3002 (PKL), 2005 WL 2086339, at *5 (S.D.N.Y. Aug. 30, 2005).  Sparrow asks the Court to infer a conspiracy between the Defendants based on the sheer timing of statements made by the John Doe Defendants. For example, Sparrow alleges that the John Doe Defendants began to simultaneously tweet and post content "clearly designed to promote MiMedx stock while simultaneously disparaging Sparrow" around the time that the MiMedx Action was commenced.  (Compl. ¶ 28.)  Further,

Sparrow alleges that a disparaging and incorrect tweet about Sparrow's lead counsel withdrawing their representation of Sparrow came one business day prior to a communication from Sparrow's counsel to MiMedx about purported "improper litigation tactics." (*Id.* ¶ 37.) However, Sparrow has not pled any facts showing that the Defendants agreed to participate in a conspiracy. *Treppel*, 2005 WL 2086339, at *6; *see also Doe v. White Plains Hosp. Med. Ctr.*, No. 10-cv-5405 (GBD), 2011 WL 2899174, at *4 (S.D.N.Y. July 8, 2011) (dismissing conspiracy to defame claim where plaintiff "has not asserted any facts to support the conclusion that there was a corrupt agreement between the [d]efendants"). Nowhere in the Complaint does Sparrow plead that the Defendants entered into an agreement to defame Sparrow, or any agreement at all. Thus, there are no facts that allow this Court to draw a reasonable inference that Defendants agreed with each other to publish knowingly false statements about Sparrow. Thus, Sparrow's claim for conspiracy to defame should be dismissed.

### C. Sparrow's Request for Leave to Amend

Finally, Sparrow requests leave to amend its Complaint in the event that the Court dismisses the Complaint. Leave to amend should be freely granted but may be denied "if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (internal citations omitted); *see also* Fed. R. Civ. P. 15(a)(2). "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) (citing *Branum v. Clark*, 927 F.3d 698, 705 (2d Cir. 1991)). Defendants have not pointed to any

compelling reason why leave to amend should be denied.  Moreover, it is not clear that any

amendment would be futile.  Accordingly, this Court recommends granting Sparrow leave to file

an amended complaint.

## II.    Petit's Motion to Dismiss for Lack of Personal Jurisdiction

### A.    Legal Standard

As noted above, it is the Plaintiff's burden to demonstrate personal jurisdiction.  *Troma*

*Entm't, Inc.*, 729 F.3d at 217.  Where, as here, a case is premised on diversity jurisdiction, the

Court looks to the long-arm statute of the forum state to assess personal jurisdiction.  *Bensusan*

*Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

There are two ways of obtaining personal jurisdiction over an out-of-state defendant:

general or specific jurisdiction.  Only a limited set of affiliations with a state will render an out-

of-state defendant subject to all-purpose general personal jurisdiction within the state.

*Ramgoolie v. Ramgoolie*, No. 16-CV-3345 (VEC)(SN), 2017 WL 9565534, at *3 (S.D.N.Y. May 31,

2017), adopted by, 2017 WL 3575853 (S.D.N.Y. Aug. 18, 2017) (*citing Daimler AG v. Bauman*,

571 U.S. 117 (2014)).  The Supreme Court has held that general personal jurisdiction is

determined based on domicile if the individual has not consented to the court's jurisdiction.

*Daimler*, 571 U.S. at 137.  Even "an individual's 'engage[ment] in a substantial, continuous, and

systematic course of business *is alone insufficient* to render it at home in a forum.'"  *Reich v.*

*Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014) (emphasis added) (quoting *Daimler*, 571 U.S. at

138).

New York's long-arm statute permits the exercise of specific personal jurisdiction over an out-of-state defendant where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). In order to demonstrate that an out-of-state defendant is "transact[ing] any business" within the meaning of C.P.L.R. § 302(a)(1), "there must have been some purposeful activities within the state that would justify bringing the nondomiciliary defendant before the New York courts." *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 403 (2012). Moreover, there must be "some articulable nexus between the business transacted and the cause of action sued upon," which, here, is defamation. *Id.*; *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007) ("New York courts do not interpret 'transact[ing] business' to include mere defamatory utterances sent into the state . . . New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation."). Posting a statement on a website viewable by New Yorkers is insufficient to confer jurisdiction for a defamation claim under the long-arm statute. *Best Van Lines*, 490 F.3d at 253. Likewise, when New York-based commercial activities are not taken "in order to" generate the alleged defamatory statements, the long-arm statute does not confer personal jurisdiction. *See Fischer v. Stiglitz*, 15-cv-6266 (AJN), 2016 WL 3223627, at *7 (S.D.N.Y. June 8, 2016) (holding that a "defendant must engage in the relevant New York-based activity with the *intent* to create the allegedly defamatory work for jurisdiction to lie under C.P.L.R. § 302(a)(1).") (emphasis in original).

21

###### B.        *Application of Legal Standard*

Sparrow has failed to make a prima facie showing that personal jurisdiction exists over Petit.  Turning first to general jurisdiction, Sparrow has not pled that Petit is domiciled in New York; rather, it admits that he resides in Georgia.  (Compl. ¶ 3.)  Likewise, Sparrow has not pled that Petit was served in New York or otherwise consented to jurisdiction here.  Sparrow's allegations that Petit transacted business in or regularly traveled to New York are not sufficient to plead general personal jurisdiction.  *See Reich*, 38 F. Supp. 3d at 457.  Indeed, in its opposition to Petit's motion to dismiss, Sparrow did not contest the lack of general jurisdiction.  Thus, this Court does not have general jurisdiction over Petit.

Sparrow also has failed to demonstrate that the Court has specific personal jurisdiction over Petit.  Sparrow fails to plead facts supporting a sufficient connection between its underlying defamation and civil conspiracy to defame claims and any actionable New York business "transaction" by Petit.  *See SPCA*, 18 N.Y.3d at 403.  Sparrow does not identify any actions that Petit took in New York in his personal capacity that were taken *for the purpose* of defaming Sparrow.  The actions it points to do not suffice.  Specifically, the filing of a lawsuit by MiMedx in New York is not sufficient, even if Petit was the CEO of the company at the time.  *See AMPA Ltd. v. Kentfield Capital LLC*, No. 00-cv-0508 (NRB), 2001 WL 204198, at *2 n.5 (S.D.N.Y. Mar. 1, 2001) ("There is no support for the proposition that filing an action on behalf of a corporation in and of itself subjects the individual directors of that corporation to personal jurisdiction in New York without regard to the directors' own contacts with the forum.").  Sparrow's allegations that Petit conducts regular business in New York and has a consistent

presence here are insufficient because – even if true – Sparrow does not demonstrate that

Petit's business and presence in New York has a direct relation to the alleged defamation.  *See*

*Fischer*, 2016 WL 3223627, at *7.  Moreover, the fact that Statement 8 was made when Petit

was in New York on company business is insufficient because Sparrow does not plead any nexus

between the allegedly defamatory statement and Petit's transactions in New York.  *Best Van*

*Lines, Inc.*, 490 F.3d at 248 ("[T]he act of uttering a defamation, no matter how loudly, is not a

transaction of business that may provide the foundation for personal jurisdiction").  Further,

that the allegedly defamatory statements made by Petit were posted online, made generally to

the investing public, and included in press releases is not sufficient because, again, Sparrow

pleads no facts showing a direct relation between any of the allegedly defamatory statements

and Petit's business transactions in New York.  *See id.* at 253.

Accordingly, this Court recommends granting Petit's motion to dismiss because Sparrow

has failed to meet its burden to make a prima facie showing that the Court has personal

jurisdiction over Petit in this action.[4]

III.    ***Sparrow's Motions for Expedited Discovery as to the Identity of the John Doe Defendants***

Sparrow asserts claims of defamation and civil conspiracy to defame against the John

Doe Defendants.  The John Doe Defendants are not represented, and Sparrow does not know

the identity of the John Doe Defendants.  Sparrow has therefore filed two motions for

expedited discovery on an emergency basis.  (Doc. Nos. 15, 24.)  In its first motion, Sparrow

---

[4] This Court recommends denying Sparrow's request for limited jurisdictional discovery to "achieve certainty" on whether the Court has personal jurisdiction over Petit because Sparrow has not shown that discovery is likely to produce the facts needed to establish jurisdiction over Petit.  *See Haber v. U.S.*, 823 F.3d 746, 753 (2d Cir. 2016).

seeks expedited discovery from Tedra Desue, Kevin Rogers, and CG Capital in order to learn the identities of the anonymous John Does, effectuate timely service of process on the John Does, and prevent the destruction of evidence.  In its second motion, Sparrow seeks expedited discovery from an individual named Blair Perot to prevent destruction of evidence.

Generally, parties "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 26(d)(1).  However, courts have broad discretion to manage the discovery process and may authorize discovery to begin earlier.  *See id.*  In this District, courts apply a "flexible standard of reasonableness and good cause" to determine whether expedited discovery is appropriate.  *Digital Sin Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)).

This Court believes that expedited discovery is not appropriate here.  Sparrow may obtain information from MiMedx and subpoena the identified non-parties in the course of this litigation to determine the identities of the anonymous John Does.  Sparrow acknowledges as much in its Complaint.  (Compl. ¶ 38.)  Further, discovery may reveal facts causing Sparrow to elect to withdraw its claims against the John Doe defendants.[5]  Accordingly, this Court sees no present good cause for expedited discovery concerning the John Doe Defendants.

---

[5] In particular, the Court questions whether complete diversity will exist once the John Doe Defendants are identified, as the Complaint is devoid of any allegations setting forth the domicile of those Defendants.  *See Tan v. Doe*, No. 14–cv–2663 (ALC), 2014 WL 1770948, at *3 (S.D.N.Y. May 5, 2014).  Moreover, it is far from clear that the damages suffered from the anonymous tweeters would satisfy the $75,000 amount in controversy requirement.  *See Van Dyke v. Partners of Debevoise & Plimpton LLP*, No. 12–cv–8354 (GBD), 2013 WL 5375542, at *7 (S.D.N.Y. Sept. 24, 2013) (dismissing complaint because of failure to plead allegations that would allow court to plausibly infer the satisfaction of the amount in controversy requirement).  It also is unclear whether personal jurisdiction will exist against these defendants.

## CONCLUSION

For the reasons set forth above, this Court recommends that MiMedx and Petit's motion to dismiss (Doc. No. 44) be GRANTED in PART and DENIED in PART; that Petit's motion to dismiss (Doc. No. 46) be GRANTED.  Further, Sparrow's motions for expedited discovery on an emergency basis (Doc. Nos. 15, 24) are DENIED without prejudice.

Respectfully submitted,

Date:   December 14, 2018
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

## NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the United States Courthouse, 40 Foley Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Gardephe. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**