**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPARROW FUND MANAGEMENT LP, | |
| Plaintiff, | |
| v. | **Case No.  1:18-cv-04921 (PGG) (KHP)** |
| MIMEDX GROUP, INC., PARKER H. "PETE" PETIT, AND JOHN DOES 1-10, | |
| Defendants. | |

**DEFENDANT MIMEDX GROUP, INC.'S OBJECTIONS TO DECEMBER 14, 2018**
**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I.   Introduction ........................................................................................................................... 1

II.  Factual Background ............................................................................................................... 2

III. Legal Standards ..................................................................................................................... 7

    A.   Standard of Review for Dispositive Reports and Recommendations ................................. 7

    B.   Standard of Review on Motion to Dismiss ........................................................................ 7

IV.  Argument ............................................................................................................................... 8

    A.   The Report Erroneously Concluded that Statements 4, 9, and 12 Were "Of and Concerning" Sparrow By Improperly Relying on an Absolutely Privileged Statement to Connect Aurelius Value to Sparrow ................................................................................................. 8

    B.   Relief to Amend Should be Denied as Futile Because Sparrow Cannot Establish Otherwise ............................................................................................................................. 13

V.   Conclusion .......................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Algarin v. Town of Wallkill,*
  421 F.3d 137 (2d Cir. 2005).................................................................................12

*Arista Records, LLC v. Doe 3,*
  604 F.3d 110 (2d Cir. 2010)...................................................................................7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................7

*Biro v. Conde Nast,*
  883 F. Supp. 2d 441 (S.D.N.Y. 2012)..................................................................12

*Daytree at Cortland Square, Inc. v. Walsh,*
  332 F. Supp. 3d 610 (E.D.N.Y. 2018) ...........................................................12, 13

*Foman v. Davis,*
  371 U.S. 178 (1962)...............................................................................................14

*FreeLife Int'l, Inc. v. Am. Educ. Music Publ'ns Inc.,*
  No. CV07-2210-PHX-DGC, 2009 WL 3241795 (D. Ariz. Oct. 1, 2009)...............9, 10, 11

*Fulghum v. Wise Seats, Inc.,*
  No. 4:10-2112-JMC-KDW, 2012 WL 1032615 (D. S.C. Feb. 13, 2012)...............10

*Greene v. WCI Holdings Corp.,*
  956 F. Supp. 509 (S.D.N.Y. 1997) ........................................................................7

*Guccione v. Hustler Magazine, Inc.,*
  800 F.2d 298, 301 (2d Cir.1986...........................................................................12

*Hayden v. Cty. of Nassau,*
  180 F.3d 42 (2d Cir. 1999)....................................................................................14

*Marsh v. Ellsworth,*
  50 N.Y. 309 (1872) .................................................................................................8

*MiMedx Group, Inc. et al. v. Sparrow Fund Management, LP et al.,*
  No. 1:17-cv-07568-PGG-KHP (S.D.N.Y. Oct. 4, 2017) ................................ *passim*

iii

*O'Brien v. Alexander*,
    898 F. Supp. 162 (S.D.N.Y. 1995) ........................................................................8

*Toker v. Pollak*,
    44 N.Y.2d 211 (1978) .........................................................................................9

*United States v. Raddatz*,
    447 U.S. 667 (1980)............................................................................................7

*Vargas v. Keane*,
    No. 93 Civ. 7852 (MBM), 1994 WL 693885 (S.D.N.Y. Dec. 12, 1994) ..................7

*Vega v. Artuz*,
    No. 97 Civ. 3773 (LTS), 2002 WL 31174466 (S.D.N.Y. Sept. 30, 2002) ...............7

*Wexler v. Allegion (UK) Ltd.*,
    No. 16 Civ. 2252 (ER), 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018)...........11, 12, 13

*Youmans v. Smith*,
    153 N.Y. 214 (1897) .......................................................................................9, 13

**Statutes**

28 U.S.C. § 636(b)(1) ...............................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .....................................................................7

Federal Rule of Civil Procedure 15(a) .......................................................................13

Federal Rule of Civil Procedure 72(b)(3) .....................................................................7

## I.  INTRODUCTION

Defendant MiMedx Group, Inc. ("MiMedx") has few objections to the Report and Recommendation ("Report") issued by Magistrate Judge Parker on December 14, 2018.  The Report correctly determined that the vast majority of the statements (*i.e.*, Statements 1-3, 5-8, and 10-11 of 12, as defined therein) alleged to be defamatory by Plaintiff Sparrow Fund Management, LP ("Sparrow") were subject to either the absolute litigation privilege or the qualified statutory privilege for fair and true reports of a judicial proceeding, or otherwise failed to satisfy the "of and concerning" requirement and were therefore not defamatory towards Sparrow.  The Report also correctly decided that Sparrow failed to allege any facts sufficient to state a claim for civil conspiracy to defame.  These findings should be accepted and adopted by this Court.

Where the Report primarily erred was in its finding that Statements 4, 9, and 12, as defined therein, were sufficient to withstand MiMedx's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss").  The Report fails to properly address the fact that Statements 4, 9 and 12 were all directed toward Aurelius Value—Sparrow's alleged pseudonym—not Sparrow itself.  None of these three statements make any mention of Sparrow whatsoever.  Sparrow, of course, claims vehemently that it is ***not*** Aurelius Value.  As the Report itself concedes, the only way that these statements could be considered "of and concerning" Sparrow is by explicit reference to MiMedx's allegation in a pleading that Aurelius Value and Sparrow are one and the same—an allegation which is undeniably subject to the absolute litigation privilege and, by definition, cannot form the basis of a defamation action.   Indeed, the case law is clear that a plaintiff cannot combine a statement that is non-defamatory on its face with an absolutely privileged statement to make a defamatory statement.  To do so would undermine the entire

policy behind the litigation privilege, which is to allow "fearless prosecution" of claims for relief.

The Report also erred in its finding that Sparrow should be permitted leave to amend its complaint under the circumstances of this case. Sparrow has never identified any way that it could reasonably amend its complaint to overcome the deficiencies identified by MiMedx and described in the Report. Indeed, this entire case revolves around an extremely limited universe of statements made in or in connection with the prior *Sparrow I* litigation. Sparrow is more than familiar with that litigation, having participated in it, and set forth the allegedly defamatory statements verbatim in its complaint. Those statements are what they are, and cannot be revised by further pleading. Permitting Sparrow an opportunity to amend the complaint would thus be entirely futile.

Given the foregoing, the Court should adopt the Report's reasoning and recommendations in all respects except to the extent that: (i) the Report erroneously concluded that Sparrow alleged a viable claim for defamation based on Statements 4, 9, and 12; and (ii) the Report recommended permitting Sparrow an opportunity to amend. Instead, the entire complaint should be dismissed without leave to amend.

## II.    FACTUAL BACKGROUND[1]

Beginning in September 2017, MiMedx was blindsided with an unprecedented attack from various known and unknown short sellers seeking to depress MiMedx's share price by disseminating false and defamatory statements about MiMedx's employees, products, and business practices. MiMedx immediately thereafter began to investigate the source of these short

---

[1] A more robust and detailed set of facts was presented in MiMedx's original Motion to Dismiss. ECF No. 45. The facts discussed here are only those necessary for adjudication of MiMedx's objections.

attacks.   After a thorough pre-filing forensic investigation into the true identity of "Aurelius Value," one of the main pseudonymous short sellers attacking MiMedx online, MiMedx promptly filed suit against Sparrow and others in this Court for defamation and other related claims on October 4, 2017, alleging that Sparrow was posting under the anonymous name of "Aurelius Value."   *See MiMedx Group, Inc. et al. v. Sparrow Fund Management, LP et al.*, No. 1:17-cv-07568-PGG-KHP (S.D.N.Y. Oct. 4, 2017) ("*Sparrow I*").

The Complaint specifically alleged that one or more of Sparrow's partners or employees acted as "Aurelius Value" in the following excerpts:

> Upon information and belief . . . Sparrow is a hedge fund manager and/or investment advisory firm, and under the pseudonym "Aurelius Value," its principals and/or employees are engaged in the publishing of supposed 'research' about publicly-traded companies on its website, http://aureliusvalue.com/.   Based on the prefatory language in its writings as "Aurelius Value," Sparrow appears to write solely about companies in which it or its fund(s) have a short position.
>
> Upon information and belief, Aurelius Value is actually one or more of Sparrow's partners or employees, posting under a pseudonym for the benefit of themselves and/or Sparrow (hereinafter, Sparrow shall be alternately referred to as "Aurelius").

*Sparrow I*, ECF No. 1 (Complaint) at ¶¶ 15, 36.

The allegation of whether or not Sparrow was acting as Aurelius Value was a focal point in the *Sparrow I* litigation.   Indeed, Sparrow based their leading argument in support of its motion to dismiss in part on MiMedx's purported lack of a factual basis to support an inference that Sparrow and Aurelius were "one and the same, or are even connected."   *See Sparrow I*, ECF No. 34 at 10-12.   Sparrow further unsuccessfully sought sanctions against MiMedx "for continuing to pursue Sparrow as a defendant in [*Sparrow I*] despite lacking any support for the sole factual contention linking Sparrow to this dispute."   *See Sparrow I*, ECF No. 60 at 5.   This Court ultimately ruled that MiMedx's complaint needed more factual allegations to state a claim,

and therefore dismissed the Compliant with leave to amend.  *See Sparrow I*, ECF No. 112.  MiMedx voluntarily declined to amend to add additional facts,[2] which ended the *Sparrow I* litigation.  *See Sparrow I*, Docket.

On June 4, 2018, Sparrow filed the instant action against MiMedx, Parker H. "Pete" Petit, and various John Doe Defendants during the pendency of *Sparrow I* (hereinafter referred to "*Sparrow II*").  *See Sparrow II*, ECF No. 6 ("Compl.").  Therein, Sparrow claims that it was defamed by MiMedx in pleadings before this Court, filings with the Securities & Exchange Commission, press releases, news articles, and public appearances.  *See* Compl., ¶¶ 12-27.  Sparrow further allege that MiMedx conspired with random Twitter personas to further defame Sparrow online.  *See id.*, ¶¶ 28-39.  However, Sparrow's allegations to support its claim for defamation largely derive from the allegations in MiMedx's Complaint that Sparrow, or one or more of its partners or employees, was posting online as the pseudonymous Aurelius Value.  *See id.*, ¶ 12 ("Neither Sparrow nor any of its partners, agents, or employees is Aurelius Value.  Nevertheless, on October 4, 2017, MiMedx filed a complaint in federal court for the Southern District of New York, Case No. 1:17-cv-07568-PGG-KHP, naming as a defendant in that lawsuit, 'Sparrow Fund Management LP, "a/k/a Aurelius Value".'").

Because such statements in pleadings are absolutely privileged, on August 13, 2018, MiMedx filed the instant Motion to Dismiss jointly with Mr. Petit, who was then represented by counsel for MiMedx.  *See Sparrow II*, ECF Nos. 44, 45.  MiMedx sought dismissal of all claims due to Sparrow's failure to state a claim for defamation *per se* and civil conspiracy to defame.  On December 14, 2018, the magistrate judge issued the Report, which recommended granting MiMedx's Motion to Dismiss in part without prejudice to Sparrow amending its defective

---

[2] MiMedx did have additional facts to support its claims, which were presented in detail in its briefing in opposition to Sparrow's Motion for Sanctions.  *Sparrow I*, ECF No. 71 at 7-9.

complaint.[3]  *See generally* Report.  The Report properly recognized that the majority of the alleged defamatory statements attributed to MiMedx failed to state a cognizable claim for relief based on Sparrow's failure to allege the "of and concerning" element for defamation (*id.* at 13-14), and the absolute and qualified litigation privilege (*id.* at 15-16).  However, instead of granting MiMedx's Motion in its entirety, the Report determined that the following allegations, identified as "Statements 4, 9, and 12," were sufficient to state a claim for defamation:

> **Statement 4:**  On or about October 4, 2017, Bill Taylor, President and COO of MiMedx stated:
>
> "In our press release of September 29, 2017, we alerted our shareholders to the document we posted on the MiMedx website to expose the false and misleading information distributed by Viceroy Research and ***Aurelius Value***. We encourage everyone to thoroughly read the document to gain the appropriate insight into the volume of misleading information, outright lies and libel against innocent individuals and the Company these organizations or persons have stooped to publish. In this document, we have posted numerous examples that easily discredit their statements." Compl., ¶ 18.
>
> **Statement 9:**  On or about November 30, 2017, Petit wrote a letter to the SEC, which MiMedx published on its website on a page for "short selling commentary." In the letter, Petit described ***Aurelius Value*** as a "shill" engaged in "recent illegal short selling." Compl., ¶ 24.
>
> He further stated:
>
> "I realize that ordinary people do not understand just how corrupt dishonest persons can become. Real truthful facts do not mean anything to individuals who have their own agenda. . . . This has become a classic case . . . of what fraudulent stock manipulation really involves. . . . [T]hese particular illegal short sellers apparently do not care about credible sources for their information." *Id.*, ¶ 24.
>
> **Statement 12:**  Sometime in February 2018, MiMedx posted a rebuttal of claims made by ***Aurelius Value*** on its website, suggesting criminal and illegal activity. Compl., ¶ 27.

Report at 4-6 (emphasis added).

---

[3]  Additionally, the Report recommended granting Mr. Petit's motion to dismiss for lack of personal jurisdiction (Report at 20-23), and denied Sparrow's request to seek expedited discovery on an emergency basis from certain non-parties for want of good cause. *Id.* at 23-24.

As can be seen, Statements 4, 9, and 12 do not make any mention of Sparrow, but rather refer solely to the pseudonym "Aurelius Value."   The Report, however, found that because MiMedx had previously alleged *in pleadings* that "Aurelius Value is 'actually one or more of Sparrow's partners or employees' . . . a reader could understand that [MiMedx was] referring to Sparrow when they made the [alleged] Statements about Aurelius Value."  *Id.* at 13-14.  Notably, the Report found the same allegations identifying Sparrow as Aurelius Value in the MiMedx Complaint to be absolutely privileged and insufficient to form the basis of an action for defamation.  *See id.* at 15-16 ("Statement 1 contains statements made in MiMedx's pleadings in [*Sparrow I*].  These statements are protected by the absolute litigation privilege because they were made within a judicial proceeding.").   Yet, the Report identified no other acts by MiMedx—*i.e.*, aside from the allegations in MiMedx's *Sparrow I* complaint—from which a reader could reasonably infer that MiMedx intended its references to Aurelius Value to be understood as references to Sparrow, as shown below:

> Based on the circumstances – most importantly, that Defendants themselves have previously argued that Aurelius Value is 'actually one or more of Sparrow's partners or employees' posting for Sparrow's 'benefit' – this Court concludes, ***based on the information pled in the Complaint***, that a reader could understand that Defendants were referring to Sparrow when they made the Statements about Aurelius Value.  Accordingly, Sparrow has sufficiently pled that Statements 4, 9, and 12 are 'of and concerning' Sparrow."

Report at 14 (emphasis added).

Based its conclusion that Statements 4, 9 and 12 could be understood as references to Sparrow when combined with the privileged allegations in *Sparrow I*, the Report recommended denying MiMedx's Motion to Dismiss as to those alleged statements.  *Id.* at 18 ("[T]his Court recommends that MiMedx and Petit's motion to dismiss Sparrow's defamation claim be granted as to Statements 1, 2, 3, 5, 6, 7, 8, 10, and 11 and denied as to Statements 4, 9, and 12.").

6

The Report also recommended that Sparrow be given an opportunity to amend its complaint, stating that "it is not clear that any amendment would be futile." *Id.* at 19-20.

### III.    LEGAL STANDARDS

#### A.    Standard of Review for Dispositive Reports and Recommendations

Federal Rule of Civil Procedure 72(b)(3) and 28 U.S.C. § 636(b)(1) require the district court to make a *de novo* determination as to dispositive matters, where there is a proper written objection to the Report's findings and recommendations.  Proper written objections are those that are specific and timely, *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997), and free of vague, general, and conclusory pleas or rehashing of identical arguments made to the magistrate judge below.  *See Vega v. Artuz*, No. 97 Civ. 3773 (LTS), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002); *Vargas v. Keane*, No. 93 Civ. 7852 (MBM), 1994 WL 693885, at * 1 (S.D.N.Y. Dec. 12, 1994).  A *de novo* determination demands that the district judge consider the same record developed before the magistrate judge, and "make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate."  *See United States v. Raddatz*, 447 U.S. 667, 675 (1980).

#### B.    Standard of Review on Motion to Dismiss

In reviewing the sufficiency of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal is required where the plaintiff fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, the complaint must state "enough factual matter (taken as true)" to state a plausible claim for relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

## IV.    ARGUMENT

### A.    The Report Erroneously Concluded that Statements 4, 9, and 12 Were "Of and Concerning" Sparrow By Improperly Relying on an Absolutely Privileged Statement to Connect Aurelius Value to Sparrow

In the Report's analysis of the "of and concerning" requirement and the group libel doctrine, it concluded that Statements 4, 9, and 12 satisfied the "of and concerning" element because each Statement "specifically mention[ed] Aurelius Value, the 'anonymous' blogger." Report at 13.  The Report reasoned that because "MiMedx identified Sparrow as Aurelius Value in the MiMedx Action," namely in MiMedx's *Sparrow I* complaint, "Sparrow has shown that readers, in light of the surrounding circumstances, could understand that the Statements concerning Aurelius Value are referring to Sparrow."  Report at 13-14.  Although MiMedx argued in its Motion to Dismiss that Sparrow cannot "rely upon privileged statements in litigation as a required connection to support a claim of defamation" (ECF No. 45 at 16 n.7), the Report did not consider the question of whether a plaintiff can use an absolutely privileged statement to prove the required "of and concerning" element of a defamation claim.

In fact, a plaintiff cannot defeat the litigation privilege in this roundabout manner.  No party, nor the Report, disputes that the allegations in MiMedx's *Sparrow I* complaint were subject to an absolute privilege. "[S]tatements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995) (citation and internal quotation marks omitted); *see also Marsh v. Ellsworth*, 50 N.Y. 309, 311 (1872) ("The law is well settled that a counsel or party conducting judicial proceedings is privileged . . . when such words and writings are material and pertinent to the questions involved.").  The absolute litigation privilege

is vast out of pure necessity to protect the adversarial system of justice.  "Any other rule would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society [and the law] requires." *Youmans v. Smith*, 153 N.Y. 214, 220 (1897).  By ensuring that litigants, their attorneys, witnesses, and the courts who hear their cases will not face personal liability for daring to seek the truth in a judicial proceeding, whether successful or not, New York courts have consistently recognized that these protected statements "cannot serve as the basis for the imposition of liability in a defamation action."  *See Toker v. Pollak*, 44 N.Y.2d 211, 218-19 (1978) (citations omitted).

Based on similar policy considerations, courts have specifically rejected the theory adopted in the Report, *i.e.*, that MiMedx's alleged statements "of and concerning" Aurelius Value could be understood to be "of and concerning" Sparrow because MiMedx had identified Sparrow and Aurelius Value as one in the same in its *Sparrow I* complaint.  For example, in *FreeLife Int'l, Inc. v. Am. Educ. Music Publ'ns Inc.*, No. CV07-2210-PHX-DGC, 2009 WL 3241795 (D. Ariz. Oct. 1, 2009), the counter-plaintiff (Burge) asked the court to conclude that an allegedly defamatory letter which did not identify him by name was nevertheless "of and concerning" him because it "defame[d] the owner of the www.breathe.org website and Burge was disclosed as the owner of the website in this litigation."  *Id.* at *10.  In rejecting this argument, the court wrote that:

> Defendants present no other evidence as to how a reader of the letter could know that Burge was the subject.  In other words, Defendants rely on this lawsuit as the means of perfecting Burge's defamation claim.
>
> Arizona law bars defamation claims where the allegedly defamatory act occurs during litigation.  Although in this case the allegedly defamatory statements were made before litigation, the statements could not be linked to Burge ***but for an identification made in the course of this lawsuit.***  In other words, Burge would have no claim for defamation but for this litigation.

9

The litigation privilege was created for just such a situation—to allow "fearless prosecution" of claims. Allowing a party to perfect an element of his claim through litigation would chill litigation and run afoul of the policy behind the litigation privilege. Defendants offer no non-privileged means by which a potential reader could link Burge with the FreeLife response letter. For this reason, FreeLife is entitled to summary judgment as to Burge's counterclaim for defamation.

*Id.* (emphasis added) (internal citations omitted); *see also Fulghum v. Wise Seats, Inc.*, No. 4:10-2112-JMC-KDW, 2012 WL 1032615, at *6 (D. S.C. Feb. 13, 2012) (obviously deficient defamation claim based on true information (*i.e.*, that plaintiff was terminated from employment) could not be supplemented with allegedly false but privileged statements made by employer as grounds for termination).

The reasoning employed by these courts applies with full effect here. Sparrow cannot convert a statement that concededly was "of and concerning" ***Aurelius Value*** into a statement "of and concerning" ***Sparrow*** by supplying the missing link in the form of an absolutely privileged statement. As observed in *Freelift Int'l*, "[a]llowing a party to perfect an element of his claim through litigation would chill litigation and run afoul of the policy behind the litigation privilege . . . to allow 'fearless prosecution' of claims." 2009 WL 3241795, at *10.

Nor did Sparrow make any other allegations that would allow the Report to properly make the connection that "Aurelius is Sparrow," and vice versa, independently of the *Sparrow I* complaint. Sparrow alleges, for example, that MiMedx disclosed the *Sparrow I* lawsuit to the Securities and Exchange Commission and therein "again repeated its statement that Sparrow is Aurelius Value." ECF No. 6 at ¶ 13. But as the Report recognizes, MiMedx's statements to the SEC were likewise subject to a qualified—if not absolute—litigation privilege. Report at 15. Sparrow also alleges that an article was published describing the *Sparrow I* lawsuit, but that article did no more than republish MiMedx's absolutely privileged statements in its complaint.

10

ECF No. 6 at ¶ 21. The article also expressly noted Sparrow's "emphatic denial that it is Aurelius Value," in any case. *Id.*

The Report fails to consider or address the necessary and dispositive issue —whether a statement can be deemed "of and concerning" the plaintiff based only on privileged statements by the defendant—as identified in MiMedx's original motion and discussed at more length here. Rather, the Report merely states that "the Court's role in the present motions to dismiss is not to uncover the mystery of Aurelius Value's identity," and cites two cases for the proposition that the relevant question is whether "those who knew the plaintiff understand that he was the person meant." Report at 14. Respectfully, the Report is incorrect because in neither of the cited cases were "those who knew the plaintiff" determined to understand that the plaintiff was the "person meant" solely by virtue of the defendant's allegation in litigation. In other words, those cases did not find that a plaintiff may predicate a necessary element of its defamation claim solely upon the defendant's privileged conduct.

In *Wexler v. Allegion (UK) Ltd.*, No. 16 Civ. 2252 (ER), 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018), the plaintiff (Wexler) brought an action for defamation, among other claims, alleging that various defendants who acquired his company, Zero International, Inc. ("Zero"), had issued a bulletin that disparaged Zero's products developed under the "old Zero management." *Id.* at *1-3. The district court declined to dismiss Wexler's defamation claim for want of allegations that the alleged defamatory statements were "of and concerning" the plaintiff, because Wexler's "wide-spread reputation in [his] industry made him 'synonymous with Zero'[.]" *Id.* at *8-9. The Report's reliance on *Wexler* is misplaced, as a plaintiff's "reputation" is not a privileged fact and here, Sparrow's reputation—whatever that may be—is not

11

"synonymous" with Aurelius Value.[4]  As the Report acknowledged, Sparrow has "vehemently denied" its association with Aurelius Value in both *Sparrow I* and *II*.  Rather, unlike *Wexler,* the Report explicitly acknowledged that the sole connection between Sparrow and Aurelius Value are the absolutely privileged statements where MiMedx alleged that one or more of Sparrow's partners or employees act anonymously as Aurelius Value.  Specifically the Report states that "this Court concludes, ***based on the information pled in the Complaint***, that a reader could understand that Defendants were referring to Sparrow when they made the Statements about Aurelius Value."  Report at 14 (emphasis added).  In fact, if Sparrow's complaint is stripped of all the allegations that the Report properly found to be privileged, there would be literally no facts whatsoever to tie Sparrow to the statements about Aurelius Value found in Statements 4, 9 and 12.  *Cf. Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005) (affirming dismissal of defamation claim and reasoning "it is impossible to directly tie any of the statements in the [allegedly defamatory] Report to individual officers . . . without information not contained in the Report").

    *Daytree at Cortland Square, Inc. v. Walsh* is similarly unpersuasive.  There, the allegedly defamatory statement identified actions by a company (Daytree) but did not expressly identify its owners (the Datres).  332 F. Supp. 3d 610, 632-33 (E.D.N.Y. 2018).  Nevertheless, the court concluded that the statement was "of and concerning" the Datres because "(1) the Datres were the only principals of Daytree, and as the owners of such [a] closely-held corporation, their personal reputations are inseparably intertwined, (2) 'Daytree' is a homophone for 'Datre,' and

---

[4] Alternatively, if it is eventually revealed that Sparrow is actually Aurelius Value, then MiMedx's Motion to Dismiss must still be granted, as truth is an "absolute, unqualified defense to a civil defamation action."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir.1986)).

(3) [p]ublic response . . . underscores that the corporation and individual Plaintiffs received equal and distinctly separate harm." *Id.* (internal quotation marks omitted). As in *Wexler*, none of the facts relied upon to establish the "of and concerning" requirement arose from privileged conduct, and there are no analogous facts in the instant case from which to establish that requirement. Indeed, the court specifically declined to find that any of the defendant's statements were privileged at all. *Id.* at 633-34.

In this case, the Report's conclusion that MiMedx could be found liable to *Sparrow* for allegedly defaming *Aurelius Value*—when the only alleged connection between the two is a privileged allegation in a pleading—carries dangerous implications. Indeed, it would impose a requirement on every plaintiff to prove its allegations before even having the chance to assert them.[5] This is the very effect that the litigation privilege aims to eliminate. "Any other rule would be an impediment to justice, because it would hamper the search for truth, and prevent making inquiries with that freedom and boldness which the welfare of society [and the law] requires." *Youmans*, 153 N.Y. at 220. The public is certainly not better served when mere allegations of a complaint could have the potential to be used offensively in a subsequent defamation action.

Accordingly, this Court should reject the Report's recommendation with regard to Statements 4, 9, and 12 and grant MiMedx's Motion to Dismiss in its entirety.

### B.      Relief to Amend Should be Denied as Futile Because Sparrow Cannot Establish Otherwise

Federal Rule of Civil Procedure 15(a) permits courts to freely grant relief to amend defective pleadings, but such permission must be within reason. Yet, as is the case here, "where

---

[5] It is particularly notable here that Sparrow has claimed it is not Aurelius Value, and MiMedx was prevented from pursuing its contrary allegation by virtue of the Court's dismissal of its claims in *Sparrow I*. Yet the Report would nevertheless allow Sparrow to claim it was harmed by the same allegation that Sparrow is Aurelius Value.

13

the plaintiff is unable to demonstrate that [it] would be able to amend [its] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999) (citation omitted). Sparrow should not be granted an additional opportunity to replead, as any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Sparrow's entire lawsuit is based on allegations made within MiMedx's *Sparrow I* complaint and statements made about the *Sparrow I* litigation, which are either subject to an absolute or qualified litigation privilege. Moreover, Sparrow has never demonstrated in any specific or particularized way ***how*** it would replead its deficient complaint to survive a second motion to dismiss.[6] For this reason alone, leave to amend should be denied.

As the Report found, the remaining allegations fail to even allege the basic elements of a claim for defamation, such as the "of and concerning" requirement. Sparrow simply cannot state a claim for defamation on these set of facts, without manufacturing false statements of facts and attributing those statements to MiMedx. Accordingly, relief to amend should be denied and MiMedx's motion to dismiss should be granted with prejudice.

## V.    CONCLUSION

When an absolutely privileged statement is used to leverage the denial of a motion to dismiss, the entire purpose of the litigation privilege is defeated. Because the Report recommended denial of MiMedx's motion to dismiss based on its consideration of absolutely privileged statements, it is in error. Accordingly, and for all of the foregoing reasons, MiMedx respectfully requests this Court to reject the Report with respect to Statements 4, 9, and 12, find

---

[6] Furthermore, a cursory review of Statements 4, 9, and 12 in isolation reveals that none of these alleged Statements could stand on its own to withstand another motion to dismiss given the lack of specific allegations of falsity, for example. MiMedx fully joins and incorporates the arguments presented by Mr. Petit regarding Sparrow's failure to allege sufficient facts to illustrate how the alleged defamatory statements were false.

14

Statements 4, 9, and 12 to be subject to the absolute litigation privilege, and grant MiMedx's Motion to Dismiss in its entirety with prejudice.

Dated:  January 18, 2019.

/s/ David M. Pernini

**WARGO & FRENCH LLP**
David M. Pernini, *pro hac vice*
Georgia Bar No. 572399
John C. Matthews
New York Bar No. 4507620
999 Peachtree St. NE, 26th Floor
Atlanta, GA 30309
(404) 853-1500 (telephone)
(404) 854-1501 (facsimile)
dpernini@wargofrench.com
jmatthews@wargofrench.com

*Counsel for MiMedx Group, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **DEFENDANT MIMEDX GROUP, INC.'S OBJECTIONS TO DECEMBER 14, 2018 REPORT AND RECOMMENDATION ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

<table>
<tr><td>Adam S. Heder</td><td>Nikolas S. Komyati</td></tr>
<tr><td>Harris Berne Christensen LLP</td><td>Bressler, Amery & Ross, PC</td></tr>
<tr><td>5000 Meadows Road, Suite 400</td><td>17 State Street, 34th Floor</td></tr>
<tr><td>Lake Oswego, OR 97035</td><td>New York, NY 10004</td></tr>
<tr><td>(503)-596-2920 (telephone)</td><td>(212) 425-9300 (telephone)</td></tr>
<tr><td>(503)-968-2003 (facsimile)</td><td>(212) 425-9337 (facsimile)</td></tr>
<tr><td>adamh@hbclawyers.com</td><td>nkomyati@bressler.com</td></tr>
</table>

Respectfully submitted, this __18th__ day, January 2019.


/s/ David M. Pernini
David M. Pernini

16