UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SPARROW FUND MANAGEMENT LP,

Plaintiff,

- against -

MIMEDX GROUP, INC., PARKER H.
PETIT, and JOHN DOES 1-10

Defendants.

**ORDER**

18 Civ. 4921 (PGG) (KHP)

---

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Sparrow Fund Management, LP ("Sparrow") brings this defamation

action against Defendants MiMedx Group, Inc. ("MiMedx"), Parker H. Petit, and John Does.

Plaintiff alleges that Defendants defamed it by making false statements about Sparrow in

connection with a prior civil action.

Defendants MiMedx and Petit have moved to dismiss. (Mtns. (Dkt. Nos. 44, 46))

On December 14, 2018, Magistrate Judge Katharine H. Parker issued a Report and

Recommendation ("R&R") recommending that this Court grant in part and deny in part

Defendants' motions. (R&R (Dkt. No. 84) at 25)[1]

Plaintiff and Defendants filed timely objections to the R&R. (Objs. (Dkt. Nos.

92-94)) Having reviewed the parties' objections, this Court will adopt Judge Parker's R&R in

part as set forth below, and will grant Defendants' motions to dismiss in their entirety.

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case
Filing system.

# BACKGROUND

## I.  FACTS

Plaintiff Sparrow is a New York-based hedge fund.  (Cmplt. (Dkt. No. 6) ¶ 1)

Defendant MiMedx is a biopharmaceutical company with its principal place of business in

Georgia.  (Id. ¶ 2)  Defendant Petit is the Chairman and Chief Executive Officer of MiMedx.

(Id. ¶ 3)  John Does 1-10 are anonymous Twitter users.  (Id. ¶ 4)

The instant action arises out of an earlier civil action (the "MiMedx Action").  See

MiMedx Grp., Inc. et al. v. Sparrow Fund Mgmt. LLP et al., 17 Civ. 7568 (PGG) (KHP)

(S.D.N.Y. 2017).  Judge Parker summarizes that suit as follows:

> The MiMedx Action was commenced on October 4, 2017 against Sparrow,
> Viceroy Research, and BR Dialectic Capital Management LLC and its principal
> John Fichthorn for defamation and related torts.  [(MiMedx Action Dkt. No. 1)]
> The gravamen of the allegations in [the MiMedx Action] was that Sparrow or one
> of its principals (Nathan Koppikar), using the pseudonym Aurelius Value,
> defamed MiMedx in blog posts and tweets with the aim of harming market
> confidence in MiMedx and bettering Sparrow's short positions in MiMedx stock.
> Sparrow denied that it was Aurelius Value and argued to this Court that MiMedx
> had publicly recognized that it did not know who was behind Aurelius Value.
> [(MiMedx Action Dkt. Nos. 55, 56)]  Sparrow moved to dismiss the complaint in
> the MiMedx Action.  It also moved for sanctions against MiMedx under Rule 11
> of the Federal Rules of Civil Procedure.  The Court granted Sparrow's motion to
> dismiss but denied its motion for sanctions.  See MiMedx Grp., Inc. v. Sparrow
> Fund Mgmt. LP, 17 Civ. 7568 (PGG) (KHP), 2018 WL 847014 (Jan. 12, 2018),
> adopted by 2018 WL 4735717 (Sept. 29, 2018).  The MiMedx Action was
> subsequently terminated in its entirety after MiMedx elected not to file an
> amended complaint.  [(MiMedx Action Dkt. Nos. 116, 117)]

(R&R (Dkt. No. 84) at 2-3)

On June 5, 2018 – during the pendency of the MiMedx Action – Sparrow

commenced this action against Defendants.  (Cmplt. (Dkt. No. 6))  Sparrow alleges that MiMedx

and/or Petit made a number of defamatory statements about it, all related to claims made in the

MiMedx Action.  (Id. ¶¶ 12-27)  Sparrow also alleges that MiMedx and Petit conspired with the

John Doe Defendants to further defame Sparrow on social media.  (Id. ¶¶ 28-39)

Judge Parker summarizes the alleged defamatory statements as follows:

1. Statements made in MiMedx's pleadings in the MiMedx Action, such as the allegation that Aurelius Value is one or more of Sparrow's partners or employees and that "[i]n an all-out effort to ensure that they would profit from their negative investments, Defendants [including Sparrow] have maliciously disseminated materially false, misleading and defamatory statements about MiMedx and its employees to shareholders and the investing public, intending to fraudulently manipulate the market for MiMedx's stock and to allow Defendants [including Sparrow] to reap enormous profits from the resulting price decline." (Id. ¶¶ 12, 14[-]16) (collectively, "Statement 1.")

2. In an October 31, 2017 10-Q filing with the SEC, MiMedx disclosed the MiMedx Action and ["again repeated its statement that Sparrow is Aurelius Value."] (Id. ¶ 13) ("Statement 2.")

3. On or about October 4, 2017, Petit publicly stated with regard to the defendants in the MiMedx Action:

   "We contend that the defendants knowingly concocted and disseminated false statements against MiMedx and our employees to our shareholders, the investment community and the public at large. To manipulate the market and serve their financial interest in driving down the price of MiMedx stock, they made these misleading statements. In their baseless statements, they either purposely omitted facts or context favorable to MiMedx, made suggestions concerning the Company that ran counter to the facts known by the defendants, or refused to do any informational and fact-finding due diligence, but just published any information that supported their conspired short thesis.

   We believe these types of illegal short attacks are ultimately short term in nature when the fundamentals of a business such as MiMedx are strong. Eventually, the constant outstanding performance delivered by MiMedx cannot be ignored. Unfortunately, in the meantime, honest shareholders may be deceived and harmed by the loss of their investment value, while dishonest individuals and entities are able to profit through manipulation." (Id. ¶ 17) ("Statement 3.")

4. On or about October 4, 2017, Bill Taylor, President and COO of MiMedx stated:

   "In our press release of September 29, 2017, we alerted our shareholders to the document we posted on the MiMedx website to expose the false and misleading information distributed by Viceroy Research and Aurelius Value. We encourage everyone to thoroughly read the document to gain the appropriate insight into the volume of misleading information, outright lies and libel against innocent individuals and the Company these organizations or

3

persons have stooped to publish. In this document, we have posted numerous examples that easily discredit their statements." (Id. ¶ 18) ("Statement 4.")

5. On or about October 17, 2017, MiMedx issued a press release accusing "short sellers of impersonating Pete Petit and sending out fake emails on his behalf" and described such actions as "a crime." (Id. ¶ 19.) Petit commented publicly on this press release by stating: "[w]e believe this activity is related to the recent short seller attacks on the Company. This particular group of short sellers continues to resort to ridiculous and unscrupulous means to attempt to do damage to MiMedx. Of course their ultimate goal is to depress the price of our stock. However, by impersonating me in emails to our analysts, with comments that create insecurity relative to our Company's performance or my ethics and integrity, is reprehensible and unlawful. We have also seen other indications of unlawful activity." (Id.) (collectively, "Statement 5.")

6. On or about October 27, 2017, on a public call with investors, Petit described the activities of those "entities that are involved in this unlawful short selling activity" as "illegal." (Id. ¶ 20) ("Statement 6.")

7. On November 10, 2017, an article by Linette Lopez was published in Business Insider about MiMedx entitled "The so-called Trump of Georgia is on a wild crusade against Wall Street short sellers." (Id. ¶ 21.) On November 14, 2017, in a publicly-posted letter, Petit responded to the article by stating: "MiMedx filed lawsuits in order to find legal relief and obtain damages for false and defamatory statements made by certain entities acting as shills for short-sellers illegally attempting to manipulate MiMedx stock." (Id. ¶ 22.) Petit also stated that "[the short sellers, including Sparrow] are wrong when the basis of their short sell thesis is founded on false and fraudulent information and meritless claims. In fact, that is against the law." (Id. ¶ 22) (collectively, "Statement 7.")

8. On or about November 30, 2017, Petit stated in a public conference in New York that "short sellers" are engaged in "illegal" behavior. Further, Petit identified the short sellers to whom he was referring as those who MiMedx was going "down the civil path with." (Id. ¶ 23) ("Statement 8.")

9. On or about November 30, 2017, Petit wrote a letter to the SEC, which MiMedx published on its website on a page for "short selling commentary." In the letter, Petit described Aurelius Value as a "shill" engaged in "recent illegal short selling." (Id. ¶ 24.) He further stated:

"I realize that ordinary people do not understand just how corrupt dishonest persons can become. Real truthful facts do not mean anything to individuals who have their own agenda. . . . This has become a classic case . . . of what fraudulent stock manipulation really involves. . . . [T]hese particular illegal

short sellers apparently do not care about credible sources for their information." (Id. ¶ 24) (collectively, "Statement 9.")

10. On or about December 13, 2017, Petit referred to "illegal short selling activities" in a public conference call with investors. (Id. ¶ 25) ("Statement 10.")

11. On or about January 18, 2018, Petit referred to short sellers "using illegal techniques" in a conference call with investors. (Id. ¶ 26) ("Statement 11.")

12. Sometime in February 2018, MiMedx posted a rebuttal of claims made by Aurelius Value on its website, suggesting criminal and illegal activity. (Id. ¶ 27) ("Statement 12.")

(R & R (Dkt. No. 84) at 3-6)

Sparrow further claims that the John Doe Defendants conspired with MiMedx and Petit to make defamatory statements about Sparrow on Twitter and in a blog post. Judge Parker describes the factual basis of the conspiracy allegation as follows:

"Concurrent with the filing of MiMedx's complaint, a group of anonymous bloggers began simultaneously tweeting and posting content clearly designed to promote MiMedx stock while simultaneously disparaging Sparrow and 'criminal short sellers.'"

One of the John Does, @nascardrivers69, tweeted about the private employment history of a former MiMedx employee and whistleblower.

@atlantadoctors "was set up with the primary goal of promoting MiMedx's stock."

@atlantadoctors claimed that lead counsel for Sparrow had withdrawn the day after "counsel for Sparrow called counsel for MiMedx to present evidence of additional improper litigation tactics on the part of MiMedx."

@atlantadoctors changed the privacy settings of its account after counsel for Sparrow alerted counsel for MiMedx of Sparrow's belief that MiMedx was "orchestrating a social media campaign to tarnish Sparrow's reputation."

(R & R (Dkt. No. 84) at 6-7 (quoting and citing Cmplt. (Dkt. No. 6) ¶¶ 28, 33-37)

## II. **PROCEDURAL HISTORY**

The Complaint was filed on June 5, 2018, and alleges defamation per se and civil conspiracy to defame against all Defendants. (Cmplt. (Dkt. No. 6) ¶¶ 47-64)

MiMedx and Petit moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 44), and Petit moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Dkt. No. 46). On October 31, 2018, this Court referred Defendants' motions to Judge Parker for an R&R. (Dkt. No. 72) On December 14, 2018, Judge Parker issued an R&R recommending that this Court deny in part and grant in part MiMedx and Petit's motion to dismiss for failure to state a claim, and grant Petit's motion to dismiss for lack of personal jurisdiction. (R&R (Dkt. No. 84) at 25)

28 U.S.C. § 636(b)(1)(C) provides that, "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to [a magistrate judge's] proposed findings and recommendations. . . ."[2] 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(2)

---

[2] The R&R recites the requirement that the parties must file objections within fourteen days of service, pursuant to Rule 72 of the Federal Rules of Civil Procedure, and the consequences for a failure to timely object:

### NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the United States Courthouse, 40 Foley Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed**

("[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations").

Plaintiff and Defendants filed timely objections to the R&R. (Objs. (Dkt. Nos. 92-94))

## DISCUSSION

## I.     LEGAL STANDARDS

### A.     Review of a Magistrate Judge's Report and Recommendation

This Court "may accept, reject, or modify in whole or in part" findings or recommendations issued by a magistrate judge. 28 U.S.C. § 636(b)(1).

A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." Id. "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (citation and internal quotation marks omitted)).

---

to Judge Gardephe.  **The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).**

(R&R (Dkt No. 84) at 25) (emphasis in original)

A "party generally waives judicial review of an issue[] when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object." DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.").

"A magistrate [judge] . . . may issue orders regarding nondispositive pretrial matters. The district court reviews such orders under the clearly erroneous or contrary to law standard." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (internal citation marks omitted). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 282 F.R.D. 76, 78 (S.D.N.Y. June 5, 2012) (quoting Thomas E. Hoar, Inc., 900 F.2d at 525) (internal quotation marks omitted).

### B.     Motion to Dismiss Standard

#### 1.     Rule 12(b)(6) Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pleaded "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## 2. Rule 12(b)(2) Personal Jurisdiction

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). Prior to discovery, a plaintiff may carry this burden "'by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a "prima facie showing" of jurisdiction.'" Whitaker, 261 F.3d at 208 (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990))). "A district court has 'broad discretion' in

deciding such a motion. . . ." Realuyo v. Villa Abrille, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at \*2 (S.D.N.Y. July 8, 2003), aff'd sub nom. Realuyo v. Abrille, 93 F. App'x 297 (2d Cir. 2004) (quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986)).

## II.   DEFAMATION

### A.   Legal Standards

"'To state a claim for defamation under New York law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused "special damages.""'[3] Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (quoting Gargiulo v. Forster & Garbus, Esqs., 651 F.Supp.2d 188, 192 (S.D.N.Y. 2009) (quoting Dillon v. City of New York, 261 A.D.2d 34, 38 (1st Dep't 1999))). "A defamation claim 'is only sufficient if it adequately identifies "the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.""' Id. (quoting Scholastic, Inc. v. Stouffer, 124 F.Supp.2d 836, 849 (S.D.N.Y. 2000) (quoting Broome v. Biondi, No. 96 Civ. 805, 1997 WL 83295, at \*2 (S.D.N.Y. Feb. 10, 1997))).

### B.   Analysis

#### 1.   Whether Sparrow Is a Limited Purpose Public Figure

If an alleged defamatory statement was made about a public figure or a limited purpose public figure, the Complaint must plead facts showing that the statement was made with

---

[3] "The parties' briefs assume that New York law controls, and such 'implied consent ... is sufficient to establish choice of law.'" Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (citing Tehran-Berkeley Civil & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989)); see Def. Br. (Dkt. No. 45) at 8-9; Pltf. Br. (Dkt. No. 58) at 15.

"actual malice." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Contemporary Mission, Inc. v. New York Times Co., 842 F.2d 612, 621 (2d Cir. 1988) (the "actual malice" requirement applies to limited purpose public figures). Judge Parker concluded that Sparrow is not a limited purpose public figure, and that accordingly the actual malice standard does not apply. (R&R (Dkt. No. 84) at 17) Because MiMedx does not object to this portion of the R&R, the Court reviews for clear error.

An entity is a limited purpose public figure if it "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." Lerman v. Flynt Distrib. Co., 745 F.2d 123, 136-37 (2d Cir. 1984).

Judge Parker analyzed this issue as follows: In their moving papers, Defendants argue that one of Sparrow's principals – Koppikar – published articles and blog posts online under the name "Friendly Bear." (Def. Br. (Dkt. No. 45) at 22)

> According to MiMedx, Koppikar's postings as "Friendly Bear" . . . somehow render Sparrow a limited purpose public figure. This argument fails for a few reasons. First, Koppikar's name does not appear on Friendly Bear's posts, so the Court is not convinced that Koppikar even made the statements at issue. Second, even assuming Koppikar made the statements, MiMedx fails to show that Koppikar's statements may be attributed to Sparrow. There is no evidence that these comments were made on behalf of Sparrow, as Friendly Bear's posts do not state that they reflect Sparrow's views. Thus, even if Koppikar did make the statements, the statements still cannot be attributed to Sparrow without any evidence showing that Koppikar was acting within the scope of his employment when he made the statements. See Garrison v. Toshiba Bus. Sol. (USA) Inc., 907 F. Supp. 2d 301, 309 (E.D.N.Y. 2012). Thus, Defendants have not shown that Sparrow has "voluntarily injected [itself] into a public controversy" and "successfully invited public attention to [its] views" through Friendly Bear's posts. Lerman[, 745 F.2d at 136.] Accordingly, Defendants' argument that

Sparrow is a limited purpose public figure that was required to plead actual malice fails.

(R&R (Dkt. No. 84) at 17)  The Court finds no clear error in Judge Parker's analysis. Accordingly, the actual malice standard does not apply here.

## 2. Statements 1, 2, 3, and 7

Statements made in a legal proceeding are afforded absolute immunity from defamation claims, O'Brien v. Alexander, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), and statements fairly describing a legal proceeding are afforded qualified immunity from defamation claims, N.Y. Civ. Rts. Law § 74.  Judge Parker concluded that Statement 1 – made in the MiMedx Action – is protected by absolute immunity, and that Statements 2, 3, and 7 – made about the MiMedx Action – are protected by qualified immunity.  (R&R (Dkt. No. 84) at 15-16)  Accordingly, she recommends that this Court grant Defendants' motion to dismiss with respect to these statements.  (Id. at 16)

Plaintiff objects to this recommendation, arguing that the MidMedx Action is a "sham lawsuit," and therefore statements made in or about it are not entitled to immunity.  (Pltf. Obj. (Dkt. No. 93) at 2-5)  Plaintiff made this argument before Judge Parker (Pltf. Br. (Dkt. No. 58) at 16-19), but she does not address it in the R&R.  The Court will therefore review this recommendation de novo.

"Under New York law, '[i]n the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation.'"  O'Brien, 898 F. Supp. at 171 (citing Grasso v. Mathew, 164 A.D.2d 476, 479 (3d Dept. 1991)).  This privilege covers statements made in pleadings and in court.  Id. at 171.  Likewise, under New York law, statements made to governmental authorities, such as the SEC, are accorded an absolute privilege "where they are made as part of or

preliminary to 'a judicial or quasi-judicial proceeding.'" Fischkoff v. Iovance Biotherapeutics, Inc., 17 Civ. 5041 (GWG), 2018 WL 5074659, at *3-5 (S.D.N.Y. Oct. 17, 2018) (quoting Rosenberg v. Metlife, Inc., 8 N.Y.3d 359, 365); see also Able Energy, Inc. v. Marcum & Kliegman LLP, 69 A.D.3d 443, 444 (1st Dept,. 2010) (statements made to SEC that could be used in a quasi-judicial proceeding are absolutely privileged).

Under New York Civil Rights Law Section 74, statements that constitute fair and true reporting on a judicial proceeding are entitled to a qualified privilege. N.Y. Civ. Rts. Law § 74 ("A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding. . . ."). Section 74's qualified privilege applies to out-of-court reports or statements about a judicial proceeding that are a "substantially accurate" description of the judicial proceeding. See Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co., 49 N.Y.2d 63, 67 (1979); see also Lacher v. Engel, 33 A.D.3d 10, 17 (1st Dept. 2006); Karedes v. Ackerley Grp., 423 F.3d 107, 119 (2d Cir. 2005). An out-of-court statement about a pleading is entitled to qualified immunity so long as the substance of the statement is substantially the same and does not "suggest more serious conduct than that actually suggested in the official proceeding." Lan Sang v. Ming Hai, 951 F. Supp.2d 504, 521 (S.D.N.Y. 2013); see also Southridge Capital Mgmt., LLC v. Lowry, 01 Civ. 4880 (RO), 2003 WL 68041, at *2 (S.D.N.Y. Jan. 7, 2003).

Neither absolute nor qualified immunity applies where a litigant "maliciously institute[s] a judicial proceeding alleging false and defamatory charges, and[]then circulate[s] a press release or other communication based thereon." Williams v. Williams, 23 N.Y.2d 592, 599 (1969); Bridge C.A.T. Scan Assocs. v. Ohio-Nuclear Inc., 608 F. Supp. 1187, 1194 (S.D.N.Y. 1985) (Williams applies to both absolute and qualified immunity). A "[d]efendants' intention to

use [an] action as . . . a device [to disseminate defamatory statements] is a factual issue" that

must be resolved by a jury. Halcyon Jets, Inc. v. Jet One Grp., Inc., 69 A.D.3d 534, 534-35 (1st

Dept. 2010). "New York courts have consistently held that the Williams exception is a narrow

one and does not apply 'in the absence of any allegation that the . . . action was brought

maliciously and solely for the purpose of later defaming the plaintiff.'" Riel v. Morgan Stanley,

06 Civ. 524 (TPG), 2007 WL 541955, at *12 (S.D.N.Y. Feb. 16, 2007) (quoting Branca v.

Mayesh, 191 A.D. 2d 872, 873 (2d Dept. 1984); citing Cuthbert v. Nat'l Org. for Women, 207

A.D. 2d 624, 624 (3d Dept. 1994)).

      Here, the Complaint alleges that

> MiMedx initiated a campaign against Sparrow and others, falsely claiming they
> were engaged in illegal and criminal short selling activities. MiMedx has no
> evidence that Sparrow has done anything illegal or criminal, yet MiMedx has
> made false claims and acted with reckless disregard for the truth in making
> numerous defamatory statements about Sparrow. Further, MiMedx has acted with
> actual malice in its public representations regarding Sparrow.

(Cmplt. (Dkt. No. 6) ¶¶ 43-44)

      The Court agrees with Judge Parker that these conclusory allegations are not

sufficient to take MiMedx's statements out of the ambit of immunity that the law affords to

statements made in or about a legal proceeding. Defendants' motion to dismiss will be granted

as to Statements 1, 2, 3, and 7.

### 3.     Statements 5, 6, 8, 10, and 11

      "To state a claim for defamation, the allegedly defamatory statement must be 'of

and concerning the plaintiff.'" Thai, 726 F. Supp. 2d at 329. Judge Parker concludes that

statements 5, 6, 8, 10, and 11 – which refer to unidentified "short sellers" – do not meet the "of

and concerning" requirement. (R&R (Dkt. No. 84) at 13) Accordingly, she recommends that

this Court grant Defendants' motion to dismiss with respect to these statements. (Id.)

Plaintiff objects to this recommendation, arguing that the "of and concerning" analysis is a question of fact for a jury to decide. (Pltf. Obj. (Dkt. No. 93) at 5-6) Given that the statements referring to "short sellers" were made during the pendency of the MiMedx Action, Plaintiff argues "it is impossible to say that no reasonable person could conclude that all those statements were about Sparrow." (Id. at 6) This is the same argument Plaintiff raised before Judge Parker. Compare (Pltf. Obj. (Dkt. No. 93) at 5-6) with (Pltf. Br. (Dkt. No. 58) at 20-22). Accordingly, this portion of the R&R is reviewed for clear error.

"The 'of and concerning' element in defamation actions requires that the allegedly defamatory comment refer to the plaintiff." Brady v. Ottaway Newspapers, Inc., 84 A.D.2d 226, 228 (2d Dept. 1981) (citing Julian v. Am. Bus. Consultants, Inc., 2 N.Y.2d 1 (1956)). A court must dismiss a defamation claim where alleged defamatory statements "are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff." Diaz v. NBC Universal, Inc., 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (quoting Church of Scientology Int'l v. Time Warner, Inc., 806 F. Supp. 1157, 1160 (S.D.N.Y. 1992), aff'd sub nom. Church of Scientology Int'l v. Behar, 238 F.3d 168 (2d Cir. 2001)). "The Court must determine whether, upon reading the statements, it would be clear that the plaintiff was the target of the allegedly libelous statement to those who know him or her." Chau v. Lewis, 935 F.Supp. 2d 644, 664 (S.D.N.Y. 2013).

"Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group." Church of Scientology Int'l, 806 F. Supp. at 1160 (citing New York Times Co., 376 U.S. at 254; Provisional Gov't of the Republic of New Afrika v. Am. Broad. Cos., 609 F.Supp. 104, 108 (D.D.C. 1985) ("a defamatory statement directed against a group or class does not generally give rise to a cause

of action on behalf of its individual members"); Church of Scientology v. Flynn, 578 F.Supp. 266, 269 (D.Mass. 1984); Talal v. Fanning, 506 F.Supp. 186, 187 (N.D.Cal. 1980) (dismissing libel claim pursuant to group libel doctrine)). "Thus, if a plaintiff is libeled as a member of a large group, the 'of and concerning' requirement is not properly pleaded." Id. "In order to overcome the group libel doctrine, the plaintiff must demonstrate that 'the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the member.'" Id. (quoting Restatement (Second) of Torts, § 564A(b)).

In Church of Scientology Int'l v. Time Warner, Inc., 806 F. Supp. 1157, Church of Scientology International ("CSI") – "one of three 'management churches' and . . . the Mother Church of Scientology" – brought defamation claims against Time magazine for statements made in an article entitled "Scientology: the Cult of Greed." Id. at 1159. CSI claimed that statements referring to "Scientology," "the Church of Scientology," "the church," and "the Los Angeles-based church" were "of and concerning" CSI. Id. at 1161. The court concluded that "CSI's suggestion that any reference to Scientology is necessarily a reference to CSI encounters the bar of the group libel rule." Id.

The court reasoned that

> CSI is one of hundreds of Scientology entities implicated by a reference to "Scientology." Because CSI has failed to demonstrate that the references in the Article to "Scientology" particularly refer to CSI, as differentiated from the hundreds of other Scientology entities, the Article's references to "Scientology" do not support a finding that CSI has sufficiently pleaded the "of and concerning" requirement.

Id. (citing Restatement (Second) of Torts § 564A(b)).

By contrast, the court found that the article's references to "the Church of Scientology" and "the church" "could support a finding that . . . [the] allegedly defamatory

statements are reasonably connected to CSI, given the hierarchical structure of the Church of Scientology":

> Moreover, the reference to the "Los Angeles-based church" could be considered a direct reference to CSI. Although there are other Scientology churches in California, it appears that the limited number of such churches is insufficient to compel application of the group libel rule. Considering CSI's capacity as "Mother Church," the hierarchical structure of Scientology, and [a photograph caption] identifying CSI's headquarters as being located in Los Angeles, the Court finds that these statements could support a finding that CSI sufficiently has pleaded a reasonable connection to the statements sued upon.

Id.

Here, Statements 6, 10, and 11 refer to "short sellers" with no reference to the MiMedx action. Given that "short sellers" are commonplace in the stock market, Judge Parker concluded that these references are "not sufficiently particular to differentiate the unidentified 'short sellers' from Sparrow specifically." This Court finds no clear error in this conclusion. See Chau, 935 F.Supp. 2d at 664 ("The Court must determine whether, upon reading the statements, it would be clear that the plaintiff was the target of the allegedly libelous statement to those who know him or her."). Accordingly, Defendants' motion to dismiss will be granted as to Statements 6, 10, and 11.

Statements 5 and 8 also refer to "short sellers," but – unlike Statements 6, 10, and 11 – these statements refer to a subset of short sellers. Statement 5 is a press release accusing short sellers of impersonating Petit in e-mails. (Cmplt. (Dkt. No. 6) ¶ 19 ) It refers to "the recent short seller attacks on" MiMedx, and states that "[t]his particular group of short sellers continues to resort to ridiculous and unscrupulous means to attempt to do damage to MiMedx." (Id. (emphasis omitted)) Statement 8 is drawn from remarks Petit made at a public conference, where he said "that 'short sellers' are engaged in 'illegal' behavior" and "identified the short

sellers to whom he was referring as those who MiMedx was going 'down the civil path with.'"
(Id. ¶ 23)

Judge Parker correctly determined that these statements are not actionable. It
would not "be clear that [Sparrow] was the target of the allegedly libelous statement to those
who know [of Sparrow]." Chau, 935 F. Supp. 2d at 664. The references to a group of short
sellers is not sufficient to meet the "of and concerning" standard, and Petit's vague reference to a
short seller whom MiMedx was going "down the civil path with" does not alter the analysis.

Defendants' motion to dismiss will be granted as to Statements 5 and 8.

### 4.    Statements 4, 9, and 12

Judge Parker concluded that Statements 4, 9, and 12 – which all refer to Aurelius
Value, the anonymous blogger – are sufficiently pled as "of and concerning" Plaintiff, because
Defendants themselves have publicly claimed that Aurelius Value is actually Sparrow. (R&R
(Dkt. No. 84) at 14) Accordingly, she recommends that this Court deny Defendants' motion
with respect to these statements. (Id.)

Defendants object to this recommendation, arguing that Defendants only
identified Aurelius Value as Sparrow in a privileged document – the MiMedx Action. (Def. Obj.
(Dkt. No. 92) at 12) Because a listener or reader would have to rely on a privileged statement in
order to make the connection between Aurelius Value and Sparrow, Defendants contend that
these statements are not "of and concerning" Sparrow. (Id. at 12-13)

"Courts have allowed claims where the statement did not identify the plaintiff, but
named an individual who was understood to represent that plaintiff." Daytree at Cortland
Square, Inc. v. Walsh, 332 F. Supp. 3d 610, 632 (E.D.N.Y. 2018) (statement about a company –
Daytree – was "of and concerning" two individuals – the Datres – because "(1) the Datres were
the only principals of Daytree, and 'as the owners of such [a] closely-held corporation,' their

18

'personal reputations are inseparably intertwined,' (2) "'Daytree" is a homophone for "Datre,'"

and (3) '[p]ublic response . . . [demonstrated that the Datres and Daytree] received equal and

distinctly separate harm"); see also Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921, 923

(2d Cir. 1987) (finding statement identifying plaintiff by her maiden name and address qualified

as "of and concerning" plaintiff because the audience "need[ed] only believe that it was about

her"); Wexler v. Allegion (UK) Ltd., 16 Civ. 2252 (ER), 2018 WL 1626346, at *9 (S.D.N.Y.

Mar. 30, 2018) (statement identifying a company – Zero – was "of and concerning" the plaintiff

– Wexler – because "[a]ccording to Wexler, his wide-spread reputation in the industry made him

'synonymous with Zero' and people in the industry would have understood that a reference to

'old Zero management' was effectively a reference to Wexler").

Here, nothing in Statements 4, 9, and 12 associates Sparrow with Aurelius Value.

Indeed, in these statements, Aurelius Value is presented as a stand-alone entity. While

Defendants alleged in the MiMedx Action and in a letter to the SEC[4] that Sparrow was Aurelius

Value (Cmplt. (Dkt. No. 6) ¶¶ 12-13, 24), Sparrow denied any association with Aurelius Value.

(Id. ¶¶ 12, 14-15, 21). Under these circumstances, the fact that Defendants alleged in the

MiMedx Action and in a letter to the SEC that Sparrow was Aurelius Value does not

demonstrate that someone knowledgeable of Sparrow who read or listened to Statements 4, 9,

and 12 would understand that Defendants' reference to Aurelius Value was a reference to

Sparrow. See Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems 2-149

---

[4] In the MiMedx Action, Defendants claimed that "Sparrow Fund Management LP" was also
know as "Aurelius Value," and alleged that "Aurelius Value is actually one or more of Sparrow's
partners or employees, posting under a pseudonym for the benefit of themselves and/or
Sparrow." Cmplt. at 1, 13, MiMedx Grp. v. Sparrow Fund Mgmt. LP, No. 17 Civ. 7568 (PGG)
(KHP) (S.D.N.Y. Oct. 4, 2010), Dkt. No. 1. Defendants also stated in a Mimedex SEC filing
that Sparrow was Aurelius Value, and in a letter to the SEC that Aurelius Value is a "'shill'
engaged in 'recent illegal short selling.'" (Cmplt. (Dkt. No. 6) ¶¶ 13, 24)

(4th ed. 2016) ("[T]he unexpressed intention of the defendant [is] irrelevant. And it [is] similarly irrelevant if the plaintiff, as opposed to third persons, underst[ands] the defamatory statement to apply to him or her."); see also Wexler, 2018 WL 1626346, at *8 ("a defamatory publication may be 'of and concerning' a plaintiff as long as 'persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the [plaintiff].'" (quoting Algarin v. Town of Wallkill, 421 F.3d 137, 139 (2d Cir. 2005))).

Accordingly, the Court does not adopt Judge Parker's recommendation as to Statements 4, 9, and 12, and Defendants' motion to dismiss will be granted as to these statements.

*　　*　　*　　*

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's defamation claim will be granted in its entirety.

## III.　CIVIL CONSPIRACY CLAIM

Judge Parker recommends this Court dismiss Plaintiff's civil conspiracy claim, because the Complaint alleges no facts to show that Defendants entered into an agreement to defame Sparrow. (R&R (Dkt. No. 84) at 19) Sparrow has not objected to this recommendation. Accordingly, the Court reviews it for clear error.

To plead civil conspiracy under New York law,

> plaintiff must demonstrate the [existence of the] underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and, (4) resulting damage or injury.

Treppel v. Biovail Corp., No. 03 CIV. 3002 (PKL), 2005 WL 2086339, at *5 (S.D.N.Y. Aug. 30, 2005) (citing World Wrestling Fed'n. Entm't., Inc. v. Bozell, 142 F. Supp. 2d 514, 532-33 (S.D.N.Y. 2001)). "While plaintiff need not allege and prove that each defendant committed

every element of the underlying tort . . . [it] is required to demonstrate four elements in addition to the underlying tort, including that there was an agreement between the conspirators." Id.

Here, Sparrow's civil conspiracy claim fails ab initio because it has not pleaded facts sufficient to demonstrate the underlying tort of defamation. Accordingly, Defendants' motion to dismiss Sparrow's civil conspiracy claim will be granted.

## IV.    PERSONAL JURISDICTION OVER PETIT

Judge Parker recommends granting Petit's motion to dismiss for lack of personal jurisdiction. (R&R (Dkt. No. 84) at 23) Plaintiff objects to this recommendation, referring the Court to the arguments in its opposition brief. (Pltf. Obj. (Dkt. No. 93) at 6 ("Sparrow's opposition brief (Doc. No. 54) presented extensive authority and supporting facts making an adequate prima facie showing that this Court has personal jurisdiction over Petit in this case.")) Because Plaintiff merely cites to arguments made to Judge Parker, her recommendation is reviewed for clear error.

Judge Parker concluded that

Sparrow has failed to make a prima facie showing that personal jurisdiction exists over Petit. Turning first to general jurisdiction, Sparrow has not pled that Petit is domiciled in New York; rather, it admits that he resides in Georgia. [(Cmplt. (Dkt. No. 6) ¶ 3)] Likewise, Sparrow has not pled that Petit was served in New York or otherwise consented to jurisdiction here. Sparrow's allegations that Petit transacted business in or regularly traveled to New York are not sufficient to plead general personal jurisdiction. See Reich[ v. Lopez, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014)] Indeed, in its opposition to Petit's motion to dismiss, Sparrow did not contest the lack of general jurisdiction. Thus, this Court does not have general jurisdiction over Petit.

Sparrow also has failed to demonstrate that the Court has specific personal jurisdiction over Petit. Sparrow fails to plead facts supporting a sufficient connection between its underlying defamation and civil conspiracy to defame claims and any actionable New York business "transaction" by Petit. See SPCA[ of Upstate N.Y., Inc. v. Am. Working Collie Assn.], 18 N.Y.3d [400,] 403 [(2012)]. Sparrow does not identify any actions that Petit took in New York in his personal capacity that were taken for the purpose of defaming Sparrow. The actions it points to do not suffice. Specifically, the filing of a lawsuit by MiMedx

in New York is not sufficient, even if Petit was the CEO of the company at the time. See AMPA Ltd. v. Kentfield Capital LLC, No. 00-cv-0508 (NRB), 2001 WL 204198, at *2 n.5 (S.D.N.Y. Mar. 1, 2001) ("There is no support for the proposition that filing an action on behalf of a corporation in and of itself subjects the individual directors of that corporation to personal jurisdiction in New York without regard to the directors' own contacts with the forum.") Sparrow's allegations that Petit conducts regular business in New York and has a consistent presence here are insufficient because – even if true – Sparrow does not demonstrate that Petit's business and presence in New York has a direct relation to the alleged defamation. See Fischer[ v. Stiglitz], [15 Civ. 6266 (AJN),] 2016 WL 3223627, at *7 [(S.D.N.Y. June 8, 2016)]. Moreover, the fact that Statement 8 was made when Petit was in New York on company business is insufficient because Sparrow does not plead any nexus between the allegedly defamatory statement and Petit's transactions in New York. Best Van Lines, Inc.[ v. Walker], 490 F.3d [239,] 248 [(2d Cir. 2007)] ("[T]he act of uttering a defamation, no matter how loudly, is not a transaction of business that may provide the foundation for personal jurisdiction"). Further, that the allegedly defamatory statements made by Petit were posted online, made generally to the investing public, and included in press releases is not sufficient because, again, Sparrow pleads no facts showing a direct relation between any of the allegedly defamatory statements and Petit's business transactions in New York. See id. at 253.

Accordingly, this Court recommends granting Petit's motion to dismiss because Sparrow has failed to meet its burden to make a prima facie showing that the Court has personal jurisdiction over Petit in this action.

(R&R (Dkt. No. 84) at 22-23) (footnote omitted)  The Court finds no clear error in this analysis.[5]

Judge Parker also "recommends denying Sparrow's request for limited jurisdictional discovery to 'achieve certainty' on whether the Court has personal jurisdiction over Petit because Sparrow has not shown that discovery is likely to produce the facts needed to establish jurisdiction over Petit." (R&R (Dkt. No. 84) at 23 n.4 (citing Haber v. U.S., 823 F.3d 746, 753 (2d Cir. 2016))  Again, the Court finds no clear error in this recommendation.

Defendant Petit's motion to dismiss for lack of personal jurisdiction will be granted.

---

[5]  In a February 22, 2019 letter, Plaintiff requests that – in the event Petit's motion to dismiss is granted – the Court transfer the claims against Petit to a U.S. District Court in Florida or Georgia. (Pltf. Ltr. (Dkt. No. 103) at 2)  That request is denied.

## V.    **LEAVE TO AMEND**

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." <u>Van Buskirk v. N.Y. Times Co.</u>, 325 F.3d 87, 91 (2d Cir. 2003) (citing <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991)). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>Jin v. Metro. Life Ins. Co.</u>, 310 F.3d 84, 101 (2d Cir. 2002) (citations omitted).

Sparrow has requested leave to amend in the event this Court dismisses the Complaint.  (Pltf. Opp. (Dkt. No. 58) at 28)  Here, Defendants have not pointed to any compelling reason why leave to amend should be denied.  Moreover, it is not clear that any amendment would be futile.  Accordingly, leave is granted to move to amend.

**CONCLUSION**

The Court adopts Judge Parker's R&R as set forth above. Defendants' motion to dismiss for failure to state a claim is granted. Defendant Petit's motion to dismiss for lack of personal jurisdiction is granted. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 44, 46). Any motion for leave to amend will be filed by April 15, 2019. The proposed Amended Complaint will be attached to the motion as an exhibit.

Dated: New York, New York
      March 31, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge