```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED: 5/13/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

SPARROW FUND MANAGEMENT LP,

                                        Plaintiff,

                    -against-

MIMEDX GROUP, INC.,

                                        Defendant.

---------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

**OPINION & ORDER ON MOTION
TO COMPEL PRODUCTION OF
DOCUMENTS WITHELD ON
PRIVILEGE GROUNDS**

**18-cv-4921 (PGG) (KHP)**

        Plaintiff Sparrow Fund Management, LP ("Sparrow") brings this action against Defendant

MiMedx Group, Inc. ("MiMedx") for defamation and malicious prosecution.  Sparrow's claims

arise out of an earlier suit filed against it by MiMedx in which MiMedx claimed that Sparrow or

its principles were making defamatory statements about MiMedx via anonymous blog posts

authored under the pseudonym Aurelius Value.  *See MiMedx Group, Inc. v. Sparrow Fund

Mgmt., LP*, 1:17-cv-07568 (PGG) (KHP) (S.D.N.Y. 2017).  The Aurelius blog posts claimed that

MiMedx was engaging in fraud and that its sales figures were inaccurate.  MiMedx claimed that

the posts were false and defamatory and the work of short sellers trying to illegally manipulate

the market.  As it turns out, MiMedx's former Chief Operating Officer and Chief Executive

Officer were found guilty after trial of using "secret agreements and corrupt financial

inducements to materially misstate quarterly and annual sales revenue of MiMedx."[1]

---

[1] *See* DEPARTMENT OF JUSTICE, https://www.justice.gov/usao-sdny/pr/former-coo-publicly-traded-biopharmaceutical-company-sentenced-accounting-fraud (last visited May 12, 2021).

Sparrow maintained from the outset of the earlier case that it was not Aurelius and that MiMedx did not have a good faith basis for suing Sparrow in the first place.  It asserts that when it provided information to MiMedx to demonstrate that it was not Aurelius, MiMedx nonetheless continued the litigation in bad faith.  According to Sparrow, MiMedx's conduct forced Sparrow out of business.

A key focus of discovery in this case has been the factual basis for MiMedx filing suit against Sparrow back on October 4, 2017.  That is, why did MiMedx think that Sparrow was Aurelius and why did it not drop its suit against Sparrow after Sparrow provided affidavits and other information to demonstrate that it was not Aurelius?  MiMedx's counsel in the earlier case advised that it had conducted investigations with the assistance of the Mintz Group and a forensic linguistic expert and had relied on the results of those investigations in concluding that it had a credible basis for believing Sparrow was Aurelius.  MiMedx also became privy to an investigation conducted by Kasowitz Benson Torres LLP (the "Kasowitz Firm") that concluded principals of Sparrow were likely behind the Aurelius postings.

MiMedx initially asserted that its pre-suit investigation was privileged.  Since then, it has produced documents pertaining to the investigation but has withheld other communications about the pre-suit investigation on the grounds of privilege.  Sparrow challenges MiMedx's assertions of privilege and now moves to compel production of the purportedly privileged documents on the grounds that MiMedx has waived privilege pursuant to the "at issue" or "selective disclosure" doctrines and that the withheld documents are subject to production pursuant to the crime-fraud exception to privilege.  (ECF No. 183.)  The Court's ruling on the motion to compel is set forth below.

## APPLICABLE LAW

### 1.  The Attorney-Client Privilege and Work Product Doctrine

In diversity cases such as this, where state law governs the claims, the Court looks to state law for determining privilege.  *E.g.*, *AIU Ins. Co. v. TIG Ins. Co.*, No. 07-cv-7052 (SHS) (HBP), 2008 WL 4067437, at *5 (S.D.N.Y. Aug. 28, 2008) (citations omitted) (applying New York law), *modified on reconsideration,* No. 07-cv-7052 (SHS) (HBP), 2009 WL 1953039 (S.D.N.Y. July 8, 2009); *see also* Fed. R. Evid. 501.  The parties agree that New York law governs.  "The elements of the attorney-client privilege under New York law are the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication."  *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995) (citing *People v. Osorio,* 75 N.Y.2d 80, 82–84 (1989)).  Although the privilege was designed to promote full and frank communications between a client and counsel, and thereby "promote broader public interests in the observance of law and administration of justice," it is narrowly construed because the application of the privilege renders protected relevant information undiscoverable.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Hoopes v. Carota*, 142 A.D.2d 906, 908-09, 531 N.Y.S.2d 407, 409 (3d Dep't 1988) (explaining that the attorney-client privilege "constitutes an obstacle to the truth-finding process" and, thus, its "invocation should be cautiously observed to ensure that its application is consistent with its purpose") (internal quotation marks, alterations, and citations omitted), *aff'd,* 74 N.Y.2d 716, 543 N.E.2d 73 (1989).

"Unlike the attorney-client privilege, the work product protection in diversity cases is governed by federal law." *Bowne of New York City, Inc.*, 161 F.R.D. at 264 (citing *Fine v. Facet Aerospace Prods. Co.,* 133 F.R.D. 439, 444–45 (S.D.N.Y. 1990)).  The work product doctrine protects documents and tangible things prepared by a party or their attorney in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3); *see also Pearlstein v. Blackberry Ltd.*, No. 13-cv-7060 (CM) (KHP), 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019).  The crucial factor courts should consider when determining whether the work product doctrine applies to particular documents or materials is whether they were prepared with "'with an eye toward' or 'in anticipation of' or 'because of the prospect of litigation.'" *Pearlstein*, 2019 WL 1259382, at *5 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)); *see also Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010) ("[t]he mere possibility of litigation is insufficient to obtain work-product protection." (internal quotation marks and citation omitted)).

The party asserting the privilege or work product protection bears the burden of showing that either doctrine applies.  *See, e.g.*, *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)); *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224–25 (2d Cir. 1984); *Priest v. Hennessy*, 51 N.Y.2d 62, 69, 409 N.E.2d 983, 986 (1980); *Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410.

### 2.  Waivers of Privilege

In addition to bearing the burden of establishing privilege or work product protection, the party asserting such protections bears the burden of showing that privilege was not waived.

*Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377, 581 N.E.2d 1055, 1059; *Hoopes*, 142 A.D.2d at 909, 531 N.Y.S.2d at 409; *see also, e.g.*, *Pearlstein*, 2019 WL 1259382, at *6.

Both attorney-client privilege and work product protection can be waived by the "at issue" waiver doctrine or by "selective waiver." That is, when the privileged communications are placed "at issue" in the litigation and a party asserts reliance on counsel as a defense to justify its actions, a party waives privilege and/or work product protection. *See Windsor Secs., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 519-20 (S.D.N.Y. 2017) (denying request for disclosure of communications protected by attorney-client privilege where those communications would not be used as evidence). Courts will find that privileged/protected communications were put at issue where "[i]t would be unfair for a party who has asserted facts that place privileged communications at issue to deprive the opposing party of the means to test those factual assertions through discovery of those communications." *Id*. at 518; *see also In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("a party must *rely* on privileged advice from his counsel to make his claim or defense") (emphasis in original); *Pearlstein*, 2019 WL 1259382, at *7 (collecting cases);[2] *Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 43 A.D.3d 56, 64, 837 N.Y.S.2d 15, 23 (1st Dep't 2007) (if the mere relevance of privileged communications to the parties' dispute could trigger at-issue waiver, the "[attorney-client] privilege would have little effect") (citing *Long Is. Lighting Co. v. Allianz Underwriters Ins. Co.,* 301 A.D.2d 23, 33, 749 N.Y.S.2d 488 (1st Dep't 2002)). "Merely pleading a claim or defense does not operate as a waiver of all protected information relevant to the claim or defense—unless the party asserting

---

[2] "The law in New York concerning the at-issue waiver theory parallels federal law." *Windsor Sec., LLC*, 273 F. Supp. 3d at 518 n.2 (cleaned up).

the privilege *relies*, to some extent, on the protected information to advance that claim or

defense." *Abromavage v. Deutsche Bank Secs. Ins.*, No. 18-cv-6621 (VEC), 2019 WL 6790513, at

*2 (S.D.N.Y. Dec. 11, 2019).

Attorney-client privilege can be waived when a party selectively produces privileged

information that is beneficial to its case while withholding related privileged information that is

damaging. *Tri-Links*, 43 A.D.3d at 64, 837 N.Y.S.2d at 23 (citing *Orco Bank v. Proteinas Del

Pacifico,* 179 A.D.2d 390, 577 N.Y.S.2d 841 (1st Dep't 1992)); *Village Bd. of Village of

Pleasantville v. Rattner*, 130 A.D.2d 654, 655, 515 N.Y.S. 2d 585 (2d Dep't 1987).  The logic

behind this rule is that parties should not be allowed to engage in gamesmanship that uses the

attorney-client privilege as both a shield and a sword. *Pearlstein*, 2019 WL 1259382, at *7.

### 3. Crime-Fraud Exception to Privilege and Work Product

Finally, no protections are afforded to any privileged communications or work product

made in furtherance of a crime or fraud. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995);[3]

*In re New York City Asbestos Litig.*, 109 A.D.3d 7, 10, 966 N.Y.S.2d 420, 422 (1st Dep't 2013).  It

is well established that "'[a] client who consults an attorney for advice that will serve him in the

commission of a fraud will have no help from the law.'" *Amusement Indus.*, 293 F.R.D. at 425

(quoting *Clark v. United States,* 289 U.S. 1, 15 (1933)).  However, for the crime-fraud exception

to apply, the particular communications sought must have been made in furtherance of a

---

[3] Because the same legal standards apply under the New York and federal crime-fraud doctrines, courts deciding whether the crime-fraud doctrine applies under New York law may rely on both New York and federal law. *E.g.*, *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 425 (S.D.N.Y. 2013).

crime, fraud, or "an intentional tort that undermines the adversary system itself."[4]  *Madanes v. Madanes*, 199 F.R.D. 135, 149 (S.D.N.Y. 2001).

The party seeking disclosure of protected information pursuant to the crime-fraud exception bears the burden of demonstrating that probable cause exists to believe that a crime or fraud has been attempted or committed and that the privileged communications furthered such crime or fraud.  *E.g.*, *Pearlstein*, 2019 WL 1259382, at *9; *In re New York City Asbestos Litig.*, 109 A.D.3d at 10, 966 N.Y.S.2d at 422.  Here, probable cause "requires that a 'prudent person' have a 'reasonable basis' for believing that the objective of the client's communication with the attorney was to further a fraudulent scheme." *Amusement Indus.*, 293 F.R.D. at 426–27 (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1039 (2d Cir. 1984) then citing *In re Fresh Del Monte Pineapple,* No. 04-MD-1628 (RMB) (MHD), 2007 WL 64189, at *3 (S.D.N.Y. Jan. 4, 2007)), *aff'd,* 407 Fed. App'x 520 (2d Cir. 2010)); *see also Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 242 F.R.D. 248, 250 (S.D.N.Y. 2007) (crime-fraud exception applied to email defendant's mother sent an attorney asking him to alter and backdate board minutes to show that a certain individual was an authorized signatory for contracts).  Courts examining documents *in camera* have the discretion to determine whether the crime-fraud exception applies.  *See, e.g.*, *Pearlstein*, 2019 WL 1259382, at *9 (crime-fraud privilege did not apply where the documents submitted *in camera* failed to demonstrate a "substantial possibility that a fraud was committed or that Defendants used the communications with counsel to commit a crime or fraud").

---

[4] Under New York law, malicious prosecution is an intentional tort.  *Bittner v. Cummings*, 188 A.D.2d 504, 506 (2d Dep't 1992).

**DISCUSSION**

Sparrow challenges the following categories of documents contained on MiMedx's

privilege log:

- Documents related to the pre-filing investigation of the prior litigation that supported filing suit;
- Documents related to the post-filing investigation that supported the continuation of the prior litigation;
- Documents and communications related to affidavits that Sparrow provided in October 2017 to demonstrate that it was not Aurelius;
- Documents and communications related to an April 2018 letter that Sparrow sent to MiMedx asking it to drop the prior suit;
- Correspondence pertaining to MiMedx's retention of Seward & Kissell LLP and potential conflicts due to the fact that the firm also was representing Sparrow;
- Documents related to a 2016 internal investigation of MiMedx employees by MiMedx management focused on potential employee wrongdoing/whistleblowing dubbed "Project Snow White"; and
- The report issued by MiMedx's Audit Committee after an investigation of its former CEO's fraud that led to his termination.

Sparrow has selected certain documents from MiMedx's privilege log that fall within the above

categories as samples for the Court's *in camera* review.  The Court also has a copy of MiMedx's

privilege log.

1. **Waiver**

Sparrow asserts that MiMedx put advice of counsel at issue by relying on counsel's

investigation of Sparrow as a defense in this action.  Sparrow also asserts that MiMedx has

selectively disclosed some documents pertaining to its pre and post-suit investigations about

whether Sparrow was Aurelius and that MiMedx, in fairness, must disclose all documents

pertaining to those investigations.

MiMedx claims that it produced documents generated by the investigators as well as

communications about the process of the investigation and investigation results, whether

generated by counsel or not.  On the other hand, MiMedx admits to withholding attorney-client communications discussing the investigation in the context of forming a litigation strategy and providing legal advice.  In other words, MiMedx argues it is not relying on the advice of counsel as part of its defense, but rather on the results of its investigations.  Further, Mimedx maintains that it has not selectively disclosed documents from the investigation that are helpful and hidden documents that are unhelpful.  In fact, it has produced some reports suggesting that there was no basis to believe that Sparrow was Aurelius and others suggesting the opposite.

To start, MiMedx has clearly waived privilege as it relates to all facts its investigators and attorneys collected as part of the pre and post-suit investigations, attorney-client communications relaying those facts, and attorney-client communications drawing factual conclusions based on the facts collected.  Indeed, MiMedx acknowledges this waiver and has produced the entirety of its pre-filing investigation to Sparrow.  MiMedx argues, however, that the selective waiver doctrine does not act as a waiver of privilege for attorney-client communications created for the purposes of rendering and receiving legal advice as to whether and how MiMedx could take and continue legal action against Sparrow based on the investigation results.

In *Pray v. N.Y.C. Ballet Co.*, No. 96-cv-5723 (RLC), 1998 WL 558796 (S.D.N.Y. Feb. 11, 1998), the Court made the same distinction MiMedx advances here in determining what had to be produced and what did not have to be produced.  The plaintiff in *Pray* asserted a claim of sexual harassment.  In its defense, her employer stated that it had conducted an internal investigation into the plaintiff's claims and based its remedial action on the results of the investigation.  The investigation was conducted by lawyers.  Lawyers from the same firm

provided legal advice, based on the results of the investigation, about appropriate remedial action under the law as well as litigation advice in defending the action.  Because the issue was not the sufficiency of the advice given or followed, but rather whether the investigation itself and the employer's actions based on the results of the investigation were appropriate, the Court did not compel production of attorney-client communications providing legal advice about how to act based on the results of the investigation and how to defend the lawsuit.  *See also Stoner v. N.Y.C. Ballet Co*., No. 99-cv-0196 (BSJ) (MHD), 2003 WL 749893, at *2 (S.D.N.Y. Mar. 3, 2003).  MiMedx relies on *Pray* to claim it has not waived privilege or put reliance on advice of counsel at issue.

However, in some cases, even when a party asserts that it has not relied on advice of counsel, such advice may have been impliedly placed in issue where the party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a defense.  *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09-cv-8083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010).  For example, in *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012), the court held it would be unfair for a party asserting good faith to rely on privilege to deprive its adversary of access to material that might disprove or undermine that assertion.  Fairness is the guidepost for courts when assessing, based on the facts of the case, whether a party has impliedly put advice of counsel at issue and waived privilege.  *Leviton Mfg. Co.*, 2010 WL 4983183, at *3.  While Sparrow seemingly agrees that MiMedx has not explicitly relied on the legal advice of counsel thus far in the litigation, Sparrow contends that MiMedx's assertion of a "good faith" defense to the malicious prosecution claim impliedly places privileged communications about litigation strategy at issue.

Despite these seemingly countervailing authorities, the Second Circuit has not squarely addressed the degree of reliance necessary to trigger an at-issue waiver of otherwise privileged material.  *See In re County of Erie*, 546 F.3d at 229 ("[w]e decline to specify or speculate as to what degree of reliance is required").  Accordingly, the Court must determine, based on the facts of *this* case, whether MiMedx's reliance on the investigation reports and/or its assertion of good faith ought to render related attorney-client communications concerning litigation strategy discoverable.

Other judges in this District have wrestled with the same question (although not in the context of a malicious prosecution claim) and have concluded that, based on the prevailing case law, a party's assertion only triggers an at-issue waiver when it pertains to a claim or defense to which the party making the assertion has the burden of proof.  *See, e.g.*, *Discover Fin. Servs. v. Visa U.S.A., Inc.*, No. 04-cv-7844 (BSJ) (DFE), 2006 WL 2807187, at *3 (S.D.N.Y. Sept. 27, 2006). For instance, when a plaintiff files a claim and an element of that claim requires an assessment of privileged materials, the plaintiff's privilege protection will be waived.  *Century 21, Inc. v. Diamond State Ins. Co.*, No. 03-cv-5163 (GEL), 2006 WL 2355323, at *2-3 (S.D.N.Y. Aug. 10, 2006).  Similarly, where parties assert affirmative defenses they bear the burden of proving, courts have found that the attorney-client privilege should be waived when the only means by which an opposing party can fully assess the factual assertions surrounding the affirmative defense is to review privileged materials.  *Pereira v. United Jersey Bank*, No. 94-cv-1565 (LAP), 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997) (setoff defense to preferential transfer claim); *Weizmann Inst. of Sci. v. Neschis*, No. 00-cv-7850 (RMB) (THK), 2004 WL 540480, at *6 (S.D.N.Y. Mar. 17, 2004) (compulsion defense to collateral estoppel claim).  This Court agrees with this

approach.  Therefore, this Court will assess whether the good faith defense asserted by

MiMedx amounts to a mere denial of Sparrow's malicious prosecution claim or an affirmative

defense for which MiMedx bears the burden of proof.

The elements of a malicious prosecution claim are: (1) the defendant commenced or

continued a prior action against the plaintiff; (2) the prior proceeding terminated in the

plaintiff's favor; (3) defendant commenced the prior action against the plaintiff despite an

absence of probable cause; and (4) the defendant acted with actual malice.  *See Facebook, Inc.*

*v. DLA Piper LLP (US)*, 134 A.D.3d 610, 613, 23 N.Y.S.3d 173 (1st Dep't 2015) (quoting *Broughton*

*v. State*, 37 N.Y.2d 451, 457, 335 N.E.2d 310 (1975)).  In civil actions, the lack of probable cause

must be "patent."  *Facebook*, 134 A.D.3d at 614 (citation omitted); *see also Liberty Synergistics,*

*Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 290 (E.D.N.Y. 2014) ("'[b]ecause obviously less in the

way of grounds of belief will be required to justify a reasonable man in bringing a civil rather

than a criminal suit, when the underlying action is civil in nature, the want of probable cause

must be patent.'") (quoting *Butler v. Ratner,* 210 A.D.2d 691, 619 N.Y.S.2d 871, 873 (3d Dep't

1994)).  Where more than one reasonable inference may be drawn from the facts, the question

of probable cause is a jury question.  *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 529, 583 N.E.2d

939, 942 (1991).  Further, malice is shown by demonstrating that the underlying litigation was

commenced for "improper or wrongful motives, or in reckless disregard of the rights of the

plaintiff."  *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (internal quotation marks and

citation omitted).  Because lack of probable cause and malice are overlapping issues, "[a] lack of

probable cause generally creates an inference of malice" and, where there is an issue of fact

regarding probable cause, there will also be an issue of fact with respect to malice. *Liberty Synergistics, Inc.*, 50 F. Supp. 3d at 292 (citation omitted).

Given the dearth of case law assessing the "good faith" defense in isolation in the context of common law malicious prosecution claims, the Court looks to malicious prosecution cases arising under Section 1983 of Title 42 of the United States Code for guidance. *Cf. Ahearn v. Brachowicz*, No. 13-cv-8007 (SAS), 2014 WL 3408389, at *4 (S.D.N.Y. July 10, 2014) (explaining that the same elements comprise malicious prosecution claims under section 1983 and state law). Those cases strongly indicate that, because a plaintiff alleging malicious prosecution under New York law must prove a lack of probable cause, "the good faith and belief of a malicious prosecution defendant is of paramount importance." *Neulist v. County of Nassau*, 437 N.Y.S.2d 239, 245 (Sup. Ct. N.Y. 1981).

In *Neulist*, the plaintiff filed two parallel malicious prosecution actions against the County of Nassau and other prosecutor defendants: one under the common law in New York state Court and another under Section 1983 in the Eastern District of New York. First, in the federal case, the Hon. Jacob Mishler dismissed the plaintiff's complaint because the plaintiff failed to plead facts sufficient to demonstrate a lack of good faith on the part of the police. Based on Judge Mishler's finding that the plaintiff could not show a lack of good faith on the part of the police officers, the state court subsequently found that the "plaintiff has not shown that there was an absence of probable cause for the [prior] criminal proceeding or that the defendants were actuated by malice." *Neulist*, 437 N.Y.S.2d at 245. Thus, the New York court held that, to make out his common law malicious prosecution claim, plaintiff was required to prove a lack of good faith on the part of the defendants. The Court explained that Judge

Mishler's finding with respect to good faith was a "necessary . . . determination" in adjudicating the malicious prosecution claim.  *Id.*

Based on this rationale, I find that Sparrow impliedly raised the issue of whether MiMedx acted in good faith by asserting a claim of malicious prosecution.  While MiMedx asserts, among other defenses, that it did not act with malice or bad faith, that defense is necessitated by the malicious prosecution claim itself.  It is difficult to imagine any party contesting an allegation of malice – one of the core elements of a malicious prosecution claim under New York law – without contending that it acted in good faith.  Therefore, and in light of the case law discussed above, I find that MiMedx's assertion of good faith did not impliedly put otherwise privileged communications concerning litigation strategy based on the results of the pre and post-filing investigations at issue.

To the extent the pre-filing investigation documents or the affidavits provided by Sparrow in the prior action show a patent lack of probable cause, then what counsel advised or didn't advise is of no moment.  In such a scenario, Sparrow would be able to prosecute its case and MiMedx would be precluded from defending itself based on the withheld privileged communications.  The investigation reports, the facts MiMedx's investigators and attorneys collected as part of the investigations, and the communications relaying those facts and related factual conclusions will speak for themselves.  Based on the particular circumstances of this case, fairness dictates that MiMedx disclose all such documents but that it need not disclose privileged communications discussing litigation strategy based on the results of the investigations.

14

That MiMedx may have previously taken the position that the investigation was protected from disclosure based on the attorney-client privilege or work product privilege in the prior defamation suit against Sparrow does not change the analysis.  That case was resolved on a motion to dismiss and the issue of waiver was never briefed or decided in that case.  In this case, as already stated, MiMedx has waived privilege as to the substance of the investigation and has already produced documents from it.  Accordingly, MiMedx has not put good faith at issue or selectively disclosed documents such that the attorney-client privilege should be vitiated.

### 2. Crime-Fraud Exception

This case involves claims of defamation and malicious prosecution against Sparrow. MiMedx is not accused of committing any crime or fraud against Sparrow.  Sparrow posits that MiMedx's management, at the time of the earlier litigation, was engaging in a cover-up of fraud for which its former CEO and COO were convicted, and that its attempts to stop Aurelius's blogging about suspected fraud was part of that cover-up.  For this reason, Sparrow contends that the crime-fraud exception applies.  The major flaw in Sparrow's argument is that it has no factual support for the contention that the privileged communications at issue furthered a crime, fraud, or intentional tort that undermines the adversarial system.  In other words, while it is true that certain officers at MiMedx were convicted of fraud on the market, that, in itself, does not establish probable cause that MiMedx's defamation suit against Sparrow was malicious or that attorney-client communications related to that suit were made in furtherance of an intentional tort that undermines the adversarial system.  *In re General Motors LLC Ignition Switch Litigation*, Nos. 14-MD-2543 (JMF) & 14-MC-2543 (JMF), 2015 WL 7574460 (S.D.N.Y.

Nov. 25, 2015).  Further, none of the documents the Court has reviewed *in camera* support

application of this exception to these documents.  Absent a more fulsome basis for asserting

that communications on the privilege log from prior counsel were used to effectuate a crime or

fraud, probable cause has not been established for application of this exception.[5]

### 3.  The Sample Documents

Finally, having reviewed the sample documents identified by Sparrow for *in camera*

review, the Court finds that some of the communications at issue contain privileged material

and that others do not.  The Court will assess each document in turn, which should provide

additional guidance to the parties on what should be produced in discovery henceforth.

*MMIG-02514901:*

The majority of this document has already been produced to Sparrow.  There is one

paragraph, however, that MiMedx redacted before producing the email communication.

Having reviewed the redacted paragraph *in camera*, the Court finds that the redacted material

is privileged and, in any event, does not otherwise undermine MiMedx's good faith in

continuing its initial litigation against Sparrow.  Therefore, MiMedx need not disclose the

redacted portion of this email chain.

*MMIG-02517039:*

According to the parties, this document has already been disclosed to Sparrow in

unredacted form.

*MMIG-02527726:*

---

[5] While the case law suggests that the crime-fraud exception may extend to certain intentional torts that undermine the adversarial system, *Madanes*, 199 F.R.D. at 149, Plaintiff still has not provided a factual basis for a showing of probable cause that the attorney communications at issue were made in furtherance of such a tort.

This document relates to a conflict issue flagged by the Hon. Deborah A. Batts in connection with the initial litigation and is irrelevant to the instant action. The email chain is also privileged. Accordingly, MiMedx need not produce this communication.

_MMIG-02528961:_

This document includes privileged correspondence between MiMedx personnel and MiMedx's attorneys concerning: (1) the attorneys' analysis of an affidavit from Sparrow's Director of Research claiming that Sparrow is not Aurelius; and (2) MiMedx's investigatory strategy to uncover the identities of the anonymous bloggers by backchanneling with the FBI. Most of the communication is undoubtedly privileged, as it is a confidential communication between attorney and client for the purpose of rendering legal advice with respect to litigation strategy. Other parts of the email chain are irrelevant to the instant action. However, because a limited portion of the email specifically outlines an approach to uncover the identities of the anonymous bloggers, that portion can reasonably be interpreted as an element of MiMedx's post-filing investigation, which, as discussed above, is at issue in this litigation. Thus, while the vast majority of the email can be redacted for privilege, the last two sentences in the last email in the chain (_i.e._, the 10/21/2017 2:23:57 PM email from Joseph Wargo) should be produced in unredacted form to Sparrow.

_MMIG-02532847:_

According to the parties, this document has already been disclosed to Sparrow in unredacted form.

_MMIG-02683731:_

According to the parties, this document has already been disclosed to Sparrow in unredacted form.

*MMIG-02691037:*

This document does not convey legal advice and, as such, is not privileged.  Moreover, to the extent this email chain could be characterized as attorney work product, the email contains factual conclusions relayed to MiMedx by its attorneys based on the results of pre-filing investigations into the identity of Aurelius.  As noted above, MiMedx waived privilege and work product protection as it relates to the factual conclusions drawn by counsel based on the results of MiMedx's pre and post-suit investigations.  Accordingly, MiMedx must produce this document to Sparrow in unredacted form.

*MMIG-03193923:*

This document does not convey legal advice and, as such, is not privileged.  The email merely reports that an unidentified attorney reported having knowledge of Aurelius' identity before MiMedx filed suit against Sparrow.  Thus, the email relates to Wargo French's investigation of Aurelius's identity and any applicable work product protection was waived by MiMedx's reliance on those investigations.  Therefore, the communication is relevant to the instant action and must be produced in unredacted form.

*MMIG-05757822:*

This email chain contains privileged communications related to a FINRA response letter drafted by MiMedx's in-house attorneys.  The email contains legal advice and is not particularly relevant to the instant action.  Moreover, it appears that MiMedx already produced the draft

FINRA letter itself (*see* ECF No. 183-5,) which is the much more critical communication.

Accordingly, MiMedx need not produce this communication.

<u>MMIG-06078859:</u>

This email chain discusses edits to a draft letter to be sent to Sparrow's counsel concerning Sparrow's allegation that MiMedx and Sheppard Mullin were involved in a social media campaign against Sparrow.  The email clearly involves legal advice and is privileged. Since the contents do not relate to any pre or post-filing investigation into the identity of Aurelius, MiMedx need not produce this communication.

<u>The Audit Committee Report:</u>

In February 2018 a subset of MiMedx's Board of Directors commissioned the law firm King & Spalding to conduct an independent investigation regarding allegations of fraud committed by MiMedx's leadership.  The report that resulted from the investigation was not provided to this Court for *in camera* review, but MiMedx alleges that the report is privileged because it memorialized various confidential witness interviews and includes legal advice developed based on the investigators' findings.  Moreover, MiMedx asserts that the report has never been published and has only been shared internally within MiMedx and to outside counsel of those who reviewed the report.

Based on these representations, it appears that the Audit Committee Report was prepared at the direction of MiMedx officers in order to secure legal advice from outside counsel as to liability exposure and potential litigation based on the investigators' findings. Accordingly, to the extent that the audit report records confidential interview responses from MiMedx employees, those portions of the report may very well be privileged.  *Upjohn Co.*, 449

U.S. at 394-96.  That said, the specific facts and circumstances surrounding the audit report are not entirely clear.  MiMedx shall submit this report to the Court for *in camera* review by **May 17, 2021**.

**<u>CONCLUSION</u>**

For the reasons set forth above, Sparrow's motion to compel (ECF No. 183,) is GRANTED in part and DENIED in part.  The parties are hereby ordered to meet and confer on any outstanding issues pertaining to the production of documents based on the Court's guidance provided above.

     **SO ORDERED.**

Dated: May 13, 2021
      New York, New York

                                                  *Katharine H Parker*
                                       KATHARINE H. PARKER
                                       United States Magistrate Judge