

LARGE FIRM EXPERTISE. SMALL FIRM EFFICIENCY.

**Adam S. Heder**
Direct: 503.596.2920
adamh@hbclawyers.com
Admitted in Oregon and California

June 30, 2021

**VIA CM/ECF**

The Honorable Magistrate Judge Katharine H. Parker
500 Pearl Street, Room 750
New York, NY 10007

> Re: *Sparrow Fund Management, LP v. MiMedx Group, Inc. et al.*
> Case No. 1:18-cv-04921-PGG-KHP
> Motion to Compel Production of Documents under Subpoena to Third-Party Axos Bank (fka BOFI Federal Bank)

Dear Judge Parker:

Pursuant to Local Rule 37.2 and the Individual Practice Rule II.B, counsel certifies that he has conferred with counsel for Axos Bank fka BOFI Federal Bank ("BOFI") and the parties have been unable to resolve their differences.

In short, Sparrow is requesting the Court compel BOFI to do the following:

1. Produce all documents and communications related to Sparrow Fund Management, LP, or any of its principals; and
2. Produce all documents and communications related to identifying Aurelius Value; and
3. Allow both its own employees and those it retained, in this case Mintz Group, to testify about what work was done on its behalf to discover Aurelius, and to testify about that work to the extent that work was shared with MiMedx.

The documents requested in items 1 and 2 above are already captured by the subpoena served on BOFI, a copy of which is attached hereto as Exhibit 1.

***********************************************

Prior to falsely alleging Sparrow was the anonymous blogger known as Aurelius Value, MiMedx retained the law firm of Sheppard Mullin Richter & Hampton LLP ("Sheppard Mullin"). Sheppard Mullin had previously worked for BOFI and assisted it in its effort to unmask Aurelius.

In the days before MiMedx sued Sparrow, it reached out to and retained the Sheppard Mullin to similarly assist in its effort to unmask Aurelius. We in fact know that just several days before MiMedx filed its lawsuit, Ms. Polly Towill from Sheppard Mullin told MiMedx's attorneys that she had a "70% probability" suspicion as to the identity of Aurelius – Chris Carroll (former principal of Sparrow). (See Exhibit 2).

**Main Office**
15350 SW Sequoia Parkway
Suite 250
Portland, OR 97224

T   503.968.1475
F   503.968.2003
W   hbclawyers.com

Further, BOFI had, through its counsel Sheppard Mullin, retained the services of private investigator Mintz Group, to identify Aurelius. And when MiMedx retained Sheppard Mullin, Sheppard Mullin, in turn, again retained Mintz Group this time on behalf of MiMedx to unmask Aurelius. (See Exhibit 3). Sheppard Mullin also explicitly permitted Mintz Group to share the work Mintz had previously done for BOFI regarding Aurelius with MiMedx. In fact, Mintz Group explicitly described its investigation for MiMedx as a continuation of its work on behalf of BOFI (See Exhibit 4).

Mintz Group then prepared a report for MiMedx. That report expressly incorporates findings from Mintz's prior investigation for BOFI into Aurelius. (See Exhibit 5). For example, MiMedx has produced a report that it claims it relied on in which a Mintz Group investigator followed a Sparrow principal into a bathroom in March 2017 - *six months* before Aurelius wrote its first report about MiMedx. Additionally, the Mintz Group hired a linguist, James Fitzgerald, whose report produced for MiMedx explicitly lists "BOFI Defamation Matter" as the focus of its report. (See Exhibit 6). (Mintz Group denied Dr. Fitzgerald's report was prepared for BOFI, but the document itself gives rise to a factual dispute on that point).

In short, there is no question – nor any dispute – that BOFI, either by itself or through its counsel, was actively sharing the findings of its own factual investigation into Aurelius, with MiMedx.

Yet now, in response to Sparrow's subpoena, BOFI has refused to produce any documents relating to its investigation into Aurelius or Sparrow (or of any its principals), claiming that any such material is protected both by work product and attorney client privilege. It states that it is willing to share communications in which it was transmitting such materials but goes on to state that no such materials exist. But we know that BOFI, at least through its counsel, was actively sharing that information with MiMedx, whether it physically transmitted the information through email or not. Thus, to the extent BOFI has documents or communications related to its investigations into Sparrow and Aurelius, BOFI should be required to produce those whether or not BOFI physically transmitted the materials, because we know the information was shared with MiMedx through counsel. BOFI has also claimed that it was sharing information pursuant to a common interest agreement with MiMedx and therefore is shielded from producing documents. However, because BOFI and MiMedx are wholly unrelated companies in completely different industries with no commercial entanglements, the *only* plausible "common interest" the two firms could have had was that both were engaged in a purely *factual investigation* into the identity of Aurelius. BOFI was not a party to MiMedx's lawsuit against Sparrow – nor could it have been. *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (citation omitted) ("The key consideration [for a common interest analysis] is that the nature of the interest be identical, not similar, and be legal, not solely commercial." (internal citation omitted)).

Further, Sparrow recently took the deposition of Staci Dresher, the primary principal for the Mintz Group. Counsel for Mintz Group repeatedly instructed his client, Ms. Dresher, throughout the deposition to not answer any questions about any work Mintz Group had done or information Mintz Group had obtained while working for BOFI, relating to the investigations into Sparrow and Aurelius. Ms. Dresher was instructed not to answer any such questions, even when I clarified that I was inquiring about that information only to the extent it was shared with MiMedx – which much/most/all of it undoubtedly was. Ms. Dresher's attorney clarified that his instructions were based on instructions from BOFI's attorney that it was not waiving any work product or attorney client privileges.

Sparrow and MiMedx have already briefed at length before this Court what can and cannot be considered privileged or work product in this matter. As the Court made clear, "MiMedx has clearly

waived privilege as it relates to all facts its investigators and attorneys collected as part of the pre and post-suit investigations, attorney-client communications relaying those facts, and attorney-client communications drawing factual conclusions based on the facts collected." (CM ECF No. 207, at p. 9). Information that MiMedx learned from BOFI's previous investigations, whether obtained through BOFI directly or through its counsel, is obviously directly relevant to the nature, quality, and scope of MiMedx's supposed pre and post-filing investigations. Indeed, we know that BOFI had concluded Chris Carroll was Aurelius and BOFI's attorney-turned-MiMedx's attorney, Polly Towill of Sheppard Mullin, believed that Chris Carroll was likely Aurelius. MiMedx has admitted that it drafted a complaint naming Chris Carroll as Aurelius after Ms. Towill relayed details from BOFI's Aurelius investigation to MiMedx. Yet, for reasons unknown, MiMedx changed course and did not identify Chris Carroll as Aurelius when it filed its lawsuit. We do not know what specific information Ms. Towill shared from BOFI's investigations with MiMedx. We also do not know what information Mintz Group shared from BOFI's investigations with MiMedx. However, one thing is clear – the information that Ms. Towill relayed to MiMedx based on her knowledge of BOFI's investigation ultimately resulted in MiMedx deciding to sue Sparrow.

BOFI will no doubt argue that, whether MiMedx waived the privilege is irrelevant as to whether it waived the privilege. Not so. Either BOFI authorized its attorney to share the results of its investigations with MiMedx, or Sheppard Mullin improperly shared confidential client information with MiMedx. If the former, then BOFI undisputedly waived the privilege. If the latter, BOFI may have a quarrel with its former counsel, but it doesn't change the fact that any such information was shared with MiMedx and formed a part of MiMedx's investigations into Aurelius. Again, either way, Sparrow is entitled to the information.

************************************************

Again, Sparrow is requesting the Court compel BOFI to do the following:

1. Produce all documents and communications related to Sparrow Fund Management, LP, or any of its principals; and
2. Produce all documents and communications related to identifying Aurelius Value; and
3. Allow both its own employees and those it retained, in this case Mintz Group, to testify about what work was done on its behalf to discover Aurelius, and in particular to testify about that work to the extent its findings were shared with MiMedx.

Thank you for your consideration.

Very truly yours,

HARRIS BERNE CHRISTENSEN LLP

Adam S. Heder
Admitted Pro Hac Vice

cc: All Counsel of Record (via ECF)
Polly Towill and Heather Plocky – Counsel for Axos aka BOFI – Via Certified Mail Personal and Confidential
To be opened by addressee only