UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SPARROW FUND MANAGEMENT LP,

                        Plaintiff,

        -against-

MIMEDX GROUP, INC.,

                        Defendant.

-----------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**_____
**DATE FILED:** 7/7/2021

**OPINION & ORDER ON MOTION TO DE-DESIGNATE "CONFIDENTIAL" INFORMATION**

**18-cv-4921 (PGG) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Sparrow Fund Management, LP ("Sparrow") brings this action against Defendant MiMedx Group, Inc. ("MiMedx") for defamation and malicious prosecution. Sparrow's claims arise out of an earlier suit filed against it by MiMedx in which MiMedx claimed that Sparrow or its principles were making defamatory statements about MiMedx via anonymous blog posts authored under the pseudonym Aurelius Value. *See MiMedx Group, Inc. v. Sparrow Fund Mgmt., LP*, 1:17-cv-07568 (PGG) (KHP) (S.D.N.Y. 2017).

      Early on in discovery the parties negotiated a proposed protective order for the Court's review. (*See* ECF No. 168.) On September 25, 2020, the Court approved and ordered a confidentiality stipulation and protective order governing the production of "Confidential Information" during discovery in this case. (ECF No. 169, hereinafter the "Protective Order".)

      Now before the Court is Sparrow's motion to de-designate certain information exchanged in discovery and marked as "Confidential" under the terms of that Protective Order. (ECF Nos. 195, 224, 225.) Specifically, Sparrow seeks the Court's permission to incorporate the confidential information at issue into an amended complaint Sparrow intends to file in a related

1

California state court action (the "California Action"). Having reviewed the proposed amended complaint, the confidential material at issue almost exclusively pertains to information concerning MiMedx's pre- and post-filing investigations into Aurelius's identity. The parties met and conferred on Sparrow's proposed de-designation but were unable to reach a mutually agreeable resolution.

For the reasons set forth below, Sparrow's motion is GRANTED.

## KEY TERMS OF THE PROTECTIVE ORDER

The Protective Order expressly provides that a confidentiality designation shall apply to any information that the parties, either individually or collectively, choose to so designate. (Protective Order ¶ 2.) It further provides that any information designated as confidential "will be held and used by the person receiving such information solely for use in connection with" this case. (Protective Order ¶ 3.) The Protective Order directs the parties to meet and confer in good faith over any disputes arising out of a particular confidentiality designation and that, if the parties cannot reach an agreement, "the challenging party may thereafter seek . . . a [judicial] determination regarding confidentiality." (Protective Order ¶ 4.) It also bears noting that the Protective Order was entered in accordance with Federal Rule of Civil Procedure 26(c) and Federal Rule of Evidence 502 to facilitate discovery. (Protective Order ¶ 1.)

## DISCUSSION

"Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *See, e.g.*, *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987). "Where there has been reasonable reliance by a party . . . a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in

the grant of [the] order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). Notwithstanding that presumption, "where a litigant . . . could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order." *TheStreet.com*, 273 F.3d at 231.

Courts consider the following factors to determine whether a party reasonably relied on a protective order: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Tradewinds Airlines, Inc. v. Soros*, No. 08-cv-5901 (JFK), 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) (citing *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009)). The Court also may consider additional factors such as the purpose of the modification, whether additional non-parties would gain access to the information, and the type of confidential information at issue. *In re EPDM*, 255 F.R.D. 308, 318 (D. Conn. 2009).

Here, the Protective Order provides that information disclosed in discovery and designated as confidential "will be held and used by the person receiving such information solely for use in connection with the above-caption [sic] action." (Protective Order ¶ 3.) Courts have found similarly worded protective orders to be enforceable and, at times, even sanction parties who use protected documents in other litigations without a court-approved modification. *Wolters Kluwer Fin. Servs. v. Scivantage*, No. 07-cv-2352 (HB), 2007 U.S. Dist. LEXIS 37306, at *27-30 (S.D.N.Y. May 23, 2007) (collecting cases).

However, in this case, Sparrow asserts that the information at issue – information gleaned from documents pertaining to MiMedx's pre- and post-filing investigations – was not

3

properly designated as confidential under the terms of the Protective Order in the first place. Thus, the Court must first determine whether the Protective Order covers this information. If it does, the Court must then determine whether a modification is warranted, given the circumstances.

### I. *Applicability of the Protective Order*

Sparrow argues that the Protective Order only permits a confidentiality designation for those communications and information related to "competitive business information, financial information, proprietary information, trade secrets, Defendant's policies and procedures, marketing strategies, personnel documents, [or] internal investigations undertaken by Defendant." (Protective Order ¶ 2.) Sparrow posits that the communications and information at issue here were not part of an "internal investigation," but rather, were related to external investigations that involved multiple third-party investigators.

This argument is unconvincing. First, the Court notes that the categories of potentially confidential information listed in the Protective Order are not exhaustive. (Protective Order ¶ 2) ("information that may be designated as Confidential for the purposes of this litigation shall include, but are not limited to . . .") Thus, even if MiMedx's pre- and post-filing investigations were not "internal investigations" per se, the Protective Order – through its specific reference to those "internal investigations" – could be reasonably interpreted to cover any commercially sensitive investigation into Aurelius's identity. Second, MiMedx represents that the results of its pre- and post-filing investigations were never disclosed to the public and were only conveyed to top executives and counsel; in other words, the investigations were confidential. The Court, having endorsed the Protective Order and closely supervised discovery in this case,

always understood that the parties intended to protect any sensitive, potentially harmful information pertaining to the claims and defenses asserted. Thus, it would be unreasonable for the Court, at the outset of its analysis, to interpret the Protective Order in a way so as to preclude a confidentiality designation for MiMedx's confidential investigations into the identify of Aurelius—pivotal evidence central to this lawsuit and previously treated as privileged. Accordingly, in resolving the instant motion, the Court will assume that the Protective Order governs the documents and communications identified by Sparrow for de-designation.

## II.     *Whether a Modification is Appropriate*

Sparrow focuses much of its letter briefing on the presumption of public access that, it argues, applies to the pre- and post-filing investigation information MiMedx designated as confidential pursuant to the Protective Order. However, this argument misapprehends the relevant inquiry applicable to Sparrow's request to modify the Protective Order. The question is not whether Sparrow's complaint in the California Action should be deemed a judicial document for purposes of sealing, but rather, whether the Protective Order should be modified so as to permit Sparrow to use confidential information obtained in this case to bolster its claims in the California Action.

Indeed, Sparrow's reliance on the Second Circuit's ruling in *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132 (2d Cir. 2016) is misplaced in this context. In *Bernstein*, the Second Circuit held that a complaint in a civil litigation is a judicial document for the purposes of a motion to seal. *Id.* at 140. Accordingly, information contained in and documents filed in connection with a complaint are typically entitled to some presumption of public access. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 123 (2d Cir. 2006). However, *Bernstein*

5

does not address whether a Protective Order in an ongoing litigation should be modified to permit a party to supplement its pleading in a subsequent lawsuit against different defendants. That question – the one the Court confronts below – pertains more so to whether information from this case can be used *at all* in the California Action, not whether it should be withheld from public view.

Thus, consistent with the applicable law outlined above, the Court will consider whether MiMedx reasonably relied on the Protective Order and, if so, whether Sparrow has demonstrated an "extraordinary circumstance or compelling need" to warrant the modification.[1]

A. *Reasonable Reliance*

As noted above, in order to determine whether MiMedx has reasonably relied on the Protective Order, the Court will consider (1) the scope of the Protective Order; (2) the language of the Protective Order; (3) the level of inquiry the undersigned undertook before granting the Protective Order; and (4) the nature of MiMedx's reliance on the Protective Order. Having considered each of these factors and the relevant circumstances, I find that MiMedx did not reasonably rely on the Protective Order in this case.

With respect to the first factor – scope – the Protective Order is, essentially, a blanket protective order. It allows both parties to designate as confidential "any documents or

---

[1] To the extent that Sparrow argues it has a presumptive right to access the confidential information, the Court disagrees because the targeted documents are not judicial documents insofar as they have never been submitted or relied on in connection with dispositive motions in this case. Documents passed between parties (or the Court) in discovery "lie entirely beyond the presumption's reach." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). Even when the Court assesses such documents in the context of a discovery motion, as this Court did at ECF No. 207, the documents remain non-judicial. *Uni-Systems v. United States Tennis Ass'n*, No. 17-cv-147 (KAM) (CLP), 2020 U.S. Dist. LEXIS 251138, at *27 (E.D.N.Y. July 6, 2020).

information that Defendant or Plaintiff provide during discovery in this litigation." (Protective Order ¶ 2.) Furthermore, MiMedx has never been required to demonstrate good cause for any of its designations. Under the Protective Order, MiMedx needed only to designate documents as confidential to protect the information therein. Thus, the Protective Order is quite broad, which weighs against MiMedx's reasonable reliance. *In re Agent Orange*, 821 F.2d at 147-48, *superseded on other grounds by amendment to Federal Rules of Civil Procedure*, Fed. R. Civ. P. 5(d) (concluding that similarly pervasive protections in a protective order were improper if imposed on a permanent basis).

With respect to the second factor – language – the Protective Order provides absolute confidentiality for discovery materials exchanged between the parties. Indeed, the Protective Order does not contemplate modification, nor does it contemplate any non-parties obtaining access to information designated as confidential. (Protective Order ¶ 5) (limiting confidential document access to parties, counsel, party employees, and deponents during their depositions). Thus, based only on the language of the Protective Order, it would have been reasonable for MiMedx to expect that the Protective Order would prevent disclosure of information marked as confidential to non-parties and the public.

With respect to the third factor – the level of judicial inquiry – the Court did not engage in a highly detailed inquiry before entering the Protective Order on the docket because the Protective Order is a model provided by the Court to facilitate discovery, and the parties consented to its terms. (*See* ECF No. 168.) "A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause." *In re EPDM*, 255 F.R.D. at 321 (citing *Fournier v. McCann Erickson*, 242 F.

Supp. 2d 318, 341 (S.D.N.Y. 2003)). Thus, this factor cuts against a finding of reasonable reliance on the part of MiMedx.

Finally, with respect to the fourth factor – the nature of MiMedx's reliance – "[t]he extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow [the relevant] discovery." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992). MiMedx has repeatedly asserted throughout this litigation that it is not liable for malicious prosecution because it conducted pre- and post-filing investigations to uncover Aurelius's identity. Furthermore, MiMedx proffered this defense well before the Protective Order was entered in this case. (*E.g.* ECF No. 160 ¶ 32) (MiMedx admitting, in its Answer to the Amended Complaint, that its investigation enabled it to conclude that Sparrow and/or its principals were Aurelius Value). Thus, the material at issue was prepared before the instant litigation commenced and MiMedx would have been compelled to produce that material in order to support its primary defense, with or without a protective order. *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-cv-2044 (AJN) (RLE), 2017 U.S. Dist. LEXIS 170907, at *13 (S.D.N.Y. Oct. 16, 2017) ("where the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong"); *Cf. Allen v. City of New York*, 420 F. Supp. 2d 295, 300-01 (S.D.N.Y. 2006) (holding that a party did not reasonably rely on a protective order when the party did not undertake any specific act in reliance on the materials at issue remaining confidential). Thus, this analysis suggests that MiMedx did not reasonably rely on the Protective Order with respect to protecting the information at issue in the instant motion.

* * *

On balance, three of the four reliance factors indicate that MiMedx did not reasonably rely on the Protective Order to preserve the confidentiality of the information that Sparrow now seeks to de-designate. Accordingly, I next assess whether there is good cause to treat the documents and information at issue as confidential.

*B. Good Cause*

When a "confidentiality designation is contested, the party seeking to maintain confidential treatment for the challenged document will have the burden of establishing good cause for the continuation of that treatment." *U2 Home Entm't, Inc. v. Kylin TV, Inc.*, No. 06-cv-2770 (DLI), 2008 U.S. Dist. LEXIS 30755, at *6 (E.D.N.Y. Apr. 14, 2008) (quoting *Lachica v. City of New York*, No. 94-cv-7379 (LAK), 1995 U.S. Dist. LEXIS 2121, at *3 (S.D.N.Y. Feb. 23, 1995)). "Good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." *Medina v. Buther*, No. 15-cv-1955 (LAP), 2018 U.S. Dist. LEXIS 149278, at *4-5 (S.D.N.Y. Aug. 20, 2018) (cleaned up).

Sparrow submitted all of the documents it seeks to de-designate under seal so that the Court could review them *in camera*. (ECF Nos. 195, 225.) Having now reviewed all of the documents, I find that MiMedx has not demonstrated that a clearly defined, specific, and serious injury will result from their disclosure.

As noted above, most of the communications Sparrow seeks to de-designate concern MiMedx's pre- and post-filing investigations into Aurelius's identity. A majority of the

communications are email chains between MiMedx personnel, outside counsel, and third-party investigators concerning the Aurelius investigation. Specifically, these email threads detail MiMedx's investigatory tactics, those of its outside investigators, an overview of MiMedx's investigation objectives, investigator analysis, leads on Aurelius's identity, and attempts to find Aurelius's "electronic fingerprint." (ECF No. 195, Exs. 3-5, 9-13, 16; ECF No. 225.) Also at issue are documents containing invoice summaries and detailed descriptions of the services performed by MiMedx's outside counsel and third-party investigators in the course of their investigations into Aurelius's identity and the filing of the initial suit against Sparrow. (ECF No. 195, Exs. 6-8, 14.) Finally, Sparrow also identifies a draft FINRA response letter which chronicles the major press releases, YouTube videos, tweets, and other public statements surrounding alleged suspicious trading of MiMedx's common stock. (*Id.*, Ex. 15.)

MiMedx argues, in essence, that these communications should retain their designations under the Protective Order because its pre- and post-filing investigations were conducted confidentially and because the parties intended these sorts of communications to be covered by the Protective Order. However, MiMedx fails to articulate any clearly defined, specific, and serious injury that would result from the disclosure of this information.

First, there is no basis for the Court to conclude that MiMedx will be harmed if the general public or interested third parties were to learn of the details of MiMedx's pre- and post-filing investigations. Indeed, MiMedx's former Chief Operating Officer and Chief Executive Officer have already been convicted of materially misstating MiMedx's quarterly and annual sales revenue. Thus, MiMedx's current and future interest in preserving the confidentiality of its investigations into Aurelius's identity is minimal at best. MiMedx also heavily relies on those

investigations in this case and, if this case were to proceed to trial, there is little doubt that these documents would become crucial evidence to the parties' claims and defenses; in other words, the documents will eventually become judicial documents entitled to a strong presumption of public access. Second, there is no basis to find that disclosure of the invoices would harm MiMedx. These documents merely identify the steps taken by MiMedx's investigators and the hourly rates for their services. The Court cannot conceive of any serious injury that would result from the disclosure of this information. Third, the statements and information outlined in the FINRA response letter are mostly, if not entirely, publicly available. While the FINRA letter may organize the information in a helpful way, neither party disputes that the various press releases and twitter posts outlined in the letter are publicly accessible. Absent any legitimate basis to conclude that MiMedx would be seriously injured by the disclosure of this information, I find that there is no good cause to maintain the confidentiality designations on the communications and information identified by Sparrow.

## CONCLUSION

For the reasons set forth above, Sparrow's motion to de-designate (ECF Nos. 195, 224, 225) is GRANTED. The documents discussed above are no longer "Confidential" under the terms of the Protective Order.

**SO ORDERED.**

Dated: July 7, 2021
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge